1   Joseph Melnik (State Bar No. 255601)
    jmelnik@jonesday.com
2   JONES DAY
    1755 Embarcadero Road
3   Palo Alto, CA  94303
    Telephone:   (650) 739-3939
4   Facsimile:   (650) 739-3900

5   Attorneys for Defendant and Counterclaimant
    VISA INC.
6
    Gary A. Clark (State Bar No. 65455)
7   gclark@sheppardmullin.com
    SHEPPARD MULLIN RICHTER & HAMPTON LLP
8   333 South Hope Street, 43rd Floor
    Los Angeles, CA 90071
9   Telephone:  213.620.1780
    Facsimile:   213.620.1398
10
    Attorneys for Defendant and Counterclaimant
11  MASTERCARD INTERNATIONAL INCORPORATED
    [Additional Counsel Listed on Signature Page]
12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                    WESTERN DIVISION

16  SMARTMETRIC INC.,                    Case No. CV 11-7126 MWF (AJWx)

17              Plaintiff,               **DEFENDANTS AND COUNTER-
                                         CLAIMANTS' NOTICE OF
18       v.                              MOTION AND MOTION FOR
                                         SUMMARY JUDGMENT
19  MASTERCARD INTERNATIONAL             REGARDING PLAINTIFF AND
    INCORPORATED AND VISA INC.,          COUNTER-DEFENDANT'S CLAIM
20                                       FOR DAMAGES AND
              Defendants.                INJUNCTIVE RELIEF;
21                                       MEMORANDUM OF POINTS AND
                                         AUTHORITIES IN SUPPORT
22  AND RELATED COUNTERCLAIMS.           THEREOF**

23                                       Date:   June 24, 2013
                                         Time:  10:00 a.m.
24                                       Crtm: 1600, Spring
                                                Hon. Michael W. Fitzgerald
25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 24, 2013, at 10:00 a.m., or as soon thereafter as this matter may be heard in the Courtroom of the Honorable Michael W. Fitzgerald, Courtroom 1600, located at 312 N. Spring Street, Los Angeles, CA 90012, Defendants and Counterclaimants Visa Inc. ("Visa") and MasterCard International Inc. ("MasterCard") (collectively, "Defendants") and will bring on for hearing the following motion.

## MOTION

Visa and MasterCard move for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Civil Local Rule 56, against Plaintiff and Counter-Defendant SmartMetric Inc. ("SmartMetric"), that SmartMetric is not entitled either to recover damages or to obtain injunctive relief for Defendants' alleged infringement of U.S. Patent No. 6,792,464 ("'464 patent").

The grounds for this motion are that (a) SmartMetric has failed to timely and properly disclose a viable damages claim supported by competent evidence, and (b) as a matter of law, SmartMetric is not entitled to injunctive relief based on the undisputed facts.

This motion is based on the Memorandum of Points and Authorities, Declarations of Joseph Melnik and Gary Clark, and the exhibits attached thereto. Pursuant to Civil Local Rule 56-1, this motion also is accompanied by a Statement of Uncontroverted Facts and Conclusions of Law, as well as a proposed Judgment.

This motion is made following the conference of counsel pursuant to Civil Local Rule 7-3, which took place on April 11, 2013.

DEFS.' MOTION FOR SUMMARY JUDGMENT
RE DAMAGES AND INJUNCTIVE RELIEF
Case No. CV 11-7126 MWF (AJWx)

1   Dated:  May 6, 2013

2                                      Respectfully submitted,

3
                                       JONES DAY
4

5
                                       By _____/s/ Joseph Melnik
6                                                  JOSEPH MELNIK

7                                      Attorneys for Defendant and Counterclaimant
8                                                  VISA INC.
    Dated:  May 6, 2013
9

10                                     Respectfully submitted,

11                                     SHEPPARD, MULLIN, RICHTER & HAMPTON
12                                       LLP

13

14                                     By _____/s/ Gary A. Clark
                                                   GARY A. CLARK
15
                                       Attorneys for Defendant and Counterclaimant
16                                                 MASTERCARD INTERNATIONAL
                                                   INCORPORATED
17

18

19

20

21

22

23

24

25

26

27

28

                                       DEFS.' MOTION FOR SUMMARY JUDGMENT
                                       RE DAMAGES AND INJUNCTIVE RELIEF
                                       Case No. CV 11-7126 MWF (AJWx)

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................... 1

II.  STATEMENT OF FACTS ......................................................... 2

    A.   SmartMetric and Its Business ......................................... 2

    B.   History of Discovery Regarding Damages and Injunctive Relief ........ 3

    C.   SmartMetric's Damages Claim ......................................... 5

III. LEGAL STANDARD FOR SUMMARY JUDGMENT .............................. 8

    A.   Defendants Are Entitled to Summary Judgment Dismissing SmartMetric's Claim for Damages ........................................ 9

        1.   Summary Judgment of No Damages Is Proper Where There Is No Evidence to Support a Damages Award .............. 10

        2.   No Evidence Exists to Support a Damages Award ................. 11

        3.   SmartMetric Cannot Create a Genuine Issue of Material Fact Regarding Damages by Relying on the Untimely, Unqualified, and Unreliable Opinion of Its CEO .................... 13

            (a)   SmartMetric is Barred from Offering the Untimely-Disclosed Hendrick Damages Opinions ......................... 13

            (b)   Hendrick's Opinions Are Inadmissible for Failure to Comply With Rule 702 ................................. 14

                (i)    Expert Testimony Must be Qualified and Reliable ...................................................... 14

                (ii)   Hendrick Is Not Qualified to Opine on SmartMetric's Alleged Damages ......................... 15

                (iii)  Hendrick's Opinions Regarding SmartMetric's Alleged Damages Are Unreliable ............................................... 17

    B.   Defendants Are Entitled to Summary Judgment Dismissing SmartMetric's Claim for Injunctive Relief ............................ 21

        1.   Injunctive Relief Requires Proof of Irreparable Harm and Inadequacy of Monetary Relief ..................................... 22

        2.   SmartMetric Can Point to No Evidence of Irreparable Harm or Inadequacy of Monetary Relief ............................ 23

**TABLE OF CONTENTS**
**(continued)**

**Page**

C.      Defendants Are Entitled to Entry of Final Judgment .........................24

IV.   CONCLUSION ............................................................................................25

## TABLE OF AUTHORITIES

Page

**CASES**

*Advanced Cardiovascular Sys. v. Medtronic Vascular, Inc.*,
  579 F. Supp. 2d 554 (D. Del. 2008) ................................................... 22

*Amado v. Microsoft Corp.*,
  No. SA CV 03-242 DOC, 2007 U.S. Dist. LEXIS 96487 (C.D. Cal. Mar.
  13, 2007), *vacated in part on other grounds*, 517 F.3d 1353 (Fed. Cir.
  2008) ................................................................................................... 23, 24

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................... 8

*Apple, Inc. v. Motorola, Inc.*,
  869 F. Supp. 2d 901 (N.D. Ill. 2012) ............................................... passim

*AVM Techs., LLC v. Intel Corp.*,
  Civil Action No. 10-610-RGA, ECF No. 294 (Order) at 3-4 (D. Del. Mar.
  29, 2013) ............................................................................................. 25

*Benedict v. Zimmer, Inc.*,
  232 F.R.D. 305 (N.D. Iowa 2005) ..................................................... 14

*Biotechnology Indus. Org. v. Dist. of Columbia*,
  496 F.3d 1362 (Fed. Cir. 2007) ......................................................... 25

*Boston Sci. Corp. v. Johnson & Johnson*,
  550 F. Supp. 2d 1102 (N.D. Cal. 2008) ............................................ 10, 11

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................... 9

*City & Cnty. of San Francisco v. Tutor-Saliba Corp.*,
  218 F.R.D. 219 (N.D. Cal. 2003) ....................................................... 12

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ........................................................................... 15, 20

*Devex Corp. v. Gen. Motors Corp.*,
  667 F.2d 347 (3d Cir. 1981) ............................................................... 10

*Diviero v. Uniroyal Goodrich Tire Co.*,
  114 F.3d 851 (9th Cir. 1997) ............................................................................ 15

*Dow Chemical Co. v. Mee Indus., Inc.*,
  341 F.3d 1370 (Fed. Cir. 2003) ..................................................................... 10

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) ......................................................................................... 22

*EZ Dock, Inc. v. Schafer Sys., Inc.*,
  No. 98-2364, 2003 WL 1610781 (D. Minn. Mar. 8, 2003) ............................... 17

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*,
  654 F.3d 989 (9th Cir. 2011) ............................................................................ 22

*Gasaway v. Nw. Mut. Life Ins. Co.*,
  26 F.3d 957 (9th Cir. 1994) .......................................................................... 9, 24

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ................................................................................... 15, 21

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*
  318 F. Supp. 1116 (S.D.N.Y. 1970) ................................................................. 19

*In re Bausch & Lomb, Inc. Contact Lens Sol'n Prods. Liab. Litig.*,
  No. 2:06-MN-77777-DCN, 2009 WL 2750462 (D.S.C. Aug. 26, 2009) ..............
  ............................................................................................................... 15, 18, 19

*In re Katz Interactive Call Processing Patent Litig.*,
  882 F. Supp. 2d 1123 (C.D. Cal. 2010) ........................................................... 17

*IP Innovation LLC v. Red Hat, Inc.*,
  705 F. Supp. 2d 687 (E.D. Tex. 2010) ............................................................. 19

*KEG Techs., Inc. v. Laimer*,
  436 F. Supp. 2d 1364 (N.D. Ga. 2006) ............................................................ 11

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ......................................................................................... 15

*LG Elecs., Inc. v. Advance Creative Computer Corp.*,
  212 F. Supp. 2d 1171 (N.D. Cal. 2002) ........................................................... 11

*Lifewise Master Funding v. Telebank*,
  374 F.3d 917 (10th Cir. 2004) .......................................................................... 16

DEFS.' MOTION FOR SUMMARY JUDGMENT
RE DAMAGES AND INJUNCTIVE RELIEF
Case No. CV 11-7126 MWF (AJWx)

*Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*,
  895 F.2d 1403 (Fed. Cir. 1990) ........................................................... 10

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed Cir. 2009) ........................................................... 10

*MercExchange, L.L.C. v. eBay, Inc.*,
  500 F. Supp. 2d 556 (E.D. Va. 2007) ............................................. 23, 24

*Microsoft Corp. v. Motorola, Inc.*,
  No. C10-1823JLR, 2012 U.S. Dist. LEXIS 170587 (W.D. Wash. Nov. 29,
  2012) ..................................................................................................... 23

*Minebea Co. v. Papst*,
  No. 97-0590 (PLF), 2005 WL 1459704 (D.D.C. Jun. 21, 2005) ....................... 19

*Monolithic Power Sys., Inc. v. O2 Micro Int'l, Ltd.*,
  476 F. Supp. 2d 1143 (N.D. Cal. 2007) ......................................... 11, 12

*Nat'l Presto Indus., Inc. v. Black & Decker, Inc.*,
  760 F. Supp. 699 (N.D. Ill. 1991) ..................................................... 11

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
  210 F.3d 1099 (9th Cir. 2000) ............................................................. 9

*Ovadia Corp. v. Omeroglu Decoration, Ltd.*,
  No. 04 Civ. 8064(DLC), 2006 WL 3827557 (S.D.N.Y. Dec. 28, 2006) ........... 11

*Payne v. Exxon Corp.*,
  121 F.3d 503 (9th Cir. 1997) ............................................................. 12

*Pineda v. City & Cnty. of San Francisco*,
  280 F.R.D. 517 (N.D. Cal. 2012) ....................................................... 14

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  Nos. 2011-1218, 2012-1238, 2013 WL 1200270 (Fed. Cir. Mar. 26, 2013) ..... 15

*Prasco, LLC v. Medicis Pharm. Corp.*,
  537 F.3d 1329 (Fed. Cir. 2008) ......................................................... 25

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010) ........................................................... 18

*Riles v. Shell Exploration and Prod. Co.*,
  298 F.3d 1302 (Fed. Cir. 2002) ................................................ 10, 18, 21

DEFS.' MOTION FOR SUMMARY JUDGMENT
RE DAMAGES AND INJUNCTIVE RELIEF
Case No. CV 11-7126 MWF (AJWx)

*Salinas v. Amtek of Ky., Inc.*,
   682 F. Supp. 2d 1022 (N.D. Cal. 2010) ................................................. 14

*Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*,
   No. 1:08cv955(JCC), 2009 U.S. Dist. LEXIS 76043 (E.D. Va. Aug. 25,
   2009) ....................................................................................................... 16

*SmartMetric Inc. v. American Express Co.*,
   476 F. App'x 742 (Fed. Cir. Apr. 11, 2012) ............................................ 3

*SmartMetric, Inc. v. MasterCard Int'l Inc. et al.*,
   Case No. 10-cv-1864 (filed Mar. 15, 2010) ............................................. 2

*Telcordia Techs., Inc. v. Cisco Sys., Inc.*,
   592 F. Supp. 2d 727 (D. Del. 2009) ....................................................... 22

*Tyger Constr. Co. v. Pensacola Constr. Co.*,
   29 F.3d 137 (4th Cir. 1994) ...................................................... 15, 18, 19

*Unicom Monitoring, LLC v. Cencom, Inc.*,
   No. 06-1166 (MLC), 2013 WL 1704300 (D.N.J. Apr. 19, 2013) ...................24

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011) ......................................................... 10, 20

*Veritas Operating Corp. v. Microsoft Corp.*,
   No. 2:06-cv-00703-JCC, 2008 U.S. Dist. LEXIS 35627 (W.D. Wash. Jan.
   17, 2008) ........................................................................................... 14, 16

*WhitServe, LLC v. Computer Packages, Inc.*,
   694 F.3d 10 (Fed. Cir. 2012) ............................................................ 19, 20

*WiAV Solutions LLC v. Motorola, Inc.*,
   631 F.3d 1257 (Fed. Cir. 2011) ............................................................. 25

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001) .......................................................... 12, 14

*z4 Techs., Inc. v. Microsoft Corp.*,
   434 F. Supp. 2d 437 (E.D. Tex. 2006) ............................................... 23, 24

**STATUTES**

35 U.S.C. § 283 ..................................................................................... 22

DEFS.' MOTION FOR SUMMARY JUDGMENT
RE DAMAGES AND INJUNCTIVE RELIEF
Case No. CV 11-7126 MWF (AJWx)

35 U.S.C. § 284 ................................................................... 10

**RULES**

Fed. R. Civ. P. 26 ............................................................. 11, 13

Fed. R. Civ. P. 26(a)(1)(A)(iii) ................................................ 3

Fed. R. Civ. P. 26(a)(2) ....................................................... 13

Fed. R. Civ. P. 26(a)(2)(A)-(C) ............................................... 13

Fed. R. Civ. P. 26(a)(2)(B) .................................................... 5

Fed. R. Civ. P. 26(a)(2)(C) .................................................... 5

Fed. R. Civ. P. 26(e)(1) ....................................................... 12

Fed. R. Civ. P. 37(c)(1) .................................................. 12, 14

Fed. R. Civ. P. 56(a) .......................................................... 8

Fed. R. Civ. P. 56(c)(1)(A) .................................................... 9

Fed. R. Evid. 702 ......................................................... passim

**OTHER AUTHORITIES**

*Moore's Federal Practice* § 26.22[4][c] ...................................... 12

DEFS.' MOTION FOR SUMMARY JUDGMENT
RE DAMAGES AND INJUNCTIVE RELIEF
Case No. CV 11-7126 MWF (AJWx)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

There are multiple bases on which the Court may dismiss this suit.  As explained in Defendants' concurrently-filed motions for summary judgment of non-infringement and invalidity, the asserted claims of the '464 patent are neither valid nor infringed.  Further, as explained in this motion, SmartMetric's inability as a matter of law to recover damages or injunctive relief provides another ground on which this Court may enter final judgment in Defendants' favor.

It is indisputable that SmartMetric has the burden to prove its damages claim.  Yet it produced no evidence in discovery to substantiate that claim and is barred by the Federal Rules from offering such evidence now.  SmartMetric also cannot rely on the untimely-disclosed "expert" opinions of its named inventor and CEO, Chaya Coleena Hendrick, to create a genuine issue of fact as to its damages.  Not only are Hendrick's opinions precluded as a result of their unexcused and prejudicially late disclosure, but also they are wholly inadmissible as unqualified and unreliable under the rules of evidence and the clear guidelines the Federal Circuit has provided for properly calculating patent damages.  Because no evidence exists to support SmartMetric's damages claim, summary judgment of no damages is appropriate.

Likewise, the Court can and should grant summary judgment that Smart-Metric is not entitled to injunctive relief.  SmartMetric may obtain an injunction only upon proof of irreparable harm and that monetary remedies are not sufficient.  But where SmartMetric has never sold products that practice the '464 patent or compete with Defendants' accused systems, claims no market share, and has never offered evidence of irreparable injury, it cannot carry its burden, and its request for injunctive relief must be denied as a matter of law.

Absent entitlement to relief, there is no basis on which SmartMetric's claim can proceed to trial.  Accordingly, the Court should enter final judgment dismissing the complaint.

1

## II.   STATEMENT OF FACTS

### A.   SmartMetric and Its Business.

SmartMetric is a publicly-traded company that purports to be a "development stage company engaged in the technology industry." Declaration of Joseph Melnik ("Melnik Decl.") ¶¶ 7, 9, Ex. 1 (Hendrick Tr.) at 76:16-77:4, 78:1-9; Ex. 3 (6/30/12 SmartMetric 10-K) at 4. SmartMetric claims to own the '464 patent, titled "System for Automatic Connection to a Network," which generally discloses a way for users to access the Internet from any computer using their own Internet Service Provider ("ISP"). ECF No. 1 at Ex. 1. While SmartMetric describes its "main product" as a "fingerprint sensor activated card" for "portable biometric identification," known as a Medical KeyRing,[1] and claims to have developed additional products in the form of "[s]mart cards that are activated by fingerprints,"[2] Melnik Decl. ¶¶ 7, 9, Ex. 1 (Hendrick Tr.) at 59:20-60:1, 91:13-17, 98:6-12, 100:11-101:1, 105:22-106:18; Ex. 3 (6/30/12 SmartMetric 10-K) at 4, SmartMetric has never sold any products, has never had any revenues, and concedes that it has no market share. Melnik Decl. ¶ 7, Ex. 1 (Hendrick Tr.) at 87:15-16, 125:2-15, 128:3-20, 193:2-20.

On August 29, 2011, SmartMetric filed suit against MasterCard and Visa alleging infringement of the '464 patent by virtue of their sale, offer for sale, and use of "contact and contact/contactless credit card systems" in "this judicial district and elsewhere in the United States." ECF No. 1 ¶¶ 1, 12. This is the second of two cases filed against MasterCard and Visa claiming infringement of the '464 patent. *See SmartMetric, Inc. v. MasterCard Int'l Inc. et al.*, Case No. 10-cv-1864 (filed Mar. 15, 2010). Whereas SmartMetric in this case accuses the use of Defendants' contact chip cards to access a "network," the earlier case focused on Defendants'

---

[1] SmartMetric further alleges that its Medical KeyRing product embodies the claims of the '464 patent. Melnik Decl. ¶ 7, Ex. 1 (Hendrick Tr.) at 106:19-107:5.

[2] *But see* Melnik Decl. ¶ 12, Ex. 6 (SmartMetric's Resp. to Visa's 1st Rogs.) at 14-15 (in response to request to "[i]dentify all Patented SmartMetric Products," stating that "there are no such products").

contactless chip cards.  That case resulted in a stipulated judgment of non-infringement, which was affirmed by the Federal Circuit.  *See SmartMetric Inc. v. American Express Co.*, 476 F. App'x 742 (Fed. Cir. Apr. 11, 2012).

**B.    History of Discovery Regarding Damages and Injunctive Relief.**

The Court's October 2, 2012 Order Modifying Scheduling Order set March 15, 2013 as the "cut-off" for all discovery.  ECF No. 64.  That deadline was extended to March 29, 2013 by the Court's February 21, 2013 Order Granting in Part and Denying in Part Plaintiff's *Ex Parte* Application to Continue Scheduling Order.  ECF No. 87.  Although Defendants served SmartMetric with numerous Requests for Production during the discovery period, including requests seeking documents relating to SmartMetric's claim for damages and injunctive relief, SmartMetric never produced any documents in response to these requests.  *See* Melnik Decl. ¶ 11, Ex. 5 (Visa's 1st Set of RFPs) at 13-14 (seeking "[a]ll documents concerning any damages SmartMetric alleges it sustained due to the alleged patent infringement by Visa," as well as all documents "concerning an established royalty," licenses for the '464 patent, and revenues and costs associated with SmartMetric products alleged to practice the '464 patent), 18 (seeking "[a]ll documents relating to SmartMetric's claims for injunctive relief"); Declaration of Gary A. Clark ("Clark Decl.") ¶¶ 4-7, Ex. A (SmartMetric's Response to MasterCard's 1st Set of RFPs) at 19-22, 24-26 & 30-31.  On two separate occasions, SmartMetric's counsel confirmed in writing that SmartMetric had no documents to produce.  Melnik Decl. ¶¶ 13-14, Ex. 7 (1/21/13 Ltr. from P. Bright to G. Clark); Ex. 8 (2/13/13 E-Mail from P. Bright to G. Clark and J. Melnik).

SmartMetric also failed to make any meaningful written disclosure of its claim for damages and injunctive relief before discovery closed.  In response to its obligation to disclose "a computation of each category of damages claimed" pursuant to Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure, SmartMetric stated:  "No damages computation has yet been made.  SM needs

discovery on sales, etc. from Defendants to determine damages." Melnik Decl. ¶ 10, Ex. 4 (SmartMetric's Initial Disclosures) at 5. SmartMetric never updated its disclosures. Melnik Decl. ¶ 1. Similarly, in response to an interrogatory seeking "the complete factual and legal basis for any and all damages that You seek from Visa in this action," SmartMetric disclosed only that "SM awaits discovery responses from VISA to determine its damages." Melnik Decl. ¶ 12, Ex. 6 (Smart-Metric's Resp. to Visa's 1st Rogs) at 15-16; *see also* Clark Decl. ¶ 11, Ex. B (SmartMetric's Resp. to MasterCard's 1st Rogs) at 14-15. And in responding to an interrogatory seeking "the complete factual and legal basis supporting your request for injunctive relief," SmartMetric stated that "SM has suffered, and continues to suffer, irreparable harm by VISA's ongoing infringement of the '464 patent." Melnik Decl. ¶ 12, Ex. 6 at 16; *see also* Clark Decl. Ex. B at 15. SmartMetric never updated its responses before discovery closed. Melnik Decl. ¶ 2; Clark Decl. ¶ 11.

The Court's October 2, 2012 Scheduling Order also set a December 31, 2012 deadline for initial expert disclosures. ECF No. 64. Thus, on December 31, Smart-Metric was required to serve expert disclosures on the issues on which it bears the burden of proof at trial, including damages. SmartMetric did not serve an expert report on damages (or on any other topic) at that time. Melnik Decl. ¶ 5.

On February 19, 2013, after initial and rebuttal expert deadlines had passed and less than a month before discovery was set to close (ECF No. 64), SmartMetric filed an *ex parte* application to modify the October 2, 2012 Scheduling Order, asking the Court to extend the discovery cut-off and to reset the expert disclosure deadlines to allow it "to prepare/serve expert reports." ECF No. 84 at 1, 3. Two days later, the Court issued an order that extended the discovery cut-off to March 29, 2013 but denied "all other extensions requested . . . ." ECF No. 87 ("All dates except the discovery cut-off date shall remain as set forth in the Court's Order Modifying Scheduling Order filed October 2, 2012 . . . .").

Despite the Court's express denial of SmartMetric's request to reset expert

DEFS.' MOTION FOR SUMMARY JUDGMENT
RE DAMAGES AND INJUNCTIVE RELIEF
Case No. CV 11-7126 MWF (AJWx)

disclosure deadlines, at her March 14, 2013 deposition, Hendrick—testifying in her individual capacity and as SmartMetric's corporate representative—purported to provide her opinions as to the damages to which SmartMetric is entitled by virtue of Defendants' alleged infringement of the '464 patent. *See* Melnik Decl. ¶ 7, Ex. 1 (Hendrick Tr.) at 212:5-244:13. Hendrick conceded that she had performed this analysis "within the last six months" and that it was not based on any documents produced by Defendants. *Id.* at 226:18-227:6, 230:5-8.

On March 18, 2013, SmartMetric filed an *ex parte* application with the Magistrate Judge seeking to re-designate several of Visa's and MasterCard's highly confidential documents to "confidential" to allow Hendrick, to "read and take them into account in testifying as Plaintiff's principal witness at trial on the damages issue in this case." ECF No. 94 at 1. At that time, SmartMetric still had not disclosed Hendrick—or any other witness—as its damages expert under either Rule 26(a)(2)(B) or 26(a)(2)(C) of the Federal Rules of Civil Procedure or made any of the required written disclosures for such experts. Melnik Decl. ¶ 6. Defendants opposed the application, arguing, *inter alia*, that re-designation of their documents for this purpose would be improper, as Hendrick may not offer opinion testimony on damages. ECF No. 97 at 1-2, 4-6. On March 20, 2013, the Magistrate denied SmartMetric's *ex parte* application. ECF No. 98.

Undeterred, on March 24, 2013, SmartMetric served a 4-page, 8-paragraph document titled "Damages Report from Chaya Hendrick on Behalf of Plaintiff/Counter-Defendant SmartMetric Inc.," purporting to contain Hendrick's opinions as to SmartMetric's alleged damages. Melnik Decl. ¶ 8, Ex. 2 (Hendrick Report).

### C.     SmartMetric's Damages Claim.

SmartMetric's damages claim is predicated solely on the untimely-disclosed testimony and report of its CEO, Hendrick. Hendrick has never before served as a damages expert in litigation, been qualified as a damages expert, or testified about damages in litigation. Melnik Decl. ¶ 7, Ex. 1 (Hendrick Tr.) at 217:12-20. She

also has never before testified about a hypothetical negotiation of a patent license, has never heard of a *Georgia-Pacific* analysis, and is not aware of any of the factors typically considered "for determining a reasonable royalty in a patent infringement litigation." *Id.* at 218:2-16. She did not attend college and does not have a degree in finance, business, or economics. *Id.* at 20:18-19, 217:21-218:1.

At her deposition, Hendrick testified that SmartMetric's "total claim" for damages "amounts to $11 billion," purportedly representing the amount that MasterCard and Visa would be willing to pay to use the patented technology (which allegedly covers payment systems using contact chip payment cards) to mitigate credit/debit card fraud in the United States.[3] Melnik Decl. ¶ 7, Ex. 1 (Hendrick Tr.) at 213:17-215:18. Hendrick also testified that she arrived at this figure by (a) considering the "$3.56 billion" of credit and debit card fraud that allegedly occurs each year in the United States—which Hendrick suggested represents the cost savings to Visa and MasterCard that would result from using the patented technology to reduce fraud—and (b) applying a 25% royalty rate to those purported cost savings.[4] *Id.* Hendrick did not explain how applying a 25% rate to $3.56 billion in alleged annual fraud costs incurred by the country as a whole led her to calculate an $11 billion royalty based on purported fraud savings to Defendants. *See id.* at 230:9-231:3 (confirming that $3.56 billion per year represents annual fraud costs, not savings). She further testified that her decision to apply a 25% royalty rate was a "subjective assessment that that [rate] was fair and reasonable," based solely on her own "subjective assessment" and discussions with SmartMetric's counsel. *Id.* at 218:17-219:15, 221:2-25 (testifying that rationale for applying 25% rate was "[a] sense of fairness and reasonableness").

[3] According to Hendrick, use of the accused contact-based payment card systems would reduce the amount of fraud that occurs in connection with traditional magnetic-stripe card systems currently in use in the United States. Melnik Decl. ¶¶ 7-8, Ex. 1 (Hendrick Tr.) at 212:17-215:18; Ex. 2 (Hendrick Report) ¶ 6.

[4] Hendrick testified that the $3.56 billion figure derives from a study by the Federal Reserve of Boston in 2010, but SmartMetric has never produced this study. Melnik Decl. ¶ 7, Ex. 1 (Hendrick Tr.) at 214:2-8, 229:20-230:4.

DEFS.' MOTION FOR SUMMARY JUDGMENT
RE DAMAGES AND INJUNCTIVE RELIEF
Case No. CV 11-7126 MWF (AJWx)

1      In arriving at a 25% rate, Hendrick did not review any patent licenses, rates

2  "paid by other licensees on any type of technology," any of SmartMetric's comm-

3  ercial relationships, the value of the patent (in general or as a generator of revenue

4  for SmartMetric), or the profitability of SmartMetric's patented products.  *Id.* at

5  219:16-22, 222:18-223:1, 223:20-8, 236:2-19.  She also did not consider any

6  documents produced by Defendants in the litigation, costs to Defendants to adopt

7  the patented technology, or whether they could design around any of the allegedly

8  infringing features.  *Id.* at 230:5-8, 236:20-23, 239:19-23.  Although Hendrick

9  opined that contactless payment card systems could not qualify as a viable non-

10  infringing alternative to the accused contact payment card systems for purposes of a

11  damages analysis, she could not identify any sources on which she relied for that

12  conclusion.  *Id.* at 239:24-243:22.  She further did not consider "the portion of

13  profit that should be credited to the invention in a commercial embodiment versus

14  non-patented elements of any product" and did not recall taking into account the

15  value of any non-patented elements of Defendants' systems in deciding to apply a

16  25% royalty rate.  *Id.* at 225:18-20, 226:10-17.  While Hendrick claimed to have

17  considered alleged advantages of the '464 patent over previous technology, she

18  considered this only "[i]n a general way . . . [n]ot specifically."  *Id.* at 224:9-225:6.

19      In her subsequent report, Hendrick modified the damages calculation she

20  provided at deposition.  The report claimed that SmartMetric is entitled to recover

21  at least $13,237,550,000 "plus 0.25% of the increased card users' spending arising

22  from targeted advertising, based on tracking users' expenditures with these cards"

23  from Visa and MasterCard in the form of a "reasonably-priced, paid-up license . . .

24  for the remaining term of the '464 patent."  Melnik Decl. ¶ 8, Ex. 2 (Hendrick

25  Report) ¶ 2.  The Hendrick Report did not explain why Hendrick's damages

26  calculation had increased by $2 billion.  Instead, the report simply states that the

27  $13.24 billion amount is based on applying a 25% rate to $52,950,200,000, a figure

28  that purportedly represents "total US savings . . . in credit/debit card fraud losses

DEFS.' MOTION FOR SUMMARY JUDGMENT
RE DAMAGES AND INJUNCTIVE RELIEF
Case No. CV 11-7126 MWF (AJWx)

expected" between the end of 2014 and the expiration of the '464 patent 5.1 years later. *Id.* Hendrick further opines that "five elevenths of these damages be paid by MasterCard, and six elevenths by VISA, as their revenues annually are $5 billion and $6 billion, respectively." *Id.* As in her deposition, Hendrick implies that $13.24 billion represents the value of the '464 patent to Defendants in the form of cost savings from using the accused technology to reduce fraud. *Id.*

Hendrick does not explain the source of the $52.95 billion royalty-base figure or provide any further rationale for her use of a 25% royalty rate. Nor does she cite any source for the formula she applied to divide responsibility for paying the $13 billion royalty figure between MasterCard and Visa. Although Hendrick reiterates her opinion that Defendants do not have, and have not considered, any non-infringing alternatives to the patented technology and cannot "readily abandon" their alleged plans to use the technology in the United States, she cites no reference or source for this determination. *Id.* ¶ 6. Hendrick also offers no factual basis for her opinions that the accused "EMV cards [will] be widely in use in the US by the end of 2014," that "[t]hese cards will replace, and all but eliminate, the yearly fraudulent transactions in the US with magnetic-stripe-bearing only credit and debit cards," and that there are "no comparable patent or patent license(s)" to serve as a basis for the reasonable royalty SmartMetric seeks. *Id.* ¶¶ 3-4. Instead, in her report, Hendrick identifies only two publicly available documents that relate generally to the credit card industry as the basis for her opinions. *Id.* ¶ 8.

## III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper when the pleadings, discovery, and affidavits show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party.

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). On an issue for which the non-moving party has the burden of proof at trial, the moving party may "either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id.* Once the moving party meets its burden, the non-moving party must set out specific facts showing there is a genuine issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, [and/or] stipulations." Fed. R. Civ. P. 56(c)(1)(A). Mere allegations or denials do not defeat a moving party's allegations. *Gasaway v. Nw. Mut. Life Ins. Co.*, 26 F.3d 957, 959-60 (9th Cir. 1994). If the non-movant fails to produce enough evidence to show a genuine issue of material fact, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322-23.

### A.   <u>Defendants Are Entitled to Summary Judgment Dismissing SmartMetric's Claim for Damages.</u>

Defendants are entitled to summary judgment that SmartMetric may not recover damages. Although SmartMetric has the burden to prove its damages claim, it produced no evidence in fact discovery to substantiate that claim and may not offer such evidence now or at trial. Moreover, the late disclosure of Hendrick's damages opinions cannot preclude summary judgment. Not only are Hendrick's opinions barred as untimely disclosed, but also they are inadmissible as unqualified and unreliable under Rule 702 of the Federal Rules of Evidence and federal law governing the proper calculation of patent damages. Because SmartMetric will be unable to produce at trial any evidence to support its damages claim, this Court can and should grant summary judgment of no damages.

**1.     Summary Judgment of No Damages Is Proper Where There Is No Evidence to Support a Damages Award.**

Upon proof of infringement, the Patent Act permits an award of "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. Patent damages may take the form of either a patentee's lost profits or a reasonable royalty resulting from "arms-length bargaining." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed Cir. 2009). Under either measure, "[t]he patentee bears the burden of proving damages." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011); *see also Devex Corp. v. Gen. Motors Corp.*, 667 F.2d 347, 361 (3d Cir. 1981) (requiring patentee to adduce sufficient evidence to support lost profits or reasonable royalty damages claim).

Although the patent statute has been interpreted as creating a presumption of reasonable royalty damages when infringement is proven, the patentee still "must put on evidence supporting its assertion of a reasonable royalty rate." *Boston Sci. Corp. v. Johnson & Johnson*, 550 F. Supp. 2d 1102, 1120 (N.D. Cal. 2008) (citing *Dow Chemical Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381 (Fed. Cir. 2003); *Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d 1403, 1406 (Fed. Cir. 1990)). Specifically, proving a reasonable royalty, which "involves some approximation of the market as it would have hypothetically developed absent infringement . . . requires sound economic and factual predicates." *Riles v. Shell Exploration and Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002). In the absence of evidence as to what would constitute a reasonable royalty in a given case, a court may award a patentee no damages. *See Lindemann*, 895 F.2d at 1407 ("The statute [35 U.S.C. § 284] . . . requires the award of a reasonable royalty, but to argue that this requirement exists even in the absence of any evidence from which a court may derive a reasonable royalty goes beyond the possible meaning of the statute.") (citing *Devex*, 667 F.2d at 363 (affirming award of no damages given absence of

evidence to support royalty calculation)); *Apple, Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901, 913 (N.D. Ill. 2012) (holding that neither party could recover damages for patent infringement based on failure to offer competent proof); *Boston Sci.*, 550 F. Supp. 2d at 1120 (awarding no damages where patentee failed to present evidence to calculate non-speculative reasonable royalty award); *Monolithic Power Sys., Inc. v. O2 Micro Int'l, Ltd.*, 476 F. Supp. 2d 1143, 1155-56 (N.D. Cal. 2007) (granting summary judgment of no damages where only unreliable and inadmissible expert opinion offered to prove damages); *LG Elecs., Inc. v. Advance Creative Computer Corp.*, 212 F. Supp. 2d 1171, 1173 (N.D. Cal. 2002) (awarding no damages following default judgment, given failure to offer sufficient evidence to support claim); *KEG Techs., Inc. v. Laimer*, 436 F. Supp. 2d 1364, 1370 (N.D. Ga. 2006) (denying patent damages where patentee failed to offer evidence to support award of lost profits or reasonable royalty); *Ovadia Corp. v. Omeroglu Decoration, Ltd.*, No. 04 Civ. 8064(DLC), 2006 WL 3827557, at *1 (S.D.N.Y. Dec. 28, 2006) (awarding no damages where plaintiff failed to satisfy burden as to lost profits and "has … not provided any reliable basis for an award of reasonable royalties"); *Nat'l Presto Indus., Inc. v. Black & Decker, Inc.*, 760 F. Supp. 699, 701 (N.D. Ill. 1991) ("The patent statute provides for damages 'in no event less than a reasonable royalty.' . . . But that's assuming that damages have been proved up.  Neither the patent statute nor the rules of evidence contemplate judgments or jury verdicts based on conjecture, and we will not permit that in this case.") (citations omitted).

### 2.     No Evidence Exists to Support a Damages Award.

Summary judgment that SmartMetric is not entitled to recover damages is proper because SmartMetric can point to no evidence to support a damages award. SmartMetric has not produced any documents to support its claim, meaningfully responded to discovery requests seeking the basis for its claim, or complied with its Rule 26 obligation to disclose its damages computation.  Further, SmartMetric did not identify any witnesses in its initial disclosures as having knowledge of its

1   damages claim.  Melnik Decl. ¶ 10, Ex. 4 (SmartMetric's Initial Disclosures) at 2-4.

2   Timely disclosure and supplementation of SmartMetric's damages claim was

3   necessary to facilitate potential settlement discussions, prepare for trial, and focus

4   and prioritize the parties' organization of discovery.  *City & Cnty. of San Francisco*

5   *v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 220-21 (N.D. Cal. 2003).  Even had its

6   analysis been ongoing, SmartMetric was not excused from its disclosure

7   obligations.  Fed. R. Civ. P. 26(e)(1); *Moore's Federal Practice* § 26.22[4][c]

8   (plaintiff required to disclose best information available to it, however limited and

9   potentially changing it may be).  Having failed to produce evidence in discovery to

10  support its damages claim, SmartMetric is precluded from offering such evidence

11  "on a motion, at a hearing, or at a trial," absent proof that its failure to timely

12  disclose or supplement was substantially justified or harmless.  Fed. R. Civ. P.

13  37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-07

14  (9th Cir. 2001).  Such proof is lacking.  SmartMetric's deliberate indifference to its

15  discovery obligations does not justify—let alone substantially justify—its failure to

16  produce evidence of its damages claim.  And with discovery closed and less than

17  five months until trial, SmartMetric's discovery failures have significantly impeded

18  Defendants' trial preparation.  *See Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th

19  Cir. 1997) ("The issue is not whether [parties] eventually obtained the information

20  they needed, or whether plaintiffs are now willing to provide it, but whether

21  plaintiffs' repeated failure to provide documents and information in a timely

22  fashion prejudiced the ability of [defendants] to prepare their case for trial.").

23  Absent evidence to support a damages claim, SmartMetric cannot carry its

24  burden to prove entitlement to damages, and summary judgment is proper.  *Apple*,

25  869 F. Supp. at 913 (granting summary judgment that neither party could recover

26  patent damages); *Monolithic Power*, 476 F. Supp. 2d at 1155-56 (granting summary

27  judgment of no damages where plaintiff failed to carry burden of proof).

28

### 3. SmartMetric Cannot Create a Genuine Issue of Material Fact Regarding Damages by Relying on the Untimely, Unqualified, and Unreliable Opinion of Its CEO.

SmartMetric's entire damages claim turns on the "expert" opinion of its CEO, Hendrick. But Hendrick's opinions cannot create a genuine issue for trial as to SmartMetric's damages. Her proposed testimony on damages is barred as a matter of procedure, in light of its untimely disclosure, and for its failure to comply with Rule 702's requirements that expert opinion be both qualified and reliable.

#### (a) SmartMetric is barred from offering the untimely-disclosed Hendrick damages opinions.

Having failed to timely disclose any expert opinion on damages as required by this Court's October 2, 2012 Scheduling Order and Rule 26, SmartMetric is now barred from offering such opinion(s)—through Hendrick or any other witness—in any future proceeding. Thus, such opinions cannot preclude summary judgment,

Although the Court set a deadline of December 31, 2012 for initial expert disclosures, SmartMetric did not disclose its theory of damages until Hendrick's March 14, 2013 deposition and did not provide a written disclosure of Hendrick's alleged "expert" opinions until March 24, 2013. SmartMetric's late disclosure of Hendrick's damages opinions not only ran contrary to the Court's earlier scheduling order and expert disclosure requirements of Rule 26(a)(2), but also openly violated this Court's February 21, 2013 Order, which denied SmartMetric's express request to reset the deadlines for expert disclosure. ECF No. 64; ECF No. 87; Fed. R. Civ. P. 26(a)(2)(A)-(C). To the extent Hendrick's opinions are even admissible—and they are not—there is no justification for SmartMetric's late disclosure of the opinions. Indeed, at deposition, Hendrick admitted she had performed her damages analysis "[w]ithin the last six months" and that it did not depend on Defendants' documents; as a result, SmartMetric could and should have disclosed Hendrick's opinions by the Court's expert disclosure deadline. Melnik Decl. ¶ 7, Ex. 1 (Hendrick Tr.) at 226:18-227:6, 230:5-8. SmartMetric's unexcused failure to

comply with its expert discovery obligations has severely prejudiced Defendants' discovery efforts and trial preparation, and thus bars SmartMetric from relying on Hendrick's proposed testimony at trial or to resist summary judgment.  Fed. R. Civ. P. 37(c)(1); *Yeti by Molly*, 259 F.3d at 1106-07; *Pineda v. City & Cnty. of San Francisco*, 280 F.R.D. 517, 523 (N.D. Cal. 2012) (excluding untimely-disclosed expert testimony); *Veritas Operating Corp. v. Microsoft Corp.*, No. 2:06-cv-00703-JCC, 2008 U.S. Dist. LEXIS 35627, at *93-94 (W.D. Wash. Jan. 17, 2008) (barring employee from offering untimely-disclosed expert testimony regarding damages); *Benedict v. Zimmer, Inc.*, 232 F.R.D. 305, 317 (N.D. Iowa 2005) (barring late-disclosed expert report, explaining, "if the Benedicts had a legitimate need to extend the deadline for submitting their expert report, they should have filed a motion and sought an extension of the deadline").

> **(b)**     **Hendrick's opinions are inadmissible for failure to comply with Rule 702.**

> **(i)**     **Expert testimony must be qualified and reliable.**

Rule 702 "permits experts qualified by 'knowledge, experience, skill, expertise, training, or education' to testify 'in the form of an opinion or otherwise' based on 'scientific, technical, or other specialized knowledge' if that knowledge will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Salinas v. Amtek of Ky., Inc.*, 682 F. Supp. 2d 1022, 1029 (N.D. Cal. 2010) (quoting Fed. R. Evid. 702).  The expert's testimony must be based on "sufficient facts or data," it must be "the product of reliable principles and methods," and the expert must have "applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702.  The proponent of expert testimony bears the burden to establish "by a preponderance of the evidence that the admissibility requirements are met." *Salinas*, 682 F. Supp. 2d at 1029.

The trial court is obliged to act as a "gatekeeper" to ensure that proffered expert testimony is both reliable and relevant to the issues being tried. *Id.* at 1029-

30 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).  "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to the existing data only by the *ipse dixit* of the expert."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).  Likewise, subjective or speculative expert testimony is not admissible.  *See, e.g.*, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, Nos. 2011-1218, 2012-1238, 2013 WL 1200270, at *20-21 (Fed. Cir. Mar. 26, 2013) (finding that court abused discretion in admitting damages expert's testimony that rested on speculation); *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997) (affirming court's exclusion expert testimony that was "unsubstantiated and subjective, and therefore unreliable and inadmissible"); *Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994) ("An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record."); *In re Bausch & Lomb, Inc. Contact Lens Sol'n Prods. Liab. Litig.*, No. 2:06-MN-77777-DCN, 2009 WL 2750462, at *9 (D.S.C. Aug. 26, 2009).

### (ii) Hendrick is not qualified to opine on SmartMetric's alleged damages.

Hendrick's damages opinions—including her calculation of a reasonable royalty and conclusions regarding the availability of non-infringing alternatives—are inadmissible (and thus cannot preclude summary judgment) because Hendrick lacks qualifications to provide such testimony.

*First*, Hendrick is not qualified to offer opinions regarding the calculation of reasonable royalty damages.  Hendrick admits she has no background or experience assessing patent damages and is not familiar with the economic or legal principles governing such analyses. *See* Melnik Decl. ¶ 7, Ex. 1 (Hendrick Tr.) at 20:18-19, 217:12-218:16.  To the extent Hendrick's analysis turns on her opinion that "there is no comparable patent or patent license," Hendrick has no expertise in assessing

patent licenses.  Melnik Decl. ¶ 8, Ex. 2 (Hendrick Report) ¶ 4.  Indeed, her only claimed experience with licensing is her alleged negotiation of two licenses in the 1980s to publish online dictionaries.  Melnik Decl. ¶ 7, Ex. 1 (Hendrick Tr.) at 24:3-25:5, 26:17-27:20; *see also id.* at 127:11-13 (testifying SmartMetric has not licensed '464 patent), 219:16-22 (testifying she did not review any licenses or rates to form damages opinion).  Likewise, to the extent Hendrick's analysis turns on her conclusory statements regarding the payment card industry—including Defendants' respective market shares, projections regarding the future use of "EMV cards," the potential impact of such cards on payment card fraud, and the expectation that Defendants would benefit from fraud reduction—Hendrick professes no experience, background, or expertise in this industry.  *See* Melnik Decl. ¶ 8, Ex. 2 (Hendrick Report) ¶¶ 2-3.  Courts do not hesitate to preclude lay witnesses like Hendrick from offering unqualified opinions on patent damages.  *See, e.g.*, *Veritas*, 2008 U.S. Dist. LEXIS 35627, at *96 (barring testimony where "nothing in [witness'] background of record suggests experience in assessing patent damages, or more particularly in determining a reasonable royalty via licensing negotiations, or even in licensing at all"); *Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*, No. 1:08cv955(JCC), 2009 U.S. Dist. LEXIS 76043, at *8-12 (E.D. Va. Aug. 25, 2009) (barring damages opinion because COO lacked personal knowledge of information underlying damages calculations); *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 929-30 (10th Cir. 2004) (barring CEO from testifying about lost profits based on complex calculation about which CEO did not have personal knowledge).

*Second*, Hendrick is not qualified to offer opinions regarding acceptable non-infringing alternatives as part of a reasonable royalty analysis.  Although Hendrick opines that no "practical non-infringing alternative[s]" to the accused systems exist, Melnik Decl. ¶ 8, Ex. 2 (Hendrick Report) ¶ 6, nothing in Hendrick's background suggests she is familiar with the types of payment solutions that might constitute non-infringing alternatives to the accused payment system.  Indeed, apart from a

1  high school education and self-instruction in computer programming, Hendrick

2  claims no education or training.  Melnik Decl. ¶ 7, Ex. 1 (Hendrick Tr.) at 20:15-

3  23:21.  Courts bar witnesses from testifying about non-infringing alternatives where

4  the subject matter falls outside the witness's expertise.  *See Apple*, 869 F. Supp. 2d

5  at 905-906 (barring witness's testimony because "[t]here is no suggestion that he is

6  familiar with the range of chips that might constitute feasible and economical

7  substitutes for the '263"); *cf. In re Katz Interactive Call Processing Patent Litig.*,

8  882 F. Supp. 2d 1123, 1147 (C.D. Cal. 2010) (barring executive's testimony

9  regarding non-infringing alternatives where she never explained her qualifications

10  to testify about them); *EZ Dock, Inc. v. Schafer Sys., Inc.*, No. 98-2364 (RHK/AJB),

11  2003 WL 1610781, at *3-6 (D. Minn. Mar. 8, 2003) (barring testimony as to non-

12  infringing alternatives where expert lacked proper factual basis).

13  **(iii)   Hendrick's opinions regarding SmartMetric's alleged damages are unreliable.**

14

15      Hendrick's proposed testimony regarding damages also is inadmissible (and

16  thus, cannot provide a basis for avoiding summary judgment) because Hendrick's

17  opinions fail to meet Rule 702's reliability requirements in numerous ways.

18      *First*, Hendrick's opinions as to an appropriate royalty base are not grounded

19  in "sufficient facts or data" or "the product of reliable principles and methods," as

20  Rule 702 requires.  Although Hendrick opines that a reasonable royalty in this case

21  should be based on Defendants' alleged cost savings from using the patented tech-

22  nology to reduce payment card fraud, she then uses a royalty base of $52.95 billion,

23  which purportedly represents total "credit/debit card fraud losses expected" in the

24  United States between 2014 and 2020.   Melnik Decl. ¶ 8, Ex. 2 (Hendrick Report)

25  ¶ 2.  Hendrick fails to identify the source of this $52.95 billion figure.[5]  Moreover,

26  ───────────────
   [5] Hendrick previously testified that the appropriate royalty base in this case
27  was some derivative of an alleged $3.56 billion in annual credit and debit card fraud
   in the United States.  Melnik ¶ 7, Ex. 1 (Hendrick Tr.) at 213:17-215:18.  The fact
   that this figure does not bear any clear relation to the $52.95 billion royalty base
28  Hendrick uses now confirms the unreliability of Hendrick's approach.

DEFS.' MOTION FOR SUMMARY JUDGMENT
RE DAMAGES AND INJUNCTIVE RELIEF
Case No. CV 11-7126 MWF (AJWx)

she fails to provide any link between alleged fraud-based *losses* incurred in the United States as a whole and any *cost savings* that may accrue to *Defendants* from any fraud reduction resulting from using the accused technology. She also makes no effort to determine Defendants' actual or likely cost savings from such use.[6] Instead, she concludes only—without citation—that "[w]e expect EMV cards to be widely in use in the US by the end of 2014," that such use will "all but eliminate[] the yearly fraudulent transactions in the US," and that the "savings benefits in the US to VISA and MasterCard will continue into the indefinite future." Melnik Decl. ¶ 8, Ex. 2 (Hendrick Report) ¶¶ 3, 5. These unsubstantiated assumptions cannot turn alleged cost to the consuming public into savings to Defendants, particularly in light of Hendrick's testimony that costs to consumers from payment card fraud are distinct from any savings to Defendants that could result from fraud reduction. Melnik Decl. ¶ 7, Ex. 1 (Hendrick Tr.) at 230:9-231:3. Nor are such assumptions proper bases of expert opinion. *Tyger*, 29 F.3d at 142 ("An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record."); *Bausch & Lomb*, 2009 WL 2750462, at *9. Hendrick's use of a royalty base untethered to the value of the patented technology, and limited to speculative future projections, is unsound and does not support a damages computation. *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("[T]he trial court must carefully tie proof of damages to the claimed invention's footprint in the market place. . . . Any evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the statute."); *Riles*, 298 F.3d at 1312 (vacating damages award, noting expert's "model does not associate his proposed royalty with the value of the patented method at all, but with the unrelated cost of the entire Spirit platform, which includes much more than the cost of" not using patented technology).

---

[6] Indeed, Hendrick admitted that she had not considered any of Defendants' documents in formulating her opinions. *Id.* at 230:5-8.

*Second*, Hendrick's opinions as to an appropriate royalty rate are similarly unsupported and unreliable.  As a threshold matter, Hendrick concedes that her use of a 25% royalty rate was wholly subjective.  Melnik Decl. ¶ 7, Ex. 1 (Hendrick Tr.) at 218:17-219:15, 221:2-25.  This admission alone warrants excluding her opinion.  *Tyger*, 29 F.3d at 142; *Bausch & Lomb*, 2009 WL 2750462, at *9.

Moreover, Hendrick admits that in arriving at a 25% royalty rate, she did not consider most of the factors that inform a royalty analysis under *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, including the existence of benchmark patent licenses,[7] rates "paid by other licensees on any type of technology," commercial relationships between SmartMetric and any licensees, the value of the '464 patent in generating SmartMetric revenue, the profitability of any SmartMetric products embodying the patented technology, or Defendants' costs in adopting the accused technology.  318 F. Supp. 1116, 1119-20 (S.D.N.Y. 1970); *see also* Melnik Decl. ¶ 7, Ex. 1 (Hendrick Tr.) at 219:16-22, 222:18-223:1, 223:20-24, 230:5-8, 236:2-19, 236:20-23, 239:19-23.  Courts routinely exclude expert testimony that fails to reliably apply the *Georgia-Pacific* factors in calculating a reasonable royalty figure.  *See, e.g.*, *WhitServe, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 31 (Fed. Cir. 2012) ("Expert witnesses should concentrate on fully analyzing the applicable factors, . . . some explanation of both why and generally to what extent the particular factor impacts the royalty calculation is needed."); *IP Innovation LLC v. Red Hat, Inc.*, 705 F. Supp. 2d 687, 689-91 (E.D. Tex. 2010) (Rader, J., sitting by designation) (excluding expert as having used unreliable method where expert failed to account for other comparable licenses as guided by *Georgia-Pacific*); *Minebea Co. v. Papst*, No. 97-0590 (PLF), 2005 WL 1459704, at *3 (D.D.C. Jun. 21, 2005) (excluding expert who failed to explain how *Georgia-Pacific* factors justified royalty rate).  While Hendrick claimed at her deposition to have considered one of the *Georgia-*

_____

[7] With Hendrick having admitted that she did not review any patent licenses, her conclusion that "[t]o my knowledge, there is no comparable patent or patent license" should be disregarded.  Melnik Decl. ¶ 8, Ex. 2 (Hendrick Report) ¶ 4.

*Pacific* factors—alleged advantages of the '464 Patent over previous technology—she conceded that she considered this factor only "[i]n a general way . . . [n]ot specifically."  Melnik ¶ 7, Ex. 1 (Hendrick Tr.) at 224:9-225:6.  But Hendrick's superficial consideration of this factor does not support her otherwise grossly deficient analysis. *See Whitserve*, 694 F.3d at 31 (plaintiff may not rely on *Georgia-Pacific* analysis to support damages where expert merely "recit[ed] each factor and make[s] conclusory remark[s]" that these factors "increase" damages).

Although Hendrick claims that her "proposed 25% royalty rate leaves a very conservative 75% to account for the contribution of non-patented elements in the accused systems/methods," Hendrick conceded she did not actually consider "the portion of profit that should be credited to the invention in a commercial embodiment versus non-patented elements of any product," and she did not recall taking into account the value of any non-patented elements of the Defendants' systems in deciding to apply a 25% rate.  Melnik Decl. ¶¶ 7-8, Ex. 2 (Hendrick Report) ¶ 4; Ex. 1 (Hendrick Tr.) at 225:18-20, 226:10-17.  Instead, Hendrick appears simply to be relying on the "25 percent rule of thumb."  While this tool was once widely "used to approximate the reasonable royalty rate that the manufacturer of a patented product would be willing to offer to pay to the patentee during a hypothetical negotiation," the Federal Circuit has expressly rejected it as a "fundamentally flawed tool for determining a baseline royalty rate in a hypothetical negotiation." *Uniloc*, 632 F.3d at 1315 (holding that "[e]vidence relying on the 25 percent rule of thumb is thus inadmissible under *Daubert* and the Federal Rules of Evidence, because it fails to tie a reasonable royalty base to the facts of the case at issue").

*Third*, Hendrick's opinions as to the existence of acceptable non-infringing alternatives lack any factual basis.  Hendrick cites no data to support her conclusion that Defendants neither have nor have considered any non-infringing alternatives to the accused contact chip card payment systems and cannot "readily abandon" their alleged plans to use that technology in the United States.  Melnik Decl. ¶ 8, Ex. 2

DEFS.' MOTION FOR SUMMARY JUDGMENT
RE DAMAGES AND INJUNCTIVE RELIEF
Case No. CV 11-7126 MWF (AJWx)

(Hendrick Report) ¶ 6.  Nor was Hendrick able to point to a single source for her opinion that contactless payment card technology does not qualify as a viable non-infringing alternative.  Melnik Decl. ¶ 7, Ex. 1 (Hendrick Tr.) at 239:24-243:22. Hendrick's opinions are classic expert *ipse dixit* that are inadmissible to support SmartMetric's damages claim.  *Gen. Elec.*, 522 U.S. at 146.

*Finally*, Hendrick's remaining opinions are inadmissible because they fail to comply with Rule 702's reliability requirements.  Hendrick's opinions as to various aspects of the payment card industry—including Defendants' market shares, her "expect[ation]" that "EMV cards" will be widely used in the U.S. by the end of 2014, and the role such cards will have on "eliminat[ing]" payment card fraud—are not based on any facts or data, let alone sufficient ones.  Melnik Decl. ¶ 8, Ex. 2 (Hendrick Report) ¶¶ 2-3, 5.  Indeed, Hendrick cites no sources that substantiate any of these opinions.  Similarly, Hendrick's opinion as to how responsibility for the $13.24 billion royalty amount she computed should be divided between Visa and MasterCard is not based on any reliable methodology.[8]  Hendrick's conclusion that a royalty should be allocated between Defendants based on their comparative annual revenues—rather than an analysis of the value of the patented technology to *each* defendant—finds no support in the law.  *See Riles*, 298 F.3d at 1311 ("A 'reasonable royalty' contemplates a hypothetical negotiation between the patentee *and the infringer* at a time before the infringement began.") (emphasis added).

**B.   Defendants Are Entitled to Summary Judgment Dismissing SmartMetric's Claim for Injunctive Relief.**

Defendants are entitled to summary judgment that SmartMetric is not entitled to injunctive relief in this case.  This is because SmartMetric, which does not sell any products that practice the asserted claims of the '464 Patent or compete with

---

[8] That Hendrick's damages calculation increased from $11 billion to $13.24 billion in the two-week period between her deposition and her report further demonstrates the unreliability of her opinions.  *Compare* Melnik Decl. Ex. 1 (Hendrick Tr.) at 213:17-215:18, *with* Melnik Decl. Ex. 2 (Hendrick Report) ¶ 2.

Defendants' accused products, cannot establish—as required by Supreme Court law—irreparable harm that has resulted or will result from Defendants' alleged infringement or that legal remedies would inadequately compensate SmartMetric.

### 1. Injunctive Relief Requires Proof of Irreparable Harm and Inadequacy of Monetary Relief.

Under the Patent Act, a district court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. "[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Specifically, a plaintiff must show that: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *Id.* Patentees seeking injunctive relief are not entitled to a presumption of irreparable harm merely upon a showing that the asserted patents are valid and have been infringed. *Id.* at 392. Rather, they must offer proof of irreparable injury and inadequacy of legal remedies to obtain an injunction. *Id.* at 391; *see also Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 995 (9th Cir. 2011) (*eBay* "was very clear that even where infringement had been proven, a plaintiff may not be granted injunctive relief until he satisfies the four-factor test, which includes demonstrating irreparable injury").

As a general matter, "[c]ourts awarding permanent injunctions typically do so under circumstances where [the] plaintiff practices its invention and is a direct market competitor." *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 592 F. Supp. 2d 727, 747 (D. Del. 2009) (quoting *Advanced Cardiovascular Sys. v. Medtronic Vascular, Inc.*, 579 F. Supp. 2d 554, 558 (D. Del. 2008)). Conversely, courts deny injunctive relief to plaintiffs who do not commercialize their inventions and/or do not directly

compete with the accused infringer because such plaintiffs cannot prove irreparable harm. *See Amado v. Microsoft Corp.*, No. SA CV 03-242 DOC (ANx), 2007 U.S. Dist. LEXIS 96487, at *34, 38-39 (C.D. Cal. Mar. 13, 2007), *vacated in part on other grounds*, 517 F.3d 1353 (Fed. Cir. 2008) (denying injunction where plaintiff was "not in the business of selling any software that practice[d]" asserted patent, "is not a competitor of [defendant], and has never sold a license of his patent or otherwise successfully commercialized it"); *MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 570 (E.D. Va. 2007) (denying injunction where plaintiff did not market or sell products practicing patents and thus "failed to establish that an injunction is necessary to protect its brand name, market share, reputation, goodwill, or future research and development opportunities"); *z4 Techs., Inc. v. Microsoft Corp.*, 434 F. Supp. 2d 437, 440 (E.D. Tex. 2006) (same).

Absent proof of irreparable injury and inadequacy of legal remedies, requests for injunctive relief may be dismissed as a matter of law. *Apple*, 869 F. Supp. 2d at 915, 922-23 (granting summary judgment dismissing request for injunctive relief where parties failed to prove irreparable harm); *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823JLR, 2012 U.S. Dist. LEXIS 170587, at *26-31 (W.D. Wash. Nov. 29, 2012) (granting summary judgment dismissing request for injunctive relief where plaintiff failed to show it suffered irreparable injury or that legal remedies were inadequate to compensate for injury, noting that "the court need not reach the other elements of the standard for permanent injunctive relief").

### 2. SmartMetric Can Point to No Evidence of Irreparable Harm or Inadequacy of Monetary Relief.

Summary judgment dismissing SmartMetric's request for injunctive relief is proper because SmartMetric can point to no evidence of—and thus, cannot prove—irreparable harm or inadequacy of legal remedies. Here, it is undisputed that Smart-Metric has never sold any products (including any products that allegedly practice the asserted claims of the '464 patent). Melnik Decl. ¶ 7, Ex. 1 (Hendrick Tr.) at

125:2-15, 128:3-20.  Although SmartMetric purports to have developed products in the form of "[s]mart cards that are activated by fingerprints," it does not claim that any of these products compete with Defendants' accused payment systems, which provide payment processing services over information processing networks to support payment card purchase transactions. *Id.* at 59:20-60:1, 91:13-17, 98:6-12, 100:11-101:1, 105:22-106:18.  Moreover, Smart-Metric has conceded that, having never sold any products, it has no market share. *Id.* at 193:2-20.  And SmartMetric has never identified or produced any evidence tending to show that it has suffered or will suffer irreparable harm—for example, in the form of harm to its brand name, market share, reputation, or goodwill—as a result of Defendants' alleged infringement.[9]  Thus, SmartMetric cannot demonstrate irreparable harm that would warrant injunctive relief, or that monetary relief—such as license fees—would be inadequate.[10]  *Amado*, 2007 U.S. Dist. LEXIS 96487, at *38-39; *MercExchange*, 500 F. Supp. 2d at 570; *z4 Techs.*, 434 F. Supp. 2d at 440; *Unicom Monitoring, LLC v. Cencom, Inc.*, No. 06-1166 (MLC), 2013 WL 1704300, at *8-10 (D.N.J. Apr. 19, 2013).  And SmartMetric cannot resist summary judgment based solely on its conclusory allegation that it "has suffered, and continues to suffer, irreparable harm by [defendants'] ongoing infringement of the '464 patent."  Melnik Decl. Ex. 6 (SmartMetric's Resp. to Visa's 1st Rogs) at 16; Clark Decl. Ex. B (SmartMetric's Resp. to MasterCard's 1st Rogs) at 15; *Gasaway*, 26 F.3d at 960 (holding "mere allegations or denials" cannot defeat summary judgment).  That is particularly true where Hendrick's damages analysis is based solely on speculation of future harm.

## C.   Defendants Are Entitled to Entry of Final Judgment.

Where "a plaintiff fails to establish any basis for an award of relief, the

_____

[9] For the reasons noted above, SmartMetric would be unable to rely on any new, heretofore undisclosed evidence of alleged irreparable harm. *Supra* at 11-12.

[10] Although, as explained above, SmartMetric may not recover monetary relief in light of its inability to prove damages, "[a] patentee cannot base a claim to an injunction on a self-inflicted wound, such as sponsoring a damages expert who prepares a demonstrably inadequate point." *Apple*, 869 F. Supp. 2d at 919.

defendant is entitled to a judgment dismissing the case with prejudice . . . ." *Apple*, 869 F. Supp. 2d at 923.  This is because, absent entitlement to legal or injunctive relief, a plaintiff has not suffered a redressable injury and, thus, no subject matter jurisdiction exists over the plaintiff's claims.  *Id.* at 903, 923-924 ("[W]hen the court has determined that neither party could obtain monetary or injunctive relief against the other . . . there would be no federal subject-matter jurisdiction"); *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1263-64 (Fed. Cir. 2011) (Article III requires that federal courts hear only "cases" or "controversies," which exist only when plaintiff has standing); *Biotechnology Indus. Org. v. Dist. of Columbia*, 496 F.3d 1362, 1369-70 (Fed. Cir. 2007) (standing requires, at minimum, suffering "an injury in fact"); *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1338 (Fed. Cir. 2008) (injury in fact must be "concrete and actual" and "redressable by a favorable decision").  Accordingly, courts have granted final judgment where a plaintiff has failed to prove entitlement to relief.  *See Apple*, 869 F. Supp. 2d at 923 (entering final judgment dismissing patent infringement suits with prejudice after granting summary judgment that parties were not entitled to recover damages or obtain injunctive relief); *AVM Techs., LLC v. Intel Corp.*, Civil Action No. 10-610-RGA, ECF No. 294 (Order) at 3-4 (D. Del. Mar. 29, 2013) (entering final judgment dismissing patent infringement suit after granting summary judgment that plaintiff was not entitled to damages based on lack of proof and had not sought other relief).

Because SmartMetric is not entitled to either damages or an injunction in this case, the Court can and should enter final judgment in Defendants' favor dismissing SmartMetric's claims.

## IV.   CONCLUSION

For the reasons stated above, the Court should grant summary judgment that SmartMetric is not entitled either to recover damages or to obtain injunctive relief and should enter final judgment in Defendants' favor dismissing with prejudice all of SmartMetric's claims.

Dated:  May 6, 2013

Respectfully submitted,

JONES DAY

By    _____/s/ Joseph Melnik_____
                    JOSEPH MELNIK

Attorneys for Defendant and Counterclaimant
VISA INC.

Dated:  May 6, 2013

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By    _____/s/ Gary A. Clark_____
                    GARY A. CLARK

Attorneys for Defendant and Counterclaimant
MASTERCARD INTERNATIONAL
INCORPORATED

DEFS.' MOTION FOR SUMMARY JUDGMENT
RE DAMAGES AND INJUNCTIVE RELIEF
Case No. CV 11-7126 MWF (AJWx)

# ATTESTATION

I, Joseph Melnik, a CM/ECF User whose ID and password are being used to file the foregoing **DEFENDANTS AND COUNTERCLAIM-PLAINTIFFS MASTERCARD INTERNATIONAL INC. AND VISA INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT REGARDING PLAINTIFF AND COUNTERCLAIM-DEFENDANT SMARTMETRIC INC.'S CLAIM FOR DAMAGES AND INJUNCTIVE RELIEF AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**, in compliance with L.R. 5-4.3.4(a)(2)(i), attest that Gary A. Clark of Sheppard Mullin Richter & Hampton LLP, attorneys for Defendant and Counterclaim-Plaintiff MasterCard International Inc., has concurred with this filing's content and has authorized this filing.

Dated:  May 6, 2013

Respectfully submitted,

JONES DAY

By _____
                  /s/ Joseph Melnik
                  JOSEPH MELNIK

Attorneys for Defendant and Counterclaimant
VISA INC.

1  [List of Additional Counsel]

2  JASON MCDONELL (State Bar No. 115084)
   jmcdonell@jonesday.com
3  JONES DAY
   555 California Street, 26th Floor
4  San Francisco, CA 94104
   Telephone:  (415) 626-3939
5  Facsimile:   (415) 875-5700

6  STEVEN J. CORR (State Bar No. 216243)
   sjcorr@jonesday.com
7  ALEXIS A. HOULE (State Bar No. 274429)
   ahoule@jonesday.com
8  JONES DAY
   555 South Flower Street, 50th Floor
9  Los Angeles, CA 90071
   Telephone:  (213) 489-3939
10 Facsimile:   (213) 243-2539

11 Attorneys for Defendant and Counterclaimant
   VISA INC.
12
   DARREN M. FRANKLIN (State Bar No. 210939)
13 dfranklin@sheppardmullin.com
   DENNIS J. SMITH (State Bar No. 233842)
14 dsmith2@sheppardmullin.com
   SHEPPARD MULLIN RICHTER & HAMPTON LLP
15 333 South Hope Street
   Los Angeles, CA 90071
16 Telephone:  (213) 620-1780
   Facsimile:   (213) 620-1398
17
   Attorneys for Defendant and Counterclaimant
18 MASTERCARD INTERNATIONAL INCORPORATED

19

20

21

22

23

24

25

26

27

28

DEFS.' MOTION FOR SUMMARY JUDGMENT
RE DAMAGES AND INJUNCTIVE RELIEF
Case No. CV 11-7126 MWF (AJWx)