UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SMARTMETRIC, INC., <br><br>                Plaintiff(s), <br><br>  vs. <br><br>MASTERCARD INTERNATIONAL, INC.; and VISA, INC., <br><br>                Defendant(s). | Case No.:  CV-11-7126-MWF (AJWx) <br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO NON-INFRINGEMENT [122], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO INFRINGEMENT [100, 118], AND DENYING AS MOOT MOTION FOR SUMMARY JUDGMENT AS TO DAMAGES [119] AND MOTION FOR SUMMARY JUDGMENT AS TO INVALIDITY [129] |

      This patent action is before the Court on three Motions for Summary Judgment filed by Defendants and one Motion for Summary Judgment filed by plaintiff SmartMetric.  (Docket Nos. 100, 118, 119, 122, 129).  Having considered the parties' submissions, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Non-infringement (Docket No. 122), **DENIES** Plaintiff's Motion for Summary Judgment as to Infringement (Docket Nos. 100, 118), and **DENIES AS MOOT** Defendants' Motions for Summary Judgment as to Invalidity and Damages.  (Docket Nos. 119, 129).

In deciding these Motions under Rule 56, the Court applies *Anderson*, *Celotex*, and their Ninth Circuit progeny. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Where, as here, "the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Securities Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The burden then shifts to the non-moving party, which may not simply rely on allegations in its pleadings but must identify specific facts raising a genuine dispute that will be material at trial. Fed. R. Civ. P. 56(c).

## I.     PROCEDURAL HISTORY

The Scheduling Order in this matter, dated October 2, 2012, set clear deadlines for expert disclosures. (Docket No. 64). Initial expert disclosures were required by December 31, 2012 and rebuttal expert disclosures were required by January 28, 2013. (*Id.*). SmartMetric served no expert disclosures during the allotted time and did not move to further amend the scheduling order before the deadlines passed. On February 7, 2013, well after the deadlines elapsed, SmartMetric filed an Ex Parte Application to Continue Scheduling Order, seeking a 60 day continuance of all deadlines, purportedly in light of a large document production by Defendants. (Docket No. 84). The Court granted the Application only in part by extending fact discovery to March 29, 2013. (Docket No. 87). All other requests were denied. (*Id.* ("The Court hereby DENIES all other extensions requested in Plaintiff's Application. All dates except the discovery cut-off date shall remain as set forth in the Court's Order Modifying Scheduling Order filed October 2, 2012.")). Motivating the Court's decision was the fact that precisely ordered expert disclosures are critical to fairly conducted patent litigation.

1       Over a week after the Court denied SmartMetric's request to continue expert
2 disclosures, on March 1, 2013, SmartMetric served the "Infringement/Validity
3 Report from Edward L. Gussin on Behalf of Plaintiff/Counter-Defendant
4 SmartMetric Inc." ("Gussin Report"). (See Docket No. 89). SmartMetric then
5 filed a declaration in support of a Motion for Summary Judgment based on the
6 Gussin Report. (Docket No. 101). SmartMetric's Motion for Summary Judgment
7 as to Infringement was amended and re-filed pursuant to the Court's order as
8 Docket Number 118. SmartMetric attached a second, revised Declaration of
9 Edward L. Gussin in support of the amended Motion for Summary Judgment.
10 (Docket No. 118-4). While Defendants were able to depose Gussin within the
11 discovery period, their rebuttal experts did not have the benefit of his report when
12 drafting their opinions, leaving Defendants to guess about how SmartMetric would
13 attempt to prove its case.
14       Similarly, SmartMetric did not disclose a damages expert within the Court's
15 deadlines. SmartMetric served a document it contends is an expert report on
16 March 24, 2013, just five days before the fact discovery cut-off date. (See Docket
17 No. 151). The "Damages Report from Chaya Hendrick on Behalf of Plaintiff/
18 Counter-Defendant SmartMetric Inc." purports to contain an expert opinion on
19 damages as a function of a reasonable royalty rate. (*Id*.). Defendants urge the
20 Court to exclude both reports, preventing SmartMetric from introducing evidence
21 or testimony based on the information they contain.
22       Putting aside the substantive problems with these reports and Defendants'
23 Rule 702 objections, it is undisputed that their service was untimely. The untimely
24 disclosure of expert reports was contrary to the Court's repeated orders and likely
25 prejudiced Defendants.
26       The Court issued a Minute Order on June 19, 2013, converting the hearing
27 on the pending motions for summary judgment into a status conference to address
28 the reports and declarations because their exclusion would potentially impact the

Court's decision on each pending motion. (Docket No. 162). The Court held a status conference on June 24, 2013, and took the Motions under submission. In spite of this somewhat convoluted procedural history, the Court will consider the substantive Motions on their merits.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO NON-INFRINGEMENT IS GRANTED ON ITS MERITS

The Court **OVERRULES** SmartMetric's evidentiary objections, including the objections to the Declarations of Dr. Toni Merschen, Christian Aabye, and Dr. Jack Grimes.

After claim construction, assessing infringement involves comparing the construed claims of a patent to the accused device or product. *See, e.g.*, *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572-73 (Fed. Cir. 1997) (applying Ninth Circuit procedural standards). Specifically, each limitation from the patent in suit must be present in the accused system in order to constitute literal, direct infringement and the Court's analysis must take place on a limitation-by-limitation basis. *See Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249, 1253 (Fed. Cir. 2010) ("To establish literal infringement, 'every limitation set forth in a claim must be found in an accused product, exactly.'" (citation omitted)). On a motion for summary judgment on infringement or invalidity, "[a]n evidentiary dispute is genuine if a jury could decide the issue either way, and its verdict would survive a motion for judgment as a matter of law." *Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376, 1380 (Fed. Cir. 2007).

"To satisfy the summary judgment standard, a patentee's expert must set forth the factual foundation for his infringement opinion in sufficient detail for the court to be certain that features of the accused product would support a finding of infringement under the claim construction adopted by the court, with all reasonable inferences drawn in favor of the non-movant." *Intellectual Sci. & Tech., Inc. v.*

*Sony Elecs., Inc.*, 589 F.3d 1179, 1184 (Fed. Cir. 2009) (affirming grant of summary judgment of non-infringement in favor of defendant where patentee's expert did not raise a genuine issue of material fact).

Expert declarations that contain only conclusory allegations on the ultimate legal issue are insufficient to defeat summary judgment. *See Stamps.com, Inc. v. Endicia, Inc.*, 437 F. App'x 897, 913 (Fed. Cir. 2011) (applying Ninth Circuit procedural law, conclusory expert opinion failed to raise issue of fact); *Innogenetics N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373-74 (Fed. Cir. 2008) (finding conclusory an expert report that "merely lists a number of prior art references and then concludes with the stock phrase 'to one skilled in the art it would have been obvious to perform [the claimed methods]'"); *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008) (applying Ninth Circuit procedural law and explaining that "[c]onclusory expert assertions cannot raise triable issues of material fact on summary judgment"); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1278 (Fed. Cir. 2004) ("It is well settled that an expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue of material fact, and that a party may not avoid that rule simply by framing the expert's conclusion as an assertion that a particular critical claim limitation is found in the accused device."); *Aspex Eyewear, Inc. v. Concepts in Optics, Inc.*, 111 F. App'x 582 (Fed. Cir. 2004) ("[S]ummary judgment could not have been granted without expert testimony ***clearly explaining*** how each claim element is disclosed in the Madison invention." (emphasis added)); *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002) ("[In the Ninth Circuit, t]ypically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference.").

United States Patent No. 6,792,464 (the "'464 Patent") has two independent claims, Claims 1 and 14. SmartMetric fails to show a genuine issue of material fact whether at least two limitations found in those Claims are present in the accused systems – the requirements of local access numbers and databases of access numbers.

Claim 1 teaches a "computer system" with an "application program" that provides, in part, "access to one of the plurality of network service providers via . . . *a local access number* from *a database containing a list of access numbers* [f]or the plurality of network service providers *along with corresponding location information for each access number in the list*." ('464 Patent at 10:18-47, emphasis added). Claim 14 teaches a "method" that involves "configuring an application program . . . to gain access to one of the plurality of network service providers via . . . *a local access number* from *a database containing a list of access numbers* for the plurality of network service providers *along with corresponding location information for each access number in the list*." ('464 Patent at 11:32-50, emphasis added). Defendants argue that SmartMetric has not and cannot show that these limitations are present in the accused systems.

In their Motion, Defendants offer evidence that "[a]t no step of the transaction does the cardholder's geographic location matter." (Mot. at 7; *see also id*. at 12-16; Aabye Decl. ¶ 11). Nor do the accused systems include a database containing local access numbers with corresponding location information. (Mot. at 16-19; Aabye Decl. ¶ 11; Grimes Decl. ¶ 9-11). Defendants also offer evidence that their systems for processing transactions in place of off-line banks ("stand-in processing") do not rely on the geographic location of the cardholder or the merchant or utilize access numbers tethered to geographic locations found in a database. (Mot. at 8; Aabye Decl. ¶ 11-12; Grimes Decl. ¶ 9-11).

To refute this evidence, SmartMetric offers speculative conclusions by Gussin presuming these elements can be reasonably inferred to exist in the accused

systems. Most of the relevant analysis emerges from the Gussin Declaration, which improperly added analysis not present in the Gussin Expert Report or inferable from it, functionally supplementing the Gussin Report in violation of the Court's orders. Even considering the analysis in the Declaration, Gussin's presumptions lack foundation in facts. Gussin's deposition testimony reveals that these presumptions as they pertain to use within the United States (the only possible subject of a U.S. patent action) are not based on any examination or testing of the accused systems. When specifically called at his deposition to describe or elaborate on his conclusion that the documents he relied on display each limitation in a single Visa or MasterCard system, Gussin declined to do so. (*E.g.*, Gussin Dep. at 149-50 ("Q: [W]hy did you provide this EMV document in support of your allegations that Visa infringes claim 1 of the '464 patent? A: This was one of the documents that was provided by Visa. Q: Any other reason? A: It appears to be a good representation of how the system is described. Q: Of which system? A: The Visa system.")).

Instead, his "inferences" that these limitations are present seem, to this Court, to be guesses about how EMV systems could plausibly work. (Gussin Decl. ¶ 19). For instance, Gussin admits that none of the thousands of documents he reviews makes any mention of a database of local access numbers (which, according to the Court's Claim Construction Order, must relate to the locale of the user at the time of access (*see* Docket No. 65 at 12)). (Gussin Decl. ¶ 19). In the absence of evidence of local access numbers in any Visa or MasterCard system, Gussin asserts that the Defendants' "stand-in processing" systems "clearly route transaction authorization requests through the Visa and MasterCard networks to processing assets other than the default processor." (*Id.*). This routing process would likely include "a list of routing addresses which must be stored in a database in order for the router to know where to route the requests to." (*Id.*). But the Declaration does not describe the stand-in processing systems in any detail, nor

does the Declaration explain (as an expert must do in order to defeat summary judgment) how the documents Gussin cites show that the stand-in processing systems employ a database of local access numbers.

Gussin's omission to provide sufficient detail is especially worrisome when Defendants have presented evidence that Gussin's inferences do not, in fact, describe how Defendants' systems actually work.  (Reply at 8).  Gussin infers that the stand-in processing system would likely route a user's request "to a center geographically close to the POS, ATM or other card-initiated transaction." (Gussin Decl. ¶ 19).  Defendants have provided the testimony of a fact witness familiar with Visa's system who testified that "the locale of the cardholder is immaterial to the Visa System."  (Aabye Decl. ¶ 11).  On a Motion for Summary Judgment, once the Defendants have sufficiently shown that no evidence exists on which the Plaintiff can carry its burden of proof at trial, the burden shifts to the Plaintiff to show that a genuine issue of material fact exists.  *See Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1087 (C.D. Cal. 2003) ("[A] plausible scenario cannot counter direct evidence offered in support of a motion for summary judgment." (citing *Swanson v. Leggett & Platt*, 154 F.3d 730, 733 (7th Cir. 1998))).  Without some specific guidance as to why he believes Aabye's Declaration to be false, Gussin's inferences are nothing more than guesses that do not counter Aabye's testimony and do not raise a genuine issue of material fact.

Gussin fails even to describe *which* of Defendants' systems Plaintiff refers to in its infringement analysis.  The Gussin Declaration merely states in separate paragraphs that each claim of the '464 Patent is infringed and lists Bates Numbers and short, abstruse descriptions of documents purportedly supporting that contention.  (Gussin Decl. ¶¶ 4-16).  But it is not even clear which of Defendants' devices or products the Declaration references because Gussin only generically identifies Defendants' "EMV Systems."  (*E.g.*, *id.* ¶ 18).  It appears that Gussin

8

refers to Defendants' payment systems generally, as he has never examined or tested Defendants' accused systems (let alone identified them with any specificity). In his deposition, Gussin stated both that he didn't know which of the documents he cited referred to systems that were actually in use, and that he hadn't engaged in any testing of the systems. (Gussin Dep. at 128:1-9 ("Q: Are you aware of any uses of the technology described in the documents that you reviewed? . . . A: I believe that the documents accurately describe how the Visa system works. If they were produced in response to a request in this case, I would assume that Visa sent accurate representation of their system."); *id.* at 129:16-20 ("Q: [D]id you do any actual testing of the Visa system . . . ? A: No. I did not do any testing of the system.")).

Beyond Gussin's apparent unfamiliarity with the systems at issue, his failure to identify a specific product or system with each limitation of the '464 Patent belies the notion that each feature appears in **a *single system***, as required by the black-letter law of patent infringement. *See, e.g.*, *Builders Concrete, Inc. v. Bremerton Concrete Products Co.*, 757 F.2d 255, 257 (Fed. Cir. 1985) ("Literal infringement requires that ***the accused device embody every element of the claim***." (emphasis added)). If a patentee owns a patent that claims attaching an eraser to a pencil, there is no literal infringement with the mere showing that an accused infringer has, at certain times in the past, possessed and used both pencils and erasers. The patentee must point the court to a single device in which both of the claim's limitations are met. Plaintiff here has not done so.

Instead, Gussin has only listed fragmentary documents for the Court that he suggests display the Defendants' use of each limitation in Claims 1 and 14 of the '464 patents. He has not shown that either Defendant has integrated these various devices, processes, and techniques into a system that literally infringes the patent. The documents that Gussin identifies have widely divergent dates; some were created in 1996, some in 2012, and several in between. Some of the documents

Gussin identifies are dated before the '464 Patent issued, and there are certain limitations of the '464 Patent, like the local access number and database, that do not appear at all. Some of the documents refer to systems that were found to be non-infringing in the prior case (the Honorable Jacquelyn H. Nguyen, then-United States District Judge), specifically, the contactless card payment system. And Gussin assumes, without any identifiable factual basis, that documents describing the contactless systems would have counterparts in the contact system. (Gussin Dep. at 151:14-18). Given that Gussin personally reviewed the thousands of produced documents, many of which pertain specifically to the contact system, this assumption seems rather incredible.

Hendrick's Report fares no better. At her Rule 30(b)(6) deposition, Hendrick conceded that her damages analysis was not based on any documents from Defendants. She testified that she has never served as a damages expert, she has never participated in a license or royalty negotiation, she has never qualified as an expert, and she has never heard of the applicable standard for assessing the reasonability of a royalty. Her company, SmartMetric, does not practice the '464 Patent. The opinions she offers are therefore conclusory and lacking foundation.

This Motion is also properly granted on the basis that Defendants do not make, use, or sell infringing devices, as required for a finding of infringement. For a system claim, direct infringement requires that "a party must put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it." *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011). Control is defined as "the ability to place the system as a whole into service" by "using all portions of the claimed invention." *Id.* It is undisputed that the Defendants do not themselves issue smartcards, manufacture, configure, or otherwise control smartcard readers, insert smartcards into readers or interact directly with cardholders, or engage in any other function ascribed in consumer transactions to the cardholder or the merchant.

The Gussin Declaration points to documents produced by the Defendants that *describe* cards and card readers (*see* Gussin Decl. ¶¶ 6-7), but it does not sufficiently show that Defendants *control* the cards and card readers, as required for literal infringement under Federal Circuit precedent. *Centillion Data Sys.*, 631 F.3d at 1284 (holding that an alleged infringing telecommunications company, which admittedly put into practice certain back-end processing functions of a system claim, did not "use" an entire system in part because individual front-end users controlled their own activity in accessing the system). For this reason, Defendants cannot be found to "use" the systems that purportedly infringe on Claim 1, and they cannot be held liable for direct infringement as a result.

The parties contest whether Defendants' specific "use" of the method in Claim 14 is sufficient to give rise to liability assuming the existence of literal infringement by the accused systems. For a method to directly infringe on a patent in suit, "the accused infringer must perform all the steps of the claimed method, either personally or through another acting under his direction or control." *Akamai Tech. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1307 (Fed. Cir. 2012) (applying vicarious liability only when act is committed by accused infringer's agent or some equivalent relationship, even if the division of infringing activity was intended to avoid liability). SmartMetric has failed to show that the merchants, cardholders, and various banks involved in the EMV transactions act under Defendants' direction or control. Defendants cannot be found to "use" a method that infringes Claim 14, and they cannot be held liable for direct infringement as a result.

Because Defendants cannot be found to infringe independent Claims 1 and 14 of the '464 Patent on the record before the Court, they cannot be found to infringe any of the dependent claims. *See Jeneric/Pentrol, Inc. v. Dillon, Co.*, 205 F.3d 1377, 1383 (Fed. Cir. 2000) ("[A] dependent claim, by nature, incorporates all the limitations of the claim to which it refers.").

In sum, all these issues ineluctably point to the conclusion that the parties here are comparing apples and oranges. The piecemeal similarities that SmartMetric has identified in support of its claims do not change the fact that Claims 1 and 14 of the '464 patent are simply not practiced by Defendants, and no reasonable jury could conclude otherwise.

Accordingly, summary judgment in Defendants' favor is **GRANTED** on the question of non-infringement. Plaintiff's Motion for Summary Judgment as to Infringement is **DENIED** for the same reasons. Defendants' other Motions for Summary Judgment are **DENIED AS MOOT**.

### III. IT WOULD ALSO BE AN APPROPRIATE EXERCISE OF THE COURT'S DISCRETION TO STRIKE THE GUSSIN AND HENDRICK REPORTS, PRECLUDING USE OF THEIR TESTIMONY IN SUPPORT OF THE MOTIONS AND AT TRIAL, PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37(C)(1)

Federal Rule of Civil Procedure 37(c)(1) provides that no party may rely on untimely disclosed witnesses or evidence unless the nondisclosure was substantially justified or harmless. Exclusion of evidence is intended to be the sanction that gives meaning to the Court's scheduling orders, and the burden is on the party facing sanctions to show that the late disclosure was either substantially justified or harmless. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001) (affirming exclusion of expert testimony). The Federal Circuit reviews exclusions of evidence under the law of the regional circuit. *See, e.g.*, *Tokai Corp. v. Easton Enters.*, 632 F.3d 1358 (Fed. Cir. 2011) (applying Ninth Circuit law and finding the district court did not abuse its discretion by excluding late-disclosed expert declarations when deciding summary judgment motions).

The Ninth Circuit affords "particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." *Yeti by Molly*, 259 F.3d at 1106. This latitude remains even when exclusion is highly prejudicial to a party's claim. *Jarritos v. Reyes*, 345 F. App'x 215, 217 (9th Cir. 2011) (affirming exclusion of evidence that was "central" to a plaintiff's claim and therefore "highly prejudicial"). Although certain Ninth Circuit authority indicates that such sanctions are proper even where they functionally, albeit not directly, dispose of a claim, *see Yeti by Molly*, 259 F.3d at 1106 (upholding decision to exclude evidence where it made proof of a claim "much more difficult, perhaps almost impossible"), one recent decision held that where exclusion is tantamount to dismissal, the district court must "consider whether the claimed noncompliance involved willfulness, fault, or bad faith" and must also consider the availability of lesser sanctions, like a continuance. *R & R Sails v. Insurance Co. of Pa.*, 673 F.3d 1240, 1247 (9th Cir. 2012) (reversing and remanding because district court did not make such a finding). The Federal Circuit has not yet relied on *R & R Sails*, which is not a patent case.

SmartMetric has not shown that its failure to disclose either expert report was substantially justified or harmless. The late disclosures were not substantially justified because neither expert exclusively or even primarily relies on documents that were unavailable to SmartMetric prior to the expert disclosure deadline. Nor do the reports or SmartMetric's papers attempt to explain why any unavailable document was critical to an opinion offered.

Ordinarily, the Court would not belabor this point, especially in a case – as here – where the Court chose to reach the merits in any event. In this patent case, however, it is important to note the importance of the expert deadlines. Treatises describe patent cases as games of chicken, with each side preferring to tailor its strategy to the arguments of its opponent. *See, e.g.*, James A. Amend, *Patent Law: A Primer for Federal District Court Judges* 6 (1998) ("Once it is recognized that

patent cases principally involve conflicting contentions and not fact disputes, an important cause of judicial frustration becomes clearer. *Neither party wants to disclose its contentions first.*"). As a solution, the treatises propose strictly ordered discovery to prevent one side from dodging its disclosure responsibilities and thereafter benefitting from its recalcitrance. Specifically, certain treatises suggest that each party must serve expert disclosures on the issues for which it bears the burden of persuasion of trial, and "any issue not addressed in the Opening Expert Report is waived insofar as expert testimony is concerned." *Id.* at 29.

SmartMetric had the benefit of Defendants' reports in commissioning its own experts and did not serve its reports until a time when Defendants were hamstrung by the Scheduling Order. This bell cannot be unrung. Because of SmartMetric's conduct, Defendants' steadfast compliance with Court orders was to their detriment.

Moreover, under Federal Circuit precedent, excluding the Hendrick Report alone would not be tantamount to dismissal of SmartMetric's claims. If the Court were only to exclude the Hendrick Report, the *R & R Sails* factors appear to be inapplicable. In *Dow Chemical v. Mee Industries*, 341 F.3d 1370 (Fed. Cir. 2003), the Federal Circuit held that the exclusion of testimony of a patentee's damages expert did not preclude an award of reasonable royalty damages that could otherwise be supported by the record. *Id.* at 1381 (district court must award no less than a reasonable royalty as supported by the record upon a finding of infringement). *Dow Chemical* explains that the district court ***must*** award damages in the form of a reasonable royalty, and the failure of a plaintiff to present evidence ***only*** undermines the plaintiff's ability to challenge the award given. *Id.* at 1382 ("[T]he district court's obligation to award some amount of damages does not mean that a patentee who puts on little or no satisfactory evidence of a reasonable royalty can successfully appeal on the ground that the amount awarded by the court is not 'reasonable.'"); *see also Bos. Scientific Corp. v. Johnson & Johnson*, 550 F.

1  Supp. 2d 1102, 1120-21 (N.D. Cal. 2008) (awarding zero damages after trial in
2  light of patentee's failure to put on evidence); *Monolithic Power Sys., Inc. v. O2*
3  *Micro Int'l Ltd.*, 476 F. Supp. 2d 1143, 1156 (N.D. Cal. 2007) (granting summary
4  adjudication of zero damages).
5        Applying this reasoning, exclusion of a damages expert would not end any
6  claims, and would therefore not trigger application of *R & R Sails*.
7        Accordingly, even if the Court had not granted the Motion for Summary
8  Judgment as to Non-infringement on its merits, the Court would have had the
9  discretion to strike SmartMetric's expert reports and reach the same ruling.  The
10 objections of Defendants are **OVERRULED AS MOOT** but if reached would
11 have been valid.
12
13 ## IV.  ENTRY OF FINAL JUDGMENT
14       At the September 25, 2013 hearing on this matter, counsel for the
15 Defendants indicated that the Defendants would withdraw their counterclaims
16 against Plaintiff upon the issuance of an order granting them summary judgment of
17 non-infringement.  The Defendants should submit a request for voluntary dismissal
18 of their counterclaims pursuant to Federal Rule of Civil Procedure 41(a).  The
19 Court will enter final judgment on this matter upon receipt of the Defendants'
20 request.
21
22       IT IS SO ORDERED.
23
24
25 Dated:  October 2, 2013          _____
26                                 MICHAEL W. FITZGERALD
                                United States District Judge
27
28