Patrick F. Bright (State Bar No. 68709)
**WAGNER, ANDERSON & BRIGHT PC**
3541 Ocean View Boulevard
Glendale, California 91208
Telephone: (818) 249-9300
Facsimile: (818) 249-9335
E-Mail: pbright@brightpatentlaw.com

*Attorneys for Plaintiff SmartMetric, Inc.*

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA (WESTERN DIVISION)

| | |
|---|---|
| SMARTMETRIC, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MASTERCARD INTERNATIONAL INCORPORATED AND VISA INC.,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No.  11-CV-7126 MWF (AJWx)<br><br>**OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS, OF PLAINTIFF SMARTMETRIC, INC., CONSISTING OF ATTACHED MEMORANDUM OF POINTS & AUTHORITIES**<br><br>[Also part of Smartmetric's Opposition to Defendants Motion, are the Concurrently-Filed Declarations of Chaya Hendrick, Patrick Bright, Esq., and Edward Gussin, with Exhibits]<br><br>Defendants' Motion is Set for Hearing on:<br>Date:  December 9, 2013<br>Time:  10:00am<br>Place: Courtroom 1600 of Hon. M. W. Fitzgerald<br>      312 N. Spring Street<br>      LA, CA 90012 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i

1

## Table of Contents

2
3
I.   THIS COURT LACKS JURISDICTION TO HEAR DEFENDANTS'
     MOTION ("DMo)....................................................................1

4
5
II.  THIS CASE IS <u>NOT</u> AN 'EXCEPTIONAL' CASE, AS THE TERM
     'EXCEPTIONAL' IS USED IN 35 USC §285...............................1

6
7
III. THE CONTROLLING CASE LAW IS THE FEDERAL CIRCUIT'S
8    <u>***BROOKS***</u> LINE OF CASES, WHICH STATE THE "SUBJECTIVE
     BAD FAITH" <u>PLUS</u> "OBJECTIVELY BASELESS" TEST..............3

9
10
IV.  DEFENDANTS MUST PROVE UP BOTH PRONGS OF THE
11   OBJECTIVELY BASELESS/SUBJECTIVE BAD FAITH <u>***BROOKS***</u>
     TEST; THERE  WAS NO MISCONDUCT IN THE PTO, AND NO
12   "LITIGATION MISCONDUCT"...........................................4

13
14
V.   DEFENDANTS HAVE FAILED TO PROVE, BY CLEAR AND
15   CONVINCING EVIDENCE, THAT SMARTMETRIC BROUGHT
     THIS CASE IN <u>SUBJECTIVE BAD FAITH</u>; THIS FACT ALONE
16   REQUIRES DENIAL OF DMo.............................................11

17
18   A.  <u>Smartmetric has Presumption of Good Faith, because</u>
19       <u>Smartmetric was Suing on a Duly Issued Patent; Defendants'</u>
         <u>Evidence Fails to Overcome that Presumption of Good Faith, by</u>
20       <u>Clear and Convincing Evidence</u>.....................................11

21
22
23   B.  <u>The Previous Litigation Shows Good Faith by Smartmetric,</u>
         <u>Contrary to What Defendants' Motion Argues</u>.........................12
24

25
26
27
28

C.   The Declarations of Chaya Hendrick, Patrick Bright and Edward Gussin to this Opposition Show That Smartmetric Proceeded in Subjective Good Faith, in the Herein Suit..............................12

D.   The Whole Conduct of the Case Evidences Smartmetric was Proceeding in Subjective Good Faith Throughout, NOT Subjective Bad Faith.................................................................15

VI.  DEFENDANTS HAVE FAILED TO PROVE, BY CLEAR AND CONVINCING EVIDENCE, THAT SMARTMETRIC'S CASE IS OBJECTIVELY BASELESS; THIS FACT ALONE REQUIRES DENIAL OF DMo.................................................................18

A. Defendants' Motion Fails Address the Highly Relevant, Federal Circuit 2013 *Checkpoint* case, and 2011 Federal Circuit *Google* case, each of which Demonstrate Smartmetric's Suit cannot be considered to have been Objectively Baseless........................................18

B. Smartmetric Substantially Prevailed on the *Markman* Claim Interpretation Hearing, and, using the Definitions the Court Adopted, at the *Markman* Hearing, Smartmetric's Expert Opined that Defendants' Documents Showed Defendants' EMV Systems Include Each Element of Smartmetric's Asserted Patent Claims..................20

VII. EVERY TIME A COURT RULES, ONE SIDE PREVAILS, AND THE OTHER DOES NOT; THE COURT RULING AGAINST SMARTMETRIC ON INFRINGEMENT DOES NOT ESTABLISH SMARTMETRIC'S SUIT WAS OBJECTIVELY BASELESS......22

VIII  THERE IS NO REQUIREMENT OF AWARDING ANY FEE, EVEN IN AN "EXCEPTIONAL" CASE; 35 USC §285 SAYS COURT "MAY", NOT "SHALL", AWARD A REASONABLE ATTORNEYS FEE; EVEN IF ASSUMED ARGUENDO TO BE A "EXCEPTIONAL" CASE, A REASONABLE FEE FOR DEFENDANTS' INFRINGEMENT BRIEFING WOULD BE $60,000.....................23

IX.  CONCLUSION................................................................25

## **Table of Authorities**

## CASES

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
    421 U.S. 240 (U.S. 1975)..................................................19

*Amsted Indus. v. Buckeye Steel Castings Co.*,
    23 F.3d 374 (Fed. Cir. 1994)...........................................2

*Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*,
    605 F.3d 1305 (Fed. Cir. 2010).......................................2

*Automated Bus. Cos. v. NEC Am., Inc.*,
    202 F.3d 1353 (Fed. Cir. 2000)......................................10

*Beckman Instruments, Inc. v. LKB Produkter AB*,
    892 F.2d 1547 (Fed. Cir. 1989).........................7, 23, 24

*Bayer Aktiengesellschaft v. Duphar Int'l Research B.V.*,
    738 F.2d 1237 (Fed. Cir. 1984)......................................10

*Brooks Furniture Mfg. v. Dutailier Int'l, Inc.*,
    393 F.3d 1378 (Fed. Cir. 2005)..............................*passim*

*Checkpoint Sys. v. All-Tag Sec. S.A.*,
    711 F.3d 1341 (Fed. Cir. 2013).....................................18

*Computer Docking Station Corp. v. Dell, Inc.*,
    519 F.3d 1366 (Fed. Cir. 2008).....................................24

*Cybor Corp. v. Fas Techs.*,
    138 F.3d 1448 (Fed. Cir. 1998).......................................2

*Electro-Mechanical Indus. v. Universal Support Sys.*,
    359 Fed. Appx. 160 (Fed. Cir. 2009)...............................2

*Eltech Systems Corp. v. PPG Industries, Inc.*,
    903 F.2d 805 (Fed. Cir. 1990).......................................10

*Eon-Net LP v. Flagstar Bancorp,*
    653 F.3d 1314 (Fed. Cir. 2011)............................................9

*Fleischmann Distilling Corp. v. Maier Brewing Co.,*
    386 U.S. 714 (U.S. 1967)...............................................19

*Forest Group, Inc. v. Bon Tool Co.,*
    590 F.3d 1295 (Fed. Cir. 2009)........................................7

*Forest Labs., Inc. v. Abbott Labs.,*
    339 F.3d 1324 (Fed. Cir. 2003)......................................2, 7

*Highmark, Inc. v. Allcare Health Mgmt. Sys.,*
    687 F.3d 1300 (Fed. Cir. 2012).................................*passim*

*Highmark, Inc. v. Allcare Health Mgmt. Sys.,*
    186 L. Ed. 2d 962 (U.S. 2013).........................................2

*Icon Health & Fitness, Inc. v. Octane Fitness, LLC,*
    496 Fed. Appx. 57 (Fed. Cir. 2012)....................................2

*iLOR, LLC v. Google, Inc.,*
    631 F.3d 1372 (Fed. Cir. 2011)......................3, 4, 18, 19, 22

*In re Seagate Tech., LLC,*
    497 F.3d 1360 (Fed. Cir. 2007)........................................3

*MarcTec, LLC v. Johnson & Johnson,*
    664 F.3d 907 (Fed. Cir. 2012)....................................2, 9, 22

*Mathis v. Spears,*
    857 F.2d 749 (Fed. Cir. 1988).......................................10

*Mead Johnson & Co. v. Barr Lab., Inc.,*
    38 F. Supp. 2d 289 (S.D.N.Y. 1999)...................................7

*Monolithic Power Sys. v. O2 Micro Int'l Ltd.,*
    726 F.3d 1359 (Fed. Cir. 2013).......................................8

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
    186 L. Ed. 2d 962 (U.S. 2013)..................................................2

*Prof'l Real Estate Investors v. Columbia Pictures Indus.*,
    508 U.S. 49, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (U.S. 1993)..............4, 19

*Rambus Inc. v. Infineon Techs. Ag*,
    318 F.3d 1081 (Fed. Cir. 2003)...............................................9

*Read Corp. v. Portec, Inc.*,
    970 F.2d 816 (Fed. Cir. 1992)..........................................7, 23, 24

*Soverain Software LLC v. J.C. Penney Corp.*,
    899 F. Supp. 2d 574 (E.D. Tex. 2012).......................................7

*Special Devices, Inc. v. OEA, Inc.*,
    269 F.3d 1340 (Fed. Cir. 2001)....................................3, 7, 23, 24

*Springs Window Fashions LP v. Novo Indus., L.P.*,
    323 F.3d 989 (Fed. Cir. 2003)............................................4, 19

*Sun-Tek Industries, Inc. v. Kennedy Sky Lites, Inc.*,
    929 F.2d 676 (Fed. Cir. 1991)..............................................10

*Synthese USA, LLC v. Spinal Kinetics, Inc.*,
    ___ F.3d ___, 2013 WL 5788657 (Fed. Cir. 10/20/13)........................2

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
    726 F.3d 1306 (Fed. Cir. 2013).............................................8

*Wedgetail, Ltd. v. Huddleston Deluxe, Inc.*,
    576 F.3d 1302 (Fed. Cir. 2009).......................................3, 6, 19

**STATUTES**

35 USC § 285....................................................................*passim*

# FEDERAL RULES OF CIVIL PROCEUDRE

Fed. R. Civ. P. 11................................................................................8

Fed. R. Civ. P. 37(c)......................................................................6, 17

# FEDERAL RULES OF EVIDENCE

Fed. R. Evid. 702(a)-(d)........................................................................17

Fed. R. Evid. 801(d)...........................................................................17

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. THIS COURT LACKS JURISDICTION TO HEAR DEFENDANTS' MOTION ("DMo")

Defendants Visa, Inc., and Mastercard International, Inc. ("Defendants") Motion ("DMo" hereafter), motion, filed **after** Smartmetric appealed to the Federal Circuit, leaves this Court **without jurisdiction** to hear DMo. The Court should deny DMo for lack of jurisdiction. On 10/2/13, Defendants told the Court they would dismiss their counterclaims, resolving the whole suit, and allowing appeal. On 10/9/2013, Defendants filed this dismissal pleading. Defendants' pleading did not seek to delay dismissal until Defendants filed DMo, or mention that they would move for fees.

The Court entered the dismissal on 10/16/2013. The dismissal does not reserve to Defendants the right to move for attorneys fees, per 35 USC 285, or at all; it is silent about attorneys fees. By Notice filed 10/17/13, Smartmetric appealed the Court's non-infringement summary judgment against Smartmetric, to the Federal Circuit, thereby ending the Court's jurisdiction over this case, during the appeal, which is ongoing. (Bright dec, para. 22). Defendants delayed filing DMo until 10/30/13, by which time, due to the appeal, the District Court no longer had jurisdiction over this case. DMo cites no authority that the District Court can hear DMo, with this case on appeal. This Court must deny DMo for lack of jurisdiction. See *Griggs v. Provident Consumer Disc. Co,* 459 US 56, 58, 103 S.Ct. 400 (1982) (The filing of a notice of appeal is an event of jurisdictional significance. It confers jurisdiction on the court of appeals **and divests the district court of its control over those aspects of the case involved in the appeal.**")

### II. THIS CASE IS <u>NOT</u> AN 'EXCEPTIONAL' CASE, AS THE TERM 'EXCEPTIONAL' IS USED IN 35 USC §285

DMo moves for award of attorneys fees, and expert witness fees, per 35 USC §285. 35 USC §285 states: "The court in <u>exceptional</u> cases <u>may</u> award

reasonable attorney fees to the prevailing party." The Court should deny DMo, because it fails to sustain Defendants' burden of proving, by clear and convincing evidence, that this case is 'exceptional', pursuant to the controlling Federal Circuit cases that specify what constitutes an 'exceptional' case, for 35 USC §285 purposes. Applicable law precludes DMo's request for expert witness fees under §285, so that part of DMo should be denied. *Amsted Indus. v. Buckeye Steel Castings Co.*, 23 F.3d 374 (Fed Cir 1994); *Electro-Mechanical Indus. v. Universal Support Sys.*, 359 Fed.Appx. 160, 165-166 (Fed Cir 2009).

To award attorneys fees, per §285, a district court must **first** determine whether the prevailing party has proved that the case is **exceptional**, by **clear and convincing evidence**: "The party seeking attorneys fees under §285 must establish, by clear and convincing evidence that the case is exceptional". *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915 (Fed Cir. 2012), quoting *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1314 (Fed Cir. 2010), and citing *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327 (Fed Cir. 2003) for this proposition.

**Second**, only "If the district court finds that the case is exceptional, it must then "determine whether an award of attorney fees is appropriate and, if so, the amount of the award." *Highmark, Inc., v. Allcare Health Mgmt. Sys.*, 687 F.3d 1300, 1308 (Fed Cir. 2012), rehearing denied, 701 F.3d 1351 (2012)[1]. *Accord: MarcTec*, supra, at 916., citing *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1460 (Fed Cir. 1998). Accord, *Synthese USA, LLC v. Spinal Kinetics, Inc.*, ___ F.3d ___, 2013 WL 5788657 (Fed Cir. 10/20/13). DMo at 13:8-14 concedes this.

A Court need not award fees, even in an "exceptional" case, because §285 provides that the Court, in an exceptional case, "may", NOT "shall", award fees.

---

[1] US Supreme Ct granted cert.on *Highmark* 10/1/13 (No.12-1163), at ___ S.Ct ___, 2013 WL 1217353 (10/1/13), along with granting cert. 10/1/13 (No. 12-1184), on *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, ___ SCt ___, 2013 WL1283843; Fed Cir. decision in *Octane* is 496 Fed.Appx. 57, 2012 WL 5237021 (Fed Cir. 2012), not for publication.

Further, "[T]he amount of the attorneys fees [awarded] depends on the **extent** to which the case is exceptional." *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1344 (Fed. Cir. 2001), quoted in *Highmark, Id.*

## III. THE CONTROLLING CASE LAW IS THE FEDERAL CIRCUIT'S *BROOKS* LINE OF CASES, WHICH STATE THE "SUBJECTIVE BAD FAITH" PLUS "OBJECTIVELY BASELESS" TEST

The controlling Federal Circuit test, which this Court must apply, to determine whether a case is 'exceptional' under §285 is stated in *Brooks Furniture Mfg., v. Dutailier Int'l, Inc.*, 393 1378, 1381 (Fed Cir. 2005) ("*Brooks*" hereafter), and is re-confirmed, as controlling, in *Wedgetail Ltd. v. Huddleston Deluxe, Inc.*, 576 F.3d 1302, 1304 (Fed. Cir. 2009), and *iLOR, LLC v. Google, Inc.*, 631 F. 3d 1372, 1376-1380 (Fed. Cir. 2011), and *Highmark*, supra.

*Brooks*, at 1381, holds that, absent <u>fraud in securing the patent</u> (not even alleged by DMo) or <u>litigation misconduct</u> (see IV, below, no "litigation misconduct" here under §285 cases), attorneys fees can be awarded, under §285, to prevailing accused infringers, ONLY IF they prove <u>BOTH</u> that patentee's case was "<u>objectively baseless</u>" and was "<u>brought in subjective bad faith</u>." Cases following *Brooks* explain how to determine <u>subjective bad faith</u>, and <u>objective baselessness</u>:

**FIRST PRONG**--(Patentee acted in **subjective bad faith** in bringing suit): The district court must first determine whether the movant has proven patentee sued in **subjective bad faith.** To establish "**subjective bad faith**", the Federal Circuit directs that "<u>even if the claim is objectively baseless</u>, movant must prove that lack of objective foundation for the claim '**was either known or so obvious that it should have been known**' by the party asserting the claim'." *In re Seagate Tech, LLC*, 497 F.3d 1360, 1371 (Fed Cir 2007) quoted in *Highmark,* supra, at 1308; AND

**SECOND PRONG**--(Suit **Objectively Baseless**):  The <u>second prong</u> is that the district court must determine whether movant has established that the suit is **objectively baseless.**  To be objectively baseless, "the infringement allegations

3

must be such that **no reasonable litigant could reasonably expect success on the merits.**" *Google,* 631 F.3d at 1376, citing *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993); *Highmark,* supra, at 1308-09.

Unless Defendants prove BOTH PRONGS, **each** by clear and convincing evidence, the case is NOT 'exceptional', under §285, and attorneys fees cannot be awarded. DMo does not prove either of those things; see V. and VI. infra.

Others have said this controlling test "borders on impossible"[2] for movant to prove. DMo lacks clear and convincing evidence **either** that Smartmetric sued in subjective bad faith, **or** that its position was objectively baseless, much less both.

On the "subjective bad faith" element, the Federal Circuit holds that "there is a presumption that an assertion of infringement of a duly granted patent is made in good faith". *Brooks,* supra, at 1382 (citing *Springs Window Fashions LP v. Novo Indus., L.P.,* 323 F.3d 989, 999 (Fed. Cir. 2003)). Here, Smartmetric sued on a duly granted patent; this Court must presume Smartmetric sued in good faith.

The Federal Circuit holds that where movant doesn't prove that patentee sued in subjective bad faith, the Court must deny DMo, and need not decide whether the suit was objectively baseless. *Brooks,* supra, at 1381.

## IV. DEFENDANTS MUST PROVE UP BOTH PRONGS OF THE OBJECTIVELY BASELESS/SUBJECTIVE BAD FAITH *BROOKS* TEST; THERE WAS NO MISCONDUCT IN THE PTO, AND NO "LITIGATION MISCONDUCT"

Defendants must prove both prongs of the *Brooks* subjective bad faith/objective baselessness test, by clear and convincing evidence. DMo does not allege misconduct in the PTO in obtaining the '464 patent. Nor was there any "litigation misconduct", as defines by controlling §285 cases. Only two DMo

---

[2] "bordering on impossible" standard is a quote (p.19, line 16) from Defendant Octane Fitness, LLC's Petition for Certiorari to the US Supreme Court, **cited by DMo**, petitioning the US Supreme Court to grant certiorari on the Federal Circuit's denial of §285attorneys fees to Octane Fitness, LLC, in *Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 2012 WL 5237021 (Fed Cir. 2012), rehearing and rehearing en banc denied.

paragraphs (p.1:10-22, 20:11-17) alleging "litigation misconduct". Each asserts that Smartmetric's <u>continuing to litigate</u> was "litigation misconduct":

> "Smartmetric's conduct from the time it [SmartMetric] **failed to meet the Court's deadline for submission of the expert report** on infringement was calculated and intended to keep Defendants mired in a **frivolous lawsuit** for which, by this time, SmartMetric was absolutely clear it had **no factual support**. This type of **litigation misconduct** alone would make this case exceptional under 285". [Motion,.20:13-17]... "At **no point in this lawsuit has SmartMetric been able to articulate the factual and legal basis for its contention that Defendants have infringed the '464 patent**, not even after Defendants provided discovery. Smartmetric did not merely **fail to conduct a reasonable pre-litigation investigation** in this case--it blatantly **ignored facts from the previous litigation** distinctly demonstrating that Defendants' systems do not practice the claims of the '464 patent". Second, putting aside SmartMetric's groundless infringement accusations during the early stages of the litigation, once Smartmatric **failed to submit an expert report on infringement**, **failed to persuade** the Court to extend the deadline for such submission, and **failed to present an expert** who could identify all elements of the asserted claiming in Defendants' system's Smartmetric's continued effort to litigate the case constituted <u>litigation misconduct</u> ..."[Motion,1:11-22]

The actual evidence is to the **contrary**: (1) Smartmetric's expert Gussin's Declarations, made AFTER the *Markman* claim interpretation, say Defendants' documents show Defendants' EMV systems have all 6 elements in Smartmetric's asserted claims (Bright dec, paras. 5, 6, 7, 11, 13; Gussin dec, paras.3-19); so, Smartmetric **did** produce evidence that Defendants' EMV systems infringe, namely, Gussin's expert opinion, based on Defendants' own documents, and on admissions of Defendants' spokesman Merschen (Bright dec, paras. 5, 7, 8, 9, 11, 13; Gussin dec, paras. 3-14); (2) Smartmetric did a reasonable pre-suit investigation (Bright dec, paras. 4,11; Hendrick dec, para. 2; Gussin dec, para.22); (3) Smartmetric's previous litigation over the '464 patent about "contactless" cards, not EMV systems, shows Smartmetric's good faith, because Smartmetric dismissed promptly after adverse claim interpretation (Bright dec, paras. 2,3); (4)

Smartmetric did not fail to serve expert reports, serving them just slightly late, still months before trial, only because Defendants delayed, for 7 months, producing their confidential documents (Bright dec, para. 14); (5) the Court did not extend its Rule 26 deadline for serving expert reports, but admissibility of these reports is governed by FRCP Rule 37, not Rule 26; the 10/2/2013 ruling did not exclude Gussin's report; and if it had, it would have violated Rule 37 and case law which provides substantial justification, harmlessness of lateness, and lesser sanctions all avoid exclusion (Bright dec, para.14).

In sum, the Motion's "litigation misconduct" argument is **wholly contrary to the evidence**. Smartmetric's position substantially prevailed in the *Markman* claim interpretation (Bright dec, para. 10). Thereafter, expert Gussin attested that, using the *Markman* terms as defined by the Court, Defendants' EMV systems contained all 6 elements of claims 1 and 14 of the '464 patent, based on Defendants' own documents, and based on admissions of Defendants' witnesses. (Bright dec, paras. 5, 6, 11, 13; Gussin dec, paras. 3-19 & 21). Smartmetric had no reason to think the Court would reject Smartmetric's position, until the Court issued its 10/2/2013 ruling (Bright dec, paras 8, 9). Smartmetric believes that ruling is erroneous, and has appealed it to the Federal Circuit (Bright dec, paras. 8, 9). But regardless what happens on appeal, the 10/2/2013 ruling against Smartmetric does NOT establish Smartmetric's position was objectively baseless, or in subjective bad faith, or that it was "litigation misconduct" for Smartmetric to litigate through the Court's ruling on the cross motions for summary judgment. (Bright dec, paras. 8, 9).

Section 285 case law emphasizes that **only a limited universe of circumstances warrant a finding of exceptionality** per Section 285, e. g., *Wedgetail*, supra, at 1304 , and exceptionality must be proven by clear and convincing evidence. *Id.* As *Wedgetail, Id*, says, the **Federal Circuit has rejected an expansive reading of §285**; and absent **litigation misconduct** or **inequitable**

**conduct in obtaining the patent**, attorneys fees can be awarded to the prevailing accused infringer only if the litigation is brought in **subjective bad faith**, AND is **objectively baseless**:

> "[M]indful of the **limited circumstances** in which an award of attorney fees is appropriate," *Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1329 (Fed.Cir.2003)*, **this court has rejected an "expansive reading of § 285,"** which would permit findings of exceptionality in circumstances other than those listed above, *id.,* and **(absent litigation misconduct or inequitable conduct before the PTO)** has permitted the award of attorney fees to a prevailing accused infringer " *only* if both (1) the litigation is brought in **subjective bad faith**, and (2) the litigation is **objectively baseless**," *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381 (Fed.Cir.2005)* [bold/underline added for emphasis]

As *Highmark*, supra at 1315-16, explains, "litigation misconduct" generally involves **unethical or unprofessional conduct:**

> " 'Litigation misconduct generally involves **unethical or unprofessional conduct** by a party or his attorneys during the course of adjudicative proceedings,' ... A finding of **exceptionality based on litigation misconduct, however, usually does not support a full award of attorneys' fees.** *See Beckman*, 892 F.2d at 1553–54. Instead, the fee award 'must bear some relation to the extent of the misconduct,' *Special Devices*, 269 F.3d at 1344 (quoting *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 831 (Fed.Cir.1992)), and compensate a party for the ' *extra* legal effort to counteract the [ ] misconduct,' *Beckman,* 892 F.2d at 1553."

No reported case has held that serving an expert report late constitutes "litigation misconduct" under §285. To the contrary, in *Mead Johnson & Co. v. Barr Lab., Inc.*, 38 F. Supp. 2d 289, 297 (S.D.N.Y. 1999), the court denied a motion for §285 attorneys fees, finding Barr's failure to provide a comprehensive expert's report, and presentation at trial of testimony outside of the scope of its expert report, though improper, did not warrant award of attorneys fees. Nor does losing on an evidentiary ruling, and failure to produce documents, make a case "exceptional". *Soverain Software, LLC v. J.C. Penney Corp., Inc.* 899 F. Supp. 2d 574, 586-87 (E.D. Tex. 2012). Accord: *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295,

1304-05(Fed. Cir. 2009) (no fee award despite evidence concealment, false testimony, and discovery sanctions).

None of the cases DMo cites, regarding "litigation misconduct", are on-point. Unlike this case, each of those cases involved **knowingly bad acts** by the patentee, such as fraud, FRCP Rule 11 violations, or other intentionally bad acts, absent here. Following, from most recent to oldest, are all the cases Defendants cite regarding §285/litigation misconduct: *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1326 (Fed. Cir. 2013) (not on point, did not find litigation misconduct; instead, upheld district court's finding that it was <u>objectively baseless</u> for patentee to continue to claim web surfers were "users", after district court had defined "user" to mean a person with ability to edit the program, which web surfers could not do; also upheld finding of <u>subjective bad faith</u> in patentee continuing to litigate after the fatal-to-patentee claim interpretation of "user"); *MonolithicPower Sys., v. O2 Micro Int'l, Ltd.*, 726 F.3d 1359, 1366 (Fed. Cir. 2013) (facts not on point; 10 year pattern of patentee suing competitor's customers, then dismissing after substantial litigation; plus patentee got caught proffering false testimony in lawsuit against competitor, repeatedly misrepresenting the date of a schematics printout used to corroborate (falsely early) conception date; and dissembled to mask its proffer of false testimony, when competitor proved date false); *Highmark*, supra, 687 F.3d at 1309 (Fed. Cir. 2012), cert.granted see fn 2 supra (reversed District Court ruling that there was litigation misconduct, held the 3 things that the district court ruled were litigation misconduct (asserting a frivolous position based on res judicata and collateral estoppel, shifting the claim construction position throughout the course of proceedings, and making misrepresentations re venue transfer motion) were not. Also reversed ruling that patentee position re. claim 52 was not objectively baseless, though patentee's proposed construction was not most likely one, and was ultimately not adopted by the District Court.  Affirmed that patentee's position on claim 102 was baseless, because preamble to that claim

8

required interaction with patients and employers, patentee never supplied any plausible contrary argument, and accused system did not have any interaction with patients and employers, and so could not infringe claim 102); *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915 (Fed.Cir.2012) (not on point: patent required bonding by heat; defendants did not bond by heat; patentee offered "junk science" expert, not admissible per *Daubert*, who argued spraying on a coating caused heat, with no proof of that; plus patentee misrepresented law on claim construction); *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1326 (Fed. Cir. 2011) (not on point, turned on knowingly bad acts by patentee: patentee destroyed relevant documents; produced incomplete/misleading evidence; failed to engage in claim construction process in good faith; district court found patentee showed lack of regard for judicial system); *Brooks Furniture,* supra at 1382-85(Fed. Cir. 2005) (affirmed non-infringement, reversed §285 attorneys fees; held patentee had not acted in bad faith in asserting competitor's product infringed, reversing District Court finding of bad faith.  District Court finding of bad faith, relied on to make suit 'exceptional', was based on patentee sending a cease and desist letter; that patentee made infringement claim, which District Court found frivolous; also, patentee, in other suits, had sued smaller competitors, little able to afford to defend themselves.  District Court had discounted patentee's pre-suit investigation of infringement, including getting patent attorney infringement opinions, before suing. Federal Circuit reversed discounting by District Court, and found patentees had right to sue both bigger and smaller defendants); *Rambus Inc. v. Infineon Techs. Ag*, 318 F.3d 1081, 1106 (Fed. Cir. 2003) (totally inapplicable on its facts, because patentee did not contest, on appeal, the District Court's holding of litigation misconduct, based on patentee executives' false and misleading testimony, on patentee's pre-suit document destruction after sending cease and desist letters to defendant, on patentee's failure to list documents on its privilege log, and on

9

patentee's obfuscatory discovery responses, refusing to admit facts not genuinely disputed).

All the other §285 cases cited in DMo are **out-of-date**, because all of them **pre-date** the 2005 *Brooks* decision, which instituted the present test for award of §285 attorneys fees. These earlier cases are also factually distinguishable: *Automated Bus. Cos. v. NEC Am., Inc.*, 202 F.3d 1353, 1355 (Fed. Cir. 2000) (case was exceptional because, when Defendant moved for summary judgment, patentee admitted Defendants' accused products did not infringe, but asked court to keep case open so that plaintiff could  determine whether any other product of Defendant might infringe); *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990) (amended complaint was in bad faith, where no evidence that defendant's product involved melting, required by patentee's patent; where patentee's expert performed no tests, yet concluded product infringed; where wrong grade of material was tested; where no test showed sufficient adherence; where written report was withheld as privileged, supporting inference it was unfavorable, and where acting on advice of counsel with no technical or legal basis for advice, inadequate to show good faith); *Sun-Tek Indus., Inc. v. Kennedy Sky Lites, Inc.*, 929 F.2d 676, 679 (Fed. Cir. 1991) (patentee entitled to restitution of amount of §285 fees it was ordered to pay, taken by levy; because 7 months after judgment entered, with judgment on appeal, district court lacked jurisdiction to alter judgment to award §285 attorneys fees against patentee, not awarded in original judgment (**this case suggests this Court lacks jurisdiction over DMo**); *Mathis v. Spears*, 857 F.2d 749, 752-53 (Fed. Cir. 1988) (case itemizes 17 knowingly dishonest things patentee did at PTO, and in suit, that made case exceptional); *Bayer Aktiengesellschaft v. Duphar Int'l Research B.V.*, 738 F.2d 1237, 1242 (Fed.Cir. 1984) (vacated award of fees, remanded, facts not on point: case turned on file history estoppel in application for patent at PTO, patentees' claims may have been frivolous due to that estoppel).

Defendants' Motion does not allege, or prove, that Smartmetric did anything which DMo's cited case law found to constitute "litigation misconduct".

**V.    DEFENDANTS HAVE FAILED TO PROVE, BY CLEAR AND CONVINCING EVIDENCE, THAT SMARTMETRIC BROUGHT THIS CASE IN <u>SUBJECTIVE BAD FAITH</u>; THIS FACT ALONE REQUIRES DENIAL OF DMo**

Even if it were assumed *arguendo* that Defendants could prove, by clear and convincing evidence, that this case was <u>objectively baseless</u> (and Defendants' evidence falls far short of proving that), this Court must still deny DMo, because Defendants have not proved, by <u>clear and convincing evidence</u>, that Smartmetric brought this case in <u>subjective bad faith</u> as required by *Brooks*, supra, at 1381-1382, and *Highmark*, supra, at 1313.

**A. Smartmetric has Presumption of Good Faith, because Smartmetric was Suing on a Duly Issued Patent; Defendants' Evidence Fails to Overcome that Presumption of Good Faith, by Clear and Convincing Evidence**

In *Brooks*, discussed supra at 10-11, the Federal Circuit <u>affirmed</u> non-infringement, but <u>reversed</u> the District Court's award of attorneys fees against patentee, pursuant to 35 USC 285. As the Federal Circuit explained in *Brooks/Highmark*, <u>subjective bad faith</u> requires that the suit be <u>so groundless that the plaintiff knew, or should have known, it was groundless.</u>  If infringement <u>can reasonably be disputed</u>, the plaintiff is NOT proceeding in subjective bad faith by suing. There as here, Brooks sued on a duly issued patent, and was entitled to a presumption of good faith. See p. 4 above.

As the Federal Circuit explained in *Brooks*, at 1384, reversing award of attorneys fees:

"Bringing an infringement action does not become unreasonable in terms of '285 if the infringement <u>can reasonably be disputed</u>. **Infringement is often difficult to determine**, and a **patentee's ultimately incorrect view of how a court will find does not of itself establish bad faith**. ...We conclude that

1  there was not clear and convincing evidence of bad faith by Dutailier in
   charging Brooks with infringement and in pressing this charge in litigation."

2

3  **B. The Previous Litigation Shows Good Faith by Smartmetric, Contrary to**
   **What Defendants' Motion Argues**

4

5  DMo asserts, in error, that the earlier litigation, where Smartmetric sued

6  Defendants on non-EMV systems that use "contactless" credit cards, shows

7  Smartmetric's bad faith. There, Smartmetric charged the Defendants' contactless

8  credit card processing system—NOT Defendants' <u>EMV data card processing</u>

9  <u>systems--</u>with infringement of Smartmetric's '464 patent. The District Judge there,

10 Judge Nguyen, in a Markman hearing, construed the claims of Smartmetric's '464

11 patent to require physical insertion of a data card into a data card reader, thereby

12 excluding coverage for contactless cards. Smartmetric promptly stipulated to

13 dismissal there, subject to Smartmetric's right to appeal, and promptly appealed to

14 the Federal Circuit. (Bright dec, paras. 2, 3). This shows Smartmetric's good faith,

15 not bad faith.

16 In that appeal, the Federal Circuit affirmed the "contactless" part of Judge

17 Nguyen's ruling, meaning that systems using contact cards could be within the

18 claim scope, but reversed the District Court, to change the definition of the claim

19 term "network" to the broader definition that Smartmetric had contended for,

20 which this Court then adopted and used in the present case.  (Bright dec, para. 10)

21 (Smartmetric's press release about the Circuit's decision accurately said that this

22 broader definition, despite Defendants' vigorous objections, favored Smartmetric,

23 as were Smartmetric's other challenged press releases. (Hendrick dec, para.5)

24 C.  **The Declarations of Chaya Hendrick, Patrick Bright and Edward**
   **Gussin to this Opposition Show That Smartmetric Proceeded in**
25 **Subjective Good Faith, in the Herein Suit**

26

27 The Declarations to this Opposition of Smartmetric's CEO Chaya Hendrick,

28 of Smartmetric's counsel Patrick Bright, Esq., and of Smartmetric's infringement

expert, Edward Gussin, attest that each Declarant believed, in good faith, at the time of filing suit, and now, that Defendants' EMV systems infringe at least claims 1 and 14 of Smartmetric's '464 patent (Bright dec, para. 4; Gussin dec, para. 22.

At the time of filing suit, Bright/Gussin/Hendrick (Bright dec, para.11) believed that Defendants **controlled** all six elements of claim 1 of the '464 patent, and the two elements of claim 14 of this patent. Among these elements are data cards and data card readers, which Defendants say they themselves don't make, but concede would fall under the asserted claims if Defendants "direct or control those who do." See motion at 15:10-11. Because the data cards and data card readers at issue all bear the VISA/Mastercard trademarks/logos, and because all of them must be, and are, configured to operate in the accused EMV systems, and because the Mastercard 10K reports to the SEC indicate that VISA and Mastercard control their entire credit/debit card systems, Smartmetric reasoned that Defendants do not escape infringement just because they allow contractors to make the cards and readers. (Bright dec, para. 4; Gussin dec, para. 22)

During discovery, Mastercard served Smartmetric with Mastercard spokesman Merschen's 1/28/2013 report (p.6-7) **admitted that Defendants control the EMV system, from start to finish:**

"MasterCard sets standards for certain physical and technical aspects of cards and terminals across the payment system to ensure global interoperability between MasterCard-branded cards issued by every issuer and MasterCard-branded terminals integrated into merchant locations by every acquirer around the world.  MasterCard also defines the procedures, message content, and flow for authorization, clearing and settlement of payment card transactions. Authorization refers to the process by which a transaction is routed from the merchant to the issuer for approval, and by which a decision whether or not to approve the transaction is made by and routed from the issuer back to the merchant for proper action.  Clearing refers to the exchange of financial transaction information between issuers and acquirers after a transaction has been successfully conducted at the point of sale.  Settlement refers to facilitating the exchange of funds between the different parties.  Additionally, MasterCard provides the physical network connections and systems to transmit and process authorization and settlement messages between acquirer banks and

issuer banks." **See also Merschen's deposition admissions to Mastercard's control over data cards and data card readers**(Bright dec, para. 11)

Pre-filing, Smartmetric also reasoned that the Defendants' EMV systems satisfied **at least one** of the two alternatives called out in claims 1 and 14 of the '464 patent, namely, (i) a default access number **OR** (ii) a local access number and a database of local access numbers. See claim 1, calling for: "…said application program being configured to automatically retrieve at least part of the information contained on the data card when the data card is in communication with said data card reader and to use said information to gain access to one of the plurality of network service providers via the network **by using one of [NOT BOTH]** (i) a default access number indicating a designated network service provider and (ii) a local access number from a database containing a list of access numbers or the plurality of network service providers along with corresponding location information for each access number in the list…" In Mr. Gussin's and in Ms. Hendrick's experience, all programmed applications have a default access number. This constituted probable cause for charging infringement, because the element is **one of** local access number or default access number. (Bright dec, paras. 4, 6; Gussin dec, para. 22, Hendrick dec, para. 2). Defendants' MSJ of non-infringement did not assert, and could not truthfully have asserted, that Defendants' EMV system lacked a default access number . The Court's 10/2/2013 ruling erred by ignoring Gussin's declaration which explained Defendants' EMV system had a default access number. (Bright dec, paras. 7, 8, 9; Gussin dec, para. 22).

Mastercard's 10K report to the SEC also mentioned that their data card systems process transactions at locations near to the point of origin of a transaction, bespeaking/necessitating the use of local access numbers. During discovery, but not until February, 2013, Smartmetric received Defendants' confidential documents about their EMV systems, and learned for the first time about their stand-in processing systems, which reasonably justified continuing to assert the

presence of local access number and databases of such numbers in these systems in Gussin's 5/23/13 declaration, paragraph 10 (Dkt#135-3). (Bright dec, paras.5, 7, 8).

In deposition, Gussin said that the Defendants' documents do not call out, in so many words, "local access numbers/databases of local access numbers", but did say why he inferred, reasonably, their presence in the accused EMV systems. In deposition, Mr. Gussin never said any element of claim 1 or claim 14 was absent from the accused systems. Defendants' citations to the Gussin deposition transcript at pages 71-80, 95, and 170-176 contain no such admission. (Bright dec, para. 5). On the contrary, and by way of example only, Gussin testified regarding the presence of "local access numbers" and a database of such numbers in the accused systems. See Bright dec, para. 5, quoting this testimony.

D. **The Whole Conduct of the Case Evidences Smartmetric was Proceeding in Subjective Good Faith Throughout, NOT Subjective Bad Faith**

Here, all events before and during the present case evidence Smartmetric's good faith. Smartmetric made a reasonable pre-suit investigation, consulting with expert Gussin pre-suit for his opinion, before filing suit on Defendants' EMV systems, that Defendants' EMV systems probably infringed Smartmetric's '464 patent (Bright dec, paras. 4, 11; Gussin dec, para. 22).

Smartmetric was forced to wait until Defendants produced their confidential documents on infringement in February/March, 2013, to prepare/serve Gussin's infringement report, and couldn't complete Gussin's declaration about the admissions of Defendants' spokesmen on infringement, Merschen for Mastercard, and Aabye for VISA, until after May 3, 2013, when Smartmetric completed their depositions. (Bright dec, paras. 14, 17; Gussin dec, para. 20)

The Court's 10/12 *Markman* claim interpretation ruling was largely in Smartmetric's favor, and against Defendants (Bright dec, para. 10).  And on the cross-motions for summary judgment, Defendants' declarants did NOT deny or controvert Gussin's 5/24/2013 declaration (Dkt #135-3), which attested that

Defendants' documents, which Gussin relied on, show Defendants' EMV systems include each element in Smartmetric's asserted patent claims 1 and 14 of the '464 patent. (Bright dec, paras. 5, 6, 7, 13, 18; Gussin dec, paras. 3-19)

Smartmetric conducted its discovery, and responded to Defendants' discovery, in a reasonable, professional manner, avoiding motion practice, and stipulated to Defendants' suggested schedule for summary judgment briefing, giving these powerful, wealthy opponents with countless, experienced lawyers at their disposal (at least 10 lawyers we encountered) the eight weeks they wanted to prepare and file these motions. Defendants never moved to compel any discovery, understanding that Smartmetric would supplement its discovery responses on infringement, as Smartmetric did, after receiving Defendants' confidential documents on infringement. (Bright dec, para. 12)

Smartmetric also agreed to any additional discovery or additional expert reports Defendants wanted to avoid exclusion of Smartmetric's expert Edward Gussin. At the 6/24/2013 hearing, the Court made these same offers to Defendants, who declined them. (Bright dec, para. 17)

Smartmetric was only late serving its expert reports, because of Defendants' delay, from July, 2012, to February, 2013, in producing Defendants' confidential documents Gussin, and Hendrick needed to do their expert reports. (Bright dec, para. 14)). Gussin and Hendrick each attested they could not accurately do their expert reports without the Defendants' confidential documents, which Defendants delayed producing until February/March, 2013. See Dkt #'s 93-2, and 137-4. Defendants fully deposed both Gussin and Hendrick, after their expert reports were served, and before Defendants moved for summary judgment of non-infringement. (Bright dec, para. 14). The Court did not/could not properly exclude Gussin's declarations on these facts.

**Defendants' 7 months delay in producing Defendants' confidential documents** is what caused Gussin's expert report to be served late, and therefore

16

the late service was substantially justified, per Fed R. Civ. P. Rule 37(c), as well as harmless, being months before trial. (Bright dec, para. 14). Defendants fully deposed Gussin after his report and declarations were served, and at the June 25, 2013, hearing, declined this Court's offer that they could have more time or more experts. Even absent lack of justification, and evidence of some harm, FRCP Rule 37(c) requires the court to consider lesser sanction than exclusion, such as continuance (which defendants got). (Bright dec, para. 14). The 10/2/2013 ruling misstates Rule 37 and related case law.

Defendants' motion for summary judgment of non-infringement asserted absence of local access numbers and absence of a database of such numbers from the accused EMV systems, **but did not assert absence of a default access number**. Claims 1 and 14 call for ONE OF these two, <u>not both</u>. The Court's non-infringement order, in error, ignores the fact that an EMV system with a default access number infringes, even if the system has no local access number, and ignores the fact that Defendants did not deny that their EMV systems have a default access number, and that Gussin's declaration opposing summary judgment of non-infringement attested that Defendants' systems have a default access number, AND local access numbers/database of local access numbers. (Bright dec, para. 7). Gussin's <u>declarations, uncontested by Defendants' declarants,</u> prima facie established that Defendants' accused EMV systems have BOTH default access numbers, local access numbers and a database of local access numbers. See paragraph 10 of his May 24, 2013, declaration (Bright dec, para. 7), so stating.

Smartmetric believe the Court erred by refusing to give weight to Gussin's analysis, saying it was "conclusory", when Gussin's analysis relied on Defendants' own documents, which were admissions of defendants admissible per FRE Rule 801(d), and when Gussin's declarations had all things required by FRE Rule 702(a)-(d) to be admissible. (Bright dec, paras. 8, 9). Refusing to credit Gussin's declarations was also erroneous because Defendants' Declarants, Aabye/Grimes

17

for VISA and Merschen for Mastercard, did not say they had read Gussin's declaration, did not refute anything in Gussin's declarations, did not mention the Defendants' documents Gussin relied on, and did NOT deny that those documents showed Defendants' EMV systems included each element in Smartmetric's asserted patent claims 1 and 14. (Bright dec, paras. 8, 9).

**VI.   DEFENDANTS HAVE FAILED TO PROVE, BY CLEAR AND CONVINCING EVIDENCE, THAT SMARTMETRIC'S CASE IS OBJECTIVELY BASELESS; THIS FACT ALONE REQUIRES DENIAL OF DMo**

This Court should deny Defendants' Motion, without even reaching the "was the suit <u>objectively baseless</u>" part of the two part *Brooks/Highmark* test, because Defendants' motion does not establish, by clear and convincing evidence, that Smartmetric acted in <u>subjective bad faith</u>.  But if the Court were to consider the "objectively baseless" part of this test, Defendants's Motion also fails to prove, by <u>clear and convincing evidence</u>, that Smartmetric's case was <u>objectively baseless</u>.

**A.   <u>Defendants' Motion Fails to Address the Highly Relevant, Federal Circuit 2013 *Checkpoint* case, and 2011 Federal Circuit *Google* case, each of which Demonstrate Smartmetric's Suit cannot be considered to have been Objectively Baseless</u>**

Defendants' motion fails to cite or address two highly relevant recent, Federal Circuit cases, the 2013 *Checkpoint* decision, and the 2011 *Google* decision, each of which demonstrate that Smartmetric's suit was not "objectively baseless", as the term "objectively baseless" is used in the "objectively baseless" part of the *Brooks* two prong test for "extraordinary" case.

*Checkpoint Sys., Inc. v. All-Tag Sec. S.Al*, 711 F. 3d 1341, 1345-1346 (Fed. Cir. 2013) affirmed the District Court's non-infringement ruling, but <u>reversed</u> the District Court's award of fees under 35 USC 285, holding as follows:

"The general rule, called the 'American Rule,' is that each side shall normally bear its litigation burdens. The <u>philosophy of the American Rule is to avoid that 'the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel.</u>' *Fleischmann Distilling Corp. v. Maier Brewing Co.*, (Citation omitted); see *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 251, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975)* (explaining the concern that 'losing

litigants were being unfairly saddled with exorbitant fees for the victor's attorney'). The American Rule is not absolute, for the policy of avoiding undue burden on access to judicial remedy gives way when litigation is <u>devoid of any justification, or is tainted by grievous misconduct</u>. <u>Section 285</u> codifies for patent cases the policy of "compensating the prevailing party for the costs it incurred in the prosecution or defense of a case where it would be grossly unjust, based on the baselessness of the suit or because of litigation or Patent Office misconduct, to require it to bear its own costs." <u>Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc., (Citation omitted)</u>. To receive attorney fees under <u>§285</u>, "a prevailing party must establish by clear and convincing evidence that the case is 'exceptional.'" ,, In turn, <u>patentees seeking to assert their government-granted patent rights, and accused infringers with grounds for believing the patent to be invalid or not infringed, are shielded from the additional litigation burden of fee-shifting when their positions are reasonable.</u>

Defendants' motion also ignores *Ilor, LLC v. Google, Inc.*, 631 F. 3d 1372, 1376-1380 (Fed. Cir. 2011), where the Federal Circuit affirmed a non-infringement ruling of the district court, but <u>reversed</u> the District Court awarding attorneys fees and costs under 35 USC 285. *iLor* at 1376-77 explains there is a constitutional right to sue, and that to be sanctionable, a suit must be so "objectively baseless" that <u>no reasonable litigant could realistically expect success on the merits</u>":

"<u>Section 285</u> must be interpreted against the background of the Supreme Court's decision in <u>Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993)</u>. There, the Court recognized that the <u>right to bring and defend litigation implicated First Amendment rights</u> and that <u>bringing allegedly frivolous litigation could only be sanctioned if the lawsuit was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits."</u> <u>Id. at 60</u>. ..." In determining whether a case is "exceptional" under § 285, the relevant standard is set forth in <u>Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc., 393 F.3d 1378 (Fed. Cir. 2005)</u>... Relying on Professional Real Estate, we held that, <u>absent misconduct during patent prosecution or litigation, sanctions may be imposed against a patent plaintiff "only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless."</u> Id.; see also <u>Wedgetail Ltd. v. Huddleston Deluxe, Inc., 576 F.3d 1302, 1304-06 (Fed. Cir. 2009)</u> (refusing to find patentee's unsuccessful case exceptional under Brooks Furniture). An infringement action "does not become unreasonable in terms of [§ 285] if the infringement can reasonably be disputed. Infringement is often difficult to determine, and a patentee's ultimately incorrect view of how a court will find does not of itself establish bad faith." <u>Brooks Furniture, 393 F.3d at 1384</u>. <u>Under this exacting standard, the plaintiff's case must have no objective foundation, and the plaintiff must actually know this</u>. Both the objective and subjective prongs of Brooks Furniture "must be established by clear and convincing evidence." <u>Wedgetail, 576 F.3d at 1304</u>. We recognize a "presumption that the assertion of infringement of a duly granted patent is made in good faith." <u>Brooks Furniture, 393 F.3d at 1382</u> (citing <u>Springs Window Fashions LP v. Novo Indus., L.P., 323 F.3d 989, 999 (Fed. Cir. 2003))</u>.

19

**B. Smartmetric Substantially Prevailed on the _Markman_ Claim Interpretation Hearing, and, using the Definitions the Court Adopted, at the _Markman_ Hearing, Smartmetric's Expert Opined that Defendants' Documents Showed Defendants' EMV Systems Include Each Element of Smartmetric's Asserted Patent Claims**

Defendants were <u>not</u> the prevailing party in the Markman cross-motions, which the Court heard in October, 2012, because the Court substantially adopted the claim interpretations which Smartmetric contended for, rather than accepting Defendants' proposed claim interpretations. (Bright dec, para. 10) See table there of Smartmetric's/Defendants' proposed claim interpretations, and the Court's resulting interpretations. The Court also disagreed with Defendants, and agreed with Smartmetric, that the definition of the claim term "network" from earlier litigation over this same patent between the same parties would apply here. The _Markman_ rulings reinforced Smartmetric's good faith belief that its infringement claims against Defendants' EMV systems was reasonable. (Bright dec, para. 10).

Defendants served Smartmetric with their reports, from Merschen on non-infringement for Mastercard, and from Aabye and Grimes on non-infringement for VISA, in December, 2012, and in January, 2013. Because Defendants served Smartmetric with its reports on non-infringement before Smartmetric served Defendants with its report on infringement, Defendants complained, in error, that Smartmetric gained an advantage on the infringement issue. (Defendants made no such complaint about invalidity because their reports were Court-ordered to precede Smartmetric's rebuttal report on the validity issue.)

Smartmetric could not report on infringement earlier because of Defendants' delay in producing documents on this issue. See the unrebutted declarations of Gussin and Bright, so stating(Dkt #'s 93-1, 93-2). Even so, Smartmetric gained no advantage from seeing Defendants' non-infringement reports earlier. Gussin's report on infringement relies on documents and opinions that Merschen, Aabye and Grimes do not mention in their reports, or in their declarations in support of

Defendants' motion for summary judgment of non-infringement. (Bright dec, paras. 15, 16, 17, 18)

Gussin did not have the benefit of the Merschen and Aabye deposition admissions on the infringement issue until May, 2013 (Smartmetric deposed Mastercard witnesses Merschen and Balfany on April 10 and April 26, 2013, and VISA witnesses Ericksen and Aabye on May 3, 2013). Gussin could not include these in his earlier report for this reason, but did rely on them in his May 23, 2013, declaration opposing Defendants' non- infringement MSJ (Bright dec, para. 17; Gussin dec, paras. 23,24).

At the June 24, 2013, hearing, Defendants declined the Court's offers to Defendants to add more experts, serve new reports on non-infringement, redepose anyone, and obtain continuances of any or all deadlines, including those for the summary judgment motions, the trial and all pre-trial tasks. (Bright dec, para. 17)

In their motion for summary judgment of non-infringement, filed in May, 2013, Defendants' declarants Grimes, Aabye and Merschen never changed anything stated in the Merschen, Aabye and Grimes reports about their non-infringement contentions because of Gussin's reports, or because of anything else Gussin or Smartmetric said about this issue. Nor did these declarants even mention/seek to rebut Gussin's opinions, the documents Gussin relied on, or the Defendants' admissions he relied on. (Gussin dec, para. 23)

Defendants's motion for summary judgment of non-infringement includes no declaration from anyone (Grimes and Aabye for VISA, Merschen for Mastercard) that mentions what Gussin declares, or any of the documents and admissions Gussin relied on in opposing that motion. These facts prove that Defendants suffered no harm or prejudice from serving their reports on the infringement issue before receiving Gussin's report on infringement because nothing Gussin or Smartmetric said about infringement led Defendants to modify

21

their non-infringement contentions at all. (Bright dec, paras. 15, 16, 17, 18; Gussin dec, para. 23)

## VII. EVERY TIME A COURT RULES, ONE SIDE PREVAILS, AND THE OTHER DOES NOT; THE COURT RULING AGAINST SMARTMETRIC ON INFRINGMENT  DOES NOT ESTABLISH SMARTMETRIC'S SUIT WAS OBJECTIVELY BASELESS

Merely prevailing (so far) on infringement is NOT sufficient for awarding §285 attorneys fees, or there would be no "exceptional case" requirement in §285. Smartmetric, not Defendants, substantially prevailed on claim interpretation. (Bright dec, para. 9) "As we held in the first appeal, iLOR's claim construction was incorrect. But simply being wrong about claim construction should not subject a party to sanctions where the construction is not objectively baseless." *iLOR, LLC v. Google, Inc.* 631 F.3d 1372,1378,1380 (Fed. Cir. 2011) Smartmetric's proposed claim interpretations were not objectively baseless, nor did "the specification and prosecution history clearly refute [the patentee's] proposed claim construction." Accord, *MarcTec, LLC v. Johnson & Johnson, 664 F.3d 907, 919 (Fed.Cir.2012)* and *Highmark, Inc. v. Allcare Health Management Systems, Inc.*, 687 F.3d 1300, 1345-1315 (Fed. Cir. 2012)

The *Markman* ruling reinforced Smartmetric's good faith belief that Defendants' EMV systems infringed, particularly as Smartmetric's expert, Gussin, opined that based on those definitions, Defendants infringed (Bright dec, para. 9). Smartmetric reasonably expected this Court to deny Defendants' MSJ for non-infringement, and to win summary judgment on infringement, because Defendants' declarants did not address or rebut Gussin's prima facie proof of infringement. (Bright dec, paras. 8, 9; Gussin dec, para. 23).  Defendants' declarants cited no documents to rebut Gussin, making their denials wholly conclusory. (Bright dec, paras. 6, 8, 18; Gussin dec, para. 23).

## VIII. THERE IS NO REQUIREMENT OF AWARDING ANY FEE, EVEN IN AN "EXCEPTIONAL" CASE; 35 USC §285 SAYS COURT "MAY" , NOT "SHALL", AWARD A REASONABLE ATTORNEYS FEE;  EVEN IF ASSUMED ARGUENDO TO BE A "EXCEPTIONAL" CASE, A REASONABLE FEE FOR DEFENDANTS' INFRINGEMENT BRIEFING WOULD BE $60,000

The Court's dismissal order shows that Defendants were the prevailing party only on the infringement issue, but on no other issue. In *Highmark*, supra, at 1316, the Federal Circuit held that award of attorneys' fees for "litigation misconduct" should be apportioned, proportional to the misconduct:

> "A finding of exceptionality based on litigation misconduct, however, usually **does not support a full award** of attorneys' fees. *See Beckman,* 892 F.2d at 1553–54. Instead, the fee award 'must bear some relation to the extent of the misconduct,' *Special Devices,* 269 F.3d at 1344 (quoting *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 831 (Fed.Cir.1992)), and compensate a party for the '*extra* legal effort to counteract the misconduct,' *Beckman,* 892 F.2d at 1553."

Even assuming arguendo that Defendants' evidence proved this case is exceptional, by clear and convincing evidence (which Defendants evidence does NOT do), 35 USC §285 never requires award of fees. Section 285 (quoted supra) only says the Court "may", not "shall", award a reasonable fee, to the prevailing party, in an exceptional case.  Awarding the fees Defendants seek would destroy Smartmetric, and would chill small companies from daring to sue large companies for infringement, regardless of the merits. (Bright dec, para. 20; Hendrick dec, para. 4).

As *Brooks*, supra, at page 6, holds, determining whether or not there is infringement can be difficult.  It is error to start with the Court's non-infringement ruling, and then use hindsight analysis to argue the ruling makes the case exceptional, as Defendants argue. The 10/2/2013 ruling against Smartmetric on infringement does NOT make this case exceptional, or justify a fee award against Smartmetric. This is a close case on the merits, and the summary judgment of non-infringement may well be reversed on appeal. (Bright dec, paras.8, 9, 19).

*Computer Docking Station Corp v. Dell, Inc.,* 519 F.3d 1366, 1379 (Fed Cir. 2006) holds that the factors relevant to whether case is exceptional "… <u>include the closeness of the question, pre-filing investigation and discussions with the defendant, and litigation behavior</u>".

Under no circumstances should this Court award any of Defendants' fees and costs expended on any issue other than infringement, and then only assuming arguendo that the Court finds the case extraordinary (which it can't do on the evidence), and decides to award something against Smartmetric, which it should not do.

But if assuming arguendo the Court were to find this case exceptional, and were to decide to award Defendants something, the most Defendants should be awarded would be a reasonable fee for Defendants' non-infringment briefing. See *Highmark, Inc. v. Allcare Health Management System, Inc.,* 687 F.3d 1300, at 1316 (Fed Cir. 2012): "A finding of exceptionality based on litigation misconduct, however, usually does not support a full award of attorneys' fees. See *Beckman*, 892 F.2d at 1553–54. Instead, the fee award "must bear some relation to the extent of the misconduct," *Special Devices*, 269 F.3d at 1344, quoting *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 831 (Fed.Cir.1992), and compensate a party for the "extra legal effort to counteract the  misconduct," *Beckman*, 892 F.2d at 1553."

Defendants filed two briefs on their MSJ for non-infringement, and one brief opposing Smartmetric's MSJ for infringement. These three briefs **could not reasonably require** more than two days each or six days total.  (Bright dec, para. 21). At $10,000 per day (10 hours at $1,000/hour), the award would be $60,000. (Bright dec, para. 21).  Defendants have asserted that no reasonable person could contend for infringement, a position Smartmetric disputes and refutes, supra.  But if this Court were to agree with Defendants, their briefing should have been simple to prepare.  $60,000 would be a reasonable fee for all of Defendants' infringement briefing.

## IX. CONCLUSION

This Court should deny DMo.  DMo fails to prove, by **clear and convincing evidence**,  that this case is "extraordinary" as the term "extraordinary" is used in §285, under controlling Federal Circuit cases, e.g., *Brooks* and *Highmark*, supra.

DMo's alleged "litigation misconduct" is not what Federal Circuit cases call "litigation misconduct" for §285 purposes, and misstate the facts, anyway.  DMo concedes no PTO misconduct.

Defendants can only recover under §285, which precludes awarding expert witness fees, if DMo proves, by clear and convincing evidence, BOTH that Smartmetric sued in **subjective bad faith**, AND that Smartmetric's suit was **objectively baseless**. DMo proves neither. The Bright/Hendrick/Gussin opposing declarations show Smartmetric always acted in **subjective good faith**. Defendants' allegation that Smartmetric's suit was "**objectively baseless**" misstates the evidence.

Even assuming *arguendo* this case were "extraordinary", Section 285 only says the Court "may", not shall, award a reasonable fee. The Court should exercise its discretion to decline an award to huge Defendants Visa and MasterCard, against tiny Smartmetric. Such an award would destroy Smartmetric, and chill small patentees from ever suing large companies for patent infringement. (Bright dec, para. 20; Hendrick dec, para.4). If this case were arguendo exceptional (it isn't) any fee award should be limited to a reasonable fee for Defendants' counsel preparing their MSJ for non-infringement, as Defendants had not prevailed on any substantive issue until the Court granted that MSJ.  A reasonable fee would be $60,000. (Bright dec, para. 21).

Dated:  November 18, 2013

WAGNER, ANDERSON & BRIGHT, PC
By:
Patrick F. Bright (SBN 68709)
Attorneys for Plaintiff

25