Patrick F. Bright (State Bar No. 68709)
pbright@patentattorney.us
WAGNER, ANDERSON & BRIGHT PC
3541 Ocean View Boulevard
Glendale, CA 91208
Telephone: 818.249.9300
Facsimile: 818.249.9335

Attorneys for Plaintiff and Counter-Defendant
SMARTMETRIC INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| SMARTMETRIC INC., <br> Plaintiff, <br> v. <br> MASTERCARD INTERNATIONAL INCORPORATED AND VISA INC., <br> Defendants. <br><br> AND RELATED COUNTERCLAIMS. | Case No. CV 11-7126 MWF (FMOx) <br><br> **CHAYA HENDRICK'S DECLARATION OPPOSING DEFENDANTS' MOTION FOR AWARD OF ATORNEYS' FEES** <br><br> Date/Time:   December 9, 2013, 10:00 a.m. <br> Courtroom:   1600, Spring Street <br> Judge:  Hon. Michael Fitzgerald |

I, Chaya Hendrick, declare that:

1. I am the sole named inventor on the Patent-in-Suit, and the CEO of SmartMetric. I am the person most knowledgeable about the facts of this case on SmartMetric's behalf.

2. Before filing this suit against Defendants, which I authorized, I looked at the merits of the claims with assistance of counsel. I had seen EMV terminals outside the US, and learned, generally, how they work. I learned they used application programs linked to card readers, and knew, from my own experience with computer programming, that the EMV systems likely had default access numbers, and, I reasoned, local access numbers to route at least some transactions to processing facilities geographically close to the readers to save time, and to

maximize processing efficiency during periods of high volume processing. I believed that the claims of the '464 patent required presence in Defendants' EMV systems of **either** a default access number, **or** a local access number (and a database of local access numbers), but not both. I also was of the opinion that Defendants controlled the specifications for all EMV system parts, including the data cards and the data card readers, even if Defendants and their business partners, e.g., banks like Citi, hired others to make these items to Defendants' specifications. Otherwise, Defendants could not be sure of system interoperability, in the US and abroad. I also formed the opinion that all other elements of the claims are present in the accused EMV systems, and know of no contentions to the contrary from Defendants. After this Court's favorable ruling on claim interpretation, in October, 2012, I was encouraged that the Court looked with favor on our claims against the Defendants, on the merits.

3. Though I had suspected that Defendants' infringement of the '464 patent would generate huge cost savings to them in the US from reduction in fraud losses, SmartMetric did not receive Defendants' documents so stating until late February, 2013, though SmartMetric's counsel had requested production of these documents in July, 2012. Defendants' delay in producing these key documents delayed my damages report until March 1, 2013, though I would have produced this report timely if Defendants had timely produced the key documents.

4. SmartMetric is a research and development stage publicly traded company that has devoted a large amount of time, effort and financial resources to produce a fingerprint activated EMV card. The SmartMetric fingerprint activated EMV card is based on the very same EMV systems controlled by the defendants with the added security of a card user's fingerprint to activate a card's EMV chip. The company is a practicing technology entity relying on the enforceability of its '464 patent as an underlying patent to its SmartMetric EMV card technology. Great harm has been and continues to be made to the commercial interests of SmartMetric by both the threatened and actual use and deployment of EMV cards

in the United States by the Defendants. SmartMetric has minimal revenue from sales to date, and operates primarily from marketplace investment in stock. An award of the magnitude that Defendants seek could destroy SmartMetric, and would certainly chill any small entity from asserting their patent rights against any large entity for fear of an award against them of the kind Defendants seek here.

5. SmartMetric's press releases, in my opinion, were respectful of the Courts, and accurate. Further SmartMetric had and has an obligation under SEC rules and regulations to inform its public shareholders via public disclosure of events that have or may have a material impact on the company's interests. Public press releases are used by SmartMetric, as is the norm with other publicly traded entity's, to inform its shareholders and the market simultaneously of matters that may have a bearing on the commercial interests of the company in accordance again with SEC regulations.

6. On appeal, the Federal Circuit's decision redefined "network' more broadly than the lower court did while confirming the lower courts ruling that the '464 patent did indeed cover a data card that was physically inserted into a reader, leaving open the possibility of a claim against contact data card systems. This Court's 10/2/2013 ruling did deny Defendants' motion for summary judgment of invalidity. The press release was therefore accurate on this point, and contained nothing critical of this Court, or anyone else.

Executed under penalty of perjury this 15th day of November, 2013, in Buenos Aries, Argentina, under the laws of the United States of America.

Chaya Hendrick