GARY A. CLARK, Cal. Bar No. 65455
gclark@sheppardmullin.com
DARREN M. FRANKLIN, Cal. Bar No. 210939
dfranklin@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
333 South Hope Street, 43rd Floor
Los Angeles, California  90071-1422
Telephone:  (213) 620-1780
Facsimile:   (213) 620-1398

Attorneys for Defendant and Counterclaimant
MASTERCARD INTERNATIONAL INCORPORATED

JOSEPH MELNIK (State Bar No. 255601)
jmelnik@jonesday.com
AN P. DOAN (State Bar No. 250111)
apdoan@jonesday.com
JONES DAY
1755 Embarcadero Road
Palo Alto, CA  94303
Telephone:  (650) 739-3939
Facsimile:   (650) 739-3900

Attorneys for Defendant and Counterclaimant
VISA INC.

[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SMARTMETRIC INC., | Case No. CV 11-7126 MWF (AJWx) |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR ATTORNEY FEES** |
| v. | |
| MASTERCARD INTERNATIONAL INCORPORATED AND VISA INC., | Date:  December 1, 2014 |
| Defendants, | Time:  10:00 a.m. |
| | Crtm:  1600, Spring Street |
| AND RELATED COUNTERCLAIMS. | Hon. Michael W. Fitzgerald |

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................. 1

II.    BACKGROUND ............................................................................. 2

       A.    SmartMetric's Claims Were Entirely Baseless ...................... 2

             1.    SmartMetric has been on notice since 2010 that
                   MasterCard and Visa do not make or sell data cards or
                   data card readers. ........................................................... 3

             2.    SmartMetric made no effort to determine whether the
                   '464 patent covered any products or services of
                   Defendants. ..................................................................... 4

             3.    SmartMetric offered a frivlous construction of "local
                   access number" that gave no meaning to the word "local"
                   in the claims. .................................................................. 5

       B.    SmartMetric Prolonged Its Frivolous Claims in an Unreasonable
             Manner ................................................................................. 5

             1.    SmartMetric failed to provide any support for its
                   infringement claims during discovery. ........................... 6

             2.    SmartMetric provided no support for its claims in
                   opposing Defendants' motion for summary judgment of
                   non-infringement. ......................................................... 11

             3.    SmartMetric's bad faith is further shown by its false press
                   releases. ........................................................................ 12

III.   DISCUSSION .............................................................................. 13

       A.    Legal Standards Governing Fees Motions Under 35 U.S.C. § 285 ..... 13

       B.    This Case Stands Out from Others Because SmartMetric's
             Infringement Position Was Wholly Unsubstantiated .......................... 15

             1.    SmartMetric could not have expected success when it filed
                   suit. ............................................................................... 15

             2.    SmartMetric could not have expected success once the
                   Court rejected SmartMetric's construction of "local access
                   number." ........................................................................ 17

             3.    SmartMetric could not have expected success once it
                   failed to serve a timely expert report on infringement. ............ 18

             4.    SmartMetric could not have expected success once its late
                   expert failed to produce a substantive infringement
                   opinion. ......................................................................... 19

i

5.   SmartMetric could not have expected success once its expert testified that he was unaware of any circumstance under which Defendants use a local access number.................20

C.   SmartMetric Brought and Prolonged This Case in Subjective Bad Faith.................................................................................................20

IV.   DEFENDANTS' ATTORNEYS FEES AND COSTS ..................................22

A.   Defendants' Litigation Activities.........................................................22

B.   Defendants' Attorney Fees...................................................................22

C.   Defendants' Costs ................................................................................23

D.   Defendants' Fees and Costs Were Reasonable....................................24

V.   CONCLUSION ............................................................................................25

ii

# TABLE OF AUTHORITIES

## Cases

*Aristocrat Techs. Austl. Pty Ltd. v. International Game Tech.*,
709 F.3d 1348 (Fed Cir. 2013)..................................................................16

*Automated Bus. Cos. v. NEC Am., Inc.*,
202 F.3d 1353 (Fed. Cir. 2000)................................................................14

*BMC Resources, Inc. v. Paymentech, L.P.*,
498 F.3d 1373 (Fed. Cir. 2007).................................................................16

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*,
393 F.3d 1378 (2005) ........................................................................14, 20

*Carter v. Caleb Brett LLC*,
757 F.3d 866 (9th Cir. 2014).....................................................................24

*Chalumeau Power Sys. LLC v. Alcatel-Lucent*,
2014 WL 4675002 (D. Del. Sept. 12, 2014) ..............................................17

*D'emanuele v. Montgomery Ward & Co., Inc.*,
904 F.2d 1379 (9th Cir. 1990)...................................................................24

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
363 F.3d 1263 (Fed. Cir. 2004).................................................................19

*Eon-Net LP v. Flagstar Bancorp*,
653 F.3d 1314 (Fed. Cir. 2011).........................................................13, 17

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994) ...................................................................................15

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ...................................................................................24

*Junker v. Eddings*,
396 F.3d 1359 (Fed. Cir. 2005).................................................................24

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir. 1975).......................................................................24

*Linex Techs., Inc. v. Hewlett-Packard Co.*,
2014 WL 4616847 (N.D. Cal. Sept. 15, 2014) .............................15, 16, 18

*Lumen View Tech., LLC v. Findthebest.com, Inc.*,
2014 WL 2440867 (S.D.N.Y. May 30, 2014)............................................16

*MarcTec, LLC v. Johnson & Johnson*,
664 F.3d 907 (Fed. Cir. 2012)...................................................................17

*Mathis v. Spears*,
857 F.2d 749 (Fed. Cir. 1988)......................................................14, 24, 25

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    134 S.Ct. 1749 (2014) ..............................................................passim

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986) ..........................................................................24

*SmartMetric Inc. v. American Express Co.*,
    476 F. App'x 742 (Fed. Cir. Apr. 11, 2012) ....................................3

*SmartMetric Inc. v. MasterCard Int'l Inc.*,
    No. CV 10-01864 JHN (FMOx) (filed Mar. 15, 2010).........................passim

*Summit Data Sys., LLC v. EMC Corp.*,
    2014 WL 4955689 (D. Del. Sept. 25, 2014) ...................................20

*Taurus IP, LLC v. Orion IP, LLC*,
    726 F.3d 1306 (Fed. Cir. 2013)............................................14, 17

*Yufa v. TSI Inc.*,
    2014 WL 4071902 (N.D. Cal. Aug. 14, 2014)......................16, 20

## **Statutes**

35 U.S.C § 285...............................................................................passim

## **Rules**

Federal Rules of Civil Procedure 11..............................................5

Federal Rules of Civil Procedure 33(d) ........................................7

# I.   <u>INTRODUCTION</u>

Defendants MasterCard International Incorporated and Visa Inc. move for an award of attorneys' fees pursuant to 35 U.S.C § 285.  MasterCard and Visa bring this motion following the Court's entry of judgment against Plaintiff SmartMetric Inc. on its claims for infringement of U.S. Patent No. 6,792,464 ("the '464 patent"), and following the Federal Circuit's *per curiam* affirmance of that judgment.

This action presents precisely the kind of exceptional case that 35 U.S.C. § 285 was meant to remedy.  It "stands out from others" with respect to the substantive deficiency of SmartMetric's claims and the unreasonable manner in which SmarMetric litigated the case.  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014).

First, SmartMetric brought claims of infringement against Defendants that were entirely baseless.  SmartMetric failed to conduct a reasonable pre-filing investigation and should have known, from the very beginning of this case, that it lacked a claim against Defendants.  At no point during the case was SmartMetric able to articulate the factual and legal grounds for its claim that Defendants infringed the '464 patent—not after Defendants provided discovery, not after Defendants submitted their expert reports, not at the hearing on summary judgment, and not even on appeal.

Second, fully aware that its case was deficient on the merits, SmartMetric proceeded to conduct this litigation in an extreme and unreasonable manner.  SmartMetric ignored established principles of patent law, as well as this Court's clear orders, in an effort to delay consideration of the merits for as long as possible.  Rather than seeking to prove the merits of its alleged claims of infringement against Defendants, SmartMetric disregarded its burden of proving infringement in favor of a strategy where non-compliance with the Court's orders would force Defendants to proffer non-infringement positions before SmartMetric provided any theory of infringement.  SmartMetric deliberately concealed its infringement theories, forced Defendants to reveal their non-infringement positions first, and then repeatedly

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR ATTORNEY FEES

1  adjusted its infringement contentions accordingly without disclosing any of its

2  information.  So tenuous were SmartMetric's infringement claims that the only way

3  to litigate the case was to presume infringement and compel Defendants to prove

4  non-infringement—turning the burden of proof on its head.

5      In trying to turn this case into one where the only issue was whether

6  Defendants could prove non-infringement in the face of SmartMetric's shifting

7  infringement theories, SmartMetric went so far as to ignore the Court's orders

8  regarding the submission of expert reports.  SmartMetric actually withheld its expert

9  report on infringement until after it received non-infringement expert reports from

10  Defendants.  Even then, SmartMetric's report was completely vague and conclusory.

11      Unconcerned by its lack of a viable infringement case, SmartMetric apparently

12  saw commercial benefit in keeping this case alive through any means necessary.

13  Throughout the litigation, SmartMetric repeatedly issued press releases to the capital

14  markets and the general public touting the likely success of SmartMetric's multi-

15  billion dollar claims.  Whatever SmartMetric's motivation might have been,

16  SmartMetric pursued its baseless claims in an unreasonable manner, causing

17  MasterCard and Visa to expend considerable resources.  As detailed below and in the

18  declarations filed herewith, MasterCard and Visa incurred substantial attorney fees to

19  defend against SmartMetric's groundless suit.  Section 285 empowers this Court to

20  make Defendants whole and award reasonable attorney fees to the Defendants.

## II.   BACKGROUND

### A.   SmartMetric's Claims Were Entirely Baseless

23      SmartMetric's infringement case never had any legal or factual basis.  From

24  the beginning of the case through appeal, SmartMetric was unable to formulate,

25  much less articulate, the legal and factual grounds underpinning its infringement

26  claims.  SmartMetric ignored critical facts known to it since 2010, failed to perform

27  a reasonable pre-filing investigation, and continually shifted its infringement

28  contentions based on Defendants' submissions at each stage of the case.  Even

2

SmartMetric's expert confirmed that Defendants' systems lacked certain limitations of the asserted claims.  SmartMetric's complete disregard for the sufficiency of its claims shows the "exceptional" nature of this litigation under Section 285.

> **1.  SmartMetric has been on notice since 2010 that MasterCard and Visa do not make or sell data cards or data card readers.**

This is the second of two cases that SmartMetric filed against MasterCard and Visa alleging infringement of the '464 patent.  *See SmartMetric Inc. v. MasterCard Int'l Inc.*, No. CV 10-01864 JHN (FMOx) (filed Mar. 15, 2010) ("the 2010 Case").  In the 2010 Case, SmartMetric alleged that Defendants' "contactless" credit card systems infringed the '464 patent.  That case was meritless.  Following a claim construction ruling that precluded infringement, SmartMetric stipulated to judgment, which the Federal Circuit affirmed.  *See SmartMetric Inc. v. American Express Co.*, 476 F. App'x 742 (Fed. Cir. Apr. 11, 2012).

SmartMetric blatantly ignored facts from the 2010 Case demonstrating that the "contact" credit card systems accused in the present case also did not practice the claims of the '464 patent, all of which require a "data card" and a "data card reader." (Declaration of Darren M. Franklin, "Franklin Decl.," Ex. A ('464 patent, claims 1 & 14).)  Early in the 2010 Case, MasterCard and Visa filed a motion to dismiss SmartMetric's First Amended Complaint for failure to state a claim.  (*Id.*, ¶ 5 & Ex. B (2010 Case, D.I. 16-1).)  In that motion, Defendants represented that neither MasterCard nor Visa provide data cards or data card readers, or direct or control any other entity that might provide or use data cards or data card readers:

> As anyone who has ever been offered or received a credit card knows, credit cards are issued by financial institutions, not by Visa or MasterCard.  The same is true of Visa's payWave cards and MasterCard's PayPass cards – they are not issued to users by Visa or MasterCard.  Nor are Visa or MasterCard in the data card reader business.  Accordingly, SmartMetric does not—and indeed cannot—allege that Visa or MasterCard use or sell data cards or data

3

1    card readers as required by the independent claims of the '464 patent.

2    (*Id.* (2010 Case, D.I. 16-1 at 17:27-18:5).)  MasterCard and Visa noted that the

3    '464 patent's independent claims require both a data card and a data card reader, but

4    that these two claim elements are supplied and used by entities other than

5    Defendants:  financial institutions issue the data cards, cardholders use the data cards,

6    manufacturers sell or otherwise supply the data card readers and associated data

7    processing hardware and software, and merchants use the data card readers.  (*Id.*

8    (2010 Case, D.I. 16-1 at 18:14-18).)

9         SmartMetric plainly was on notice from the 2010 Case that MasterCard and

10   Visa do not issue data cards or supply data card readers, and further do not control or

11   direct others to act on Defendants' behalf to provide data cards or data card readers.

12   (*Id.*, Ex. B (2010 Case, D.I. 16-1 at 20:6-10).)  MasterCard and Visa repeated this

13   point in the parties' joint Rule 26(f) Report to the Court.  (*Id.*, ¶ 6 & Ex. C (2010

14   Case, D.I. 41 at 2:8-9).)  Despite knowing of this fatal flaw in its case from the outset,

15   SmartMetric completely overlooked these facts and filed the present lawsuit against

16   Defendants anyway.

17        **2.      SmartMetric made no effort to determine whether the '464 patent**

18              **covered any products or services of Defendants.**

19        Knowing full well from the 2010 Case the problems with applying the '464

20   patent to Defendants' products and services, SmartMetric nonetheless shirked its duty

21   to conduct a reasonable investigation and identify colorable claims before filing the

22   present lawsuit.  SmartMetric's responses to Defendants' interrogatories revealed that

23   SmartMetric did little more than pay lip service to these obligations.  For example, in

24   response to Visa's interrogatory asking SmartMetric to describe its investigation of

25   alleged infringement by Visa prior to filing suit and to identify all information

26   regarding any such investigation, SmartMetric stated only that "C. Hendrick has

27   followed relevant developments on the Internet and otherwise."  (Franklin Decl., ¶ 8

28   & Ex. E (Response to Visa at 17).)  "[Following] relevant developments on the

4

1    Internet and otherwise" does not amount to a reasonable pre-filing investigation as

2    required by Fed. R. Civ. P. 11.

3        **3.      SmartMetric offered a frivlous construction of "local access**

4              **number" that gave no meaning to the word "local" in the claims.**

5        The claims of the '464 patent all require "a local access number."  (Franklin

6    Decl., ¶ 4 & Ex. A ('464 patent, independent claims 1 and 14).)  Yet, SmartMetric

7    offered only a confusing construction of "local access number" as "an access number

8    that is either an access number with corresponding location information or a network

9    service provider."  (D.I. 52, Ex. A at 9.)  SmartMetric's construction failed to give

10   any meaning to the word "local."

11       Moreover, SmartMetric ignored the teachings in the '464 patent that described

12   the local access number as an access number specific to the locale of the user at the

13   time the user attempts access.  (Franklin Decl., Ex. A ('464 patent, col. 3, lines 55-63;

14   col. 4, lines 9-18; col. 8, lines 29-65).)  In short, SmartMetric offered a construction

15   that disregarded the whole point of the '464 patent—"overcoming the problems in the

16   prior art regarding the inconvenience of the user having to physically search for the

17   local ISP number *in the particular locale in which he or she is located*."  (*Id.*

18   ('464 patent, col. 2, lines 39-42 (emphasis added)).)  The Court ultimately rejected

19   SmartMetric's frivolous construction.  (D.I. 65 at 11.)

20   **B.   SmartMetric Prolonged Its Frivolous Claims in an Unreasonable Manner**

21       SmartMetric made little effort to remedy the obvious problems in its case

22   throughout this litigation.  SmartMetric failed to provide support for its infringement

23   claims at each stage of discovery.  Its responses to Defendants' interrogatories and

24   its sole document production were non-responsive.  Its expert report was

25   conclusory, and its corporate representative confirmed during his deposition that

26   SmartMetric had no basis for its claims against Defendants.  Even during the

27   summary judgment hearing before the Court, SmartMetric was unable to provide

28   any factual support for its claims.

1.    **SmartMetric failed to provide any support for its infringement claims during discovery.**

SmartMetric's lack of a case became even more apparent (1) when it failed to submit an expert report on non-infringement pursuant to the Court's schedule, (2) when its eventual expert report on infringement contained only conclusory allegations without any analysis and, (3) if not obvious then, when SmartMetric's expert admitted that he reviewed all relevant documents and did not find the "local access number" or the "database" elements required by the asserted claims.

Nevertheless, SmartMetric forged ahead, avoiding its duty to explain the basis for its claims at every turn, extending this litigation unreasonably, and forcing Defendants to expend considerable sums to defend against frivolous allegations.

a.    **SmartMetric failed to support its patent infringement claims in its interrogatory responses and document production.**

To avoid revealing the lack of evidentiary support for its claims, SmartMetric adopted a strategy of obfuscation and deflection whenever faced with a request to identify specific facts to support infringement.  For example, SmartMetric completely failed to respond to MasterCard's and Visa's interrogatories asking SmartMetric to describe in detail the factual and legal basis for its contention that MasterCard and Visa infringed the '464 patent.  (Franklin Decl. ¶ 7 & Ex. D (Response to MasterCard at 6-11); *id*. ¶ 8 & Ex. E (Response to Visa at 5-11).)  SmartMetric's responses to these interrogatories simply parroted the claim language and provided no additional information or rationale.

Additionally, SmartMetric could not identify who made or sold the alleged "data card" and "data card reader" in the accused MasterCard system.  (Franklin Decl. ¶ 7 & Ex. D (Response at 12).)  In response to MasterCard's interrogatory, SmartMetric merely referred to its answer to MasterCard's Interrogatory No. 2, in which SmartMetric stated non-responsively that "[o]n information and belief, the accused systems comprise data cards …."  (*Id*. (Response at 6, 13).)

6

1   Similarly, SmartMetric was unable to identify what in the accused MasterCard

2   system allegedly satisfies the "local access number" limitation of the patent claims.

3   (*Id*. Response at 13).)  In response to MasterCard's interrogatory, SmartMetric again

4   referred to its non-responsive answer to MasterCard's Interrogatory No. 2, in which

5   SmartMetric stated only that "[o]n information and belief, the accused systems

6   comprise application program(s) that read information on a card; said program(s) use

7   at least some of the information to access such a network."  (*Id*. (Response at 7).)

8   On January 21, 2013, in response to Defendants' requests for, among other

9   things, all documents concerning the basis for SmartMetric's allegations and any pre-

10  litigation investigation related to this lawsuit, SmartMetric made its sole document

11  production in this case—a letter from SmartMetric's counsel listing four publicly

12  available MasterCard and Visa websites.  (*Id*. ¶ 9 & Ex. F.)  The websites discussed

13  EMV chips and related devices generally; none demonstrated the basis for

14  SmartMetric's allegations or any pre-litigation investigation.  SmartMetric confirmed

15  that it would not be producing any additional documents.  (*Id*.)

16  Discovery closed on March 29, 2013 with SmartMetric having failed to

17  provide ***any*** support for its infringement claims.  On April 16, 2013, SmartMetric

18  belatedly supplemented some of its interrogatory responses.  (*Id*. ¶ 10 & Ex. G.)

19  Even then, however, SmartMetric failed to supplement its response to MasterCard's

20  Interrogatory No. 3, asking who made or sold the alleged "data card" and "data card"

21  reader in the accused MasterCard system.  (*Id*., Ex. G (Response at 13).)  In

22  supplementing its other interrogatory responses, SmartMetric merely referenced its

23  expert reports and declarations, and attempted to incorporate them by reference, in

24  violation of Fed. R. Civ. P. 33(d).  Notably, SmartMetric failed to offer any

25  explanation of what, in Defendants' accused systems, allegedly satisfied the "local

26  access number" limitation of the asserted patent claims.  (*Id*. (Response at 13-14).)

27  **b.   SmartMetric failed to serve a timely infringement report.**

28  Not only did SmartMetric knowingly initiate a meritless lawsuit, it prolonged

7

the litigation unnecessarily after failing to meet the Court's deadline to serve expert reports on infringement and validity.  On December 31, 2012, the parties were required to serve expert reports on the issues for which they bore the burden of proof—SmartMetric on infringement and damages, and Defendants on invalidity. (D.I. 64)  Defendants complied by serving a joint expert report on invalidity on December 31.  (Franklin Decl. ¶ 11.)  Despite having the burden to prove that Defendants infringed the '464 patent, SmartMetric failed to serve an expert report on infringement (or damages).  (*Id.*)

On January 28, 2013, the parties were required to serve rebuttal expert disclosures.  (D.I. 64.)  Despite SmartMetric's failure to serve an expert report on infringement, Defendants served expert reports on non-infringement on January 28. (Franklin Decl. ¶ 12.)  SmartMetric failed to serve a rebuttal report on invalidity (or any other issue).  (*Id.*)

SmartMetric never indicated that it needed more time to prepare expert reports or that SmartMetric had insufficient discovery to complete those reports.  (*Id.* ¶ 13.) SmartMetric also failed to request an extension of the expert report deadlines until February 13, 2013, long after those deadlines had passed.  (*Id.*)

c.   **SmartMetric's eventual expert report was more than two months late, violated a Court order, and was conclusory.**

To the extent that SmartMetric had any basis for believing that it could prevail, it vanished with SmartMetric's failure to provide timely expert reports.  Nonetheless, on February 15, 2013, SmartMetric belatedly identified its infringement expert, Edward Gussin, for the first time.  (Franklin Decl. ¶ 14 & Ex. H.)  On February 19, 2013, less than a month before the discovery cutoff, SmartMetric filed an *ex parte* application to modify the Scheduling Order, requesting that the Court reset the December 31 and January 28 deadlines for expert disclosures to allow it "to prepare/serve expert reports."  (D.I. 84 at 1, 3.)  On February 21, 2013, the Court granted a two-week extension of the discovery cutoff to March 29, 2013 but denied

8

1   "all other extensions requested in Plaintiff's Application."  (D.I. 87 ("All dates except

2   the discovery cut-off date shall remain as set forth in the Court's Order Modifying

3   Scheduling Order filed October 2, 2012 [Docket No. 64].").)

4        On February 22, 2013, the very next day, SmartMetric sent an e-mail to

5   Defendants in defiance of the Court's order, stating, "We will have our report on

6   infringement to you next week."  (Franklin Decl. ¶ 15 & Ex. I.)  On February 28,

7   2013, SmartMetric sent Defendants another e-mail, claiming that it was Defendants'

8   "own 'dirty conduct' (improper delay in producing documents) that caused the delay

9   in our expert reports."[1]  (*Id.* ¶ 16 & Ex. J.)

10       Despite the Court's Order, on March 1, 2013, SmartMetric served the

11  *Infringement/Validity Report from Edward L. Gussin on Behalf of Plaintiff/Counter-*

12  *Defendant SmartMetric Inc*. ("Gussin Report").  (*Id.* ¶ 17 & Ex. K.)  The Gussin

13  Report purported to state opinions on infringement and validity but, in fact, made

14  only conclusory allegations.  (*Id*.)  On infringement, the Gussin Report merely

15  contained citations to Defendants' production documents without any analysis.  (*Id.*,

16  Ex. K (Gussin Report ¶¶ 3-20).)  Mr. Gussin utterly failed to address Defendants'

17  arguments that Defendants do not sell data cards or data card readers, and that a credit

18  card system has no use for a "local access number" that is "specific to the locale of

19  the user at the time the user attempts access."  (*Id*.)

20       On March 11, 2013, Defendants received SmartMetric's summary judgment

21  motion and a declaration of Mr. Gussin in support.  Similar to the Gussin Report,

22  Mr. Gussin cited pages from a variety of unrelated documents of varying effective

23  dates concerning separate systems, all without any rationale or analysis.  Moreover,

24  the declaration contained additional opinions on infringement that SmartMetric failed

25  to disclose in the Gussin Report.  (*Compare, e.g.*, Gussin Report ¶¶ 4-7 (Franklin

26  Decl., Ex. K) *to* Gussin Decl. ¶¶ 4-11 (D.I. 118-4).)  Even these additional opinions,

27
28
[1] Any delay in production was caused by SmartMetric's unreasonable request for an
exception to the protective order.

1  however, were conclusory and failed to explain why Defendants allegedly infringed

2  the '464 patent.  For example, despite concluding that Defendants infringed,

3  Mr. Gussin failed to explain how the accused systems allegedly met the "local access

4  number" limitation in the claims.  (D.I. 118-4 (Gussin Decl. ¶ 10 & Ex. 6 at 3-5).)

5  Moreover, Mr. Gussin again failed to address Defendants' arguments that Defendants

6  do not sell data cards or data card readers.

### d.  SmartMetric's 30(b)(6) witness confirmed that SmartMetric had no basis for its case during his deposition.

9        Even after Mr. Gussin reviewed Defendants' expert reports on non-

10  infringement and examined all relevant documents that Defendants provided during

11  discovery, he was unable to substantiate his opinions that Defendants' accused

12  systems infringed the '464 patent.  On March 29, 2013, MasterCard and Visa deposed

13  Mr. Gussin, who testified as SmartMetric's representative.  During his deposition,

14  Mr. Gussin confirmed that none of the Visa documents cited in support of his

15  declaration show a "local access number" as required by the claims of the '464 patent.

16  (Franklin Decl. ¶ 18 & Ex. L (Gussin Tr. at 170:6-10, 173:25-176:4).)

17        As for MasterCard, when asked to explain how MasterCard's backup or stand-

18  in processing is allegedly local to a card user, Mr. Gussin could distinguish only

19  between "certain processes that happen in Europe versus the rest of the world."  (*Id.*

20  (Gussin Tr. at 71:23-72:2).)  Ultimately, Mr. Gussin could not explain how an

21  exception for European customers with existing back-up processing established use

22  of a local access number in the United States.  (*Id.* (Gussin Tr. at 72:23-73:9).)

23        Upon further questioning, Mr. Gussin admitted that he was unaware of any

24  circumstance under which a *local* access number from a database is used for stand-in

25  processing.  (*Id.* (Gussin Tr. at 76:2-11).)  He knew that MasterCard performs stand-

26  in processing in St. Louis and was unaware of any other locations.  (*Id.* (Gussin Tr. at

27  77:13-20).)  He could not explain how the stand-in processing that occurs at the

28  centralized St. Louis site is in any way "local."  (*Id.* (Gussin Tr. at 77:23-78:6).)

10

1  Ultimately, he could not explain how the location of the stand-in processing depends

2  at all upon the location of the user.  (*Id*. (Gussin Tr. at 80:22-81:14).)

3       Mr. Gussin also did not deny that Defendants do not provide data cards, card

4  readers, data processors, and related software.  (*Id*. (Gussin Tr. at 95:12-25).)

5       **2.     SmartMetric provided no support for its claims in opposing**

6       **Defendants' motion for summary judgment of non-infringement.**

7       Because SmartMetric failed to provide any explanation during discovery for

8  how MasterCard and Visa (who do not sell data cards or data card readers) could

9  possibly infringe the '464 patent (which requires these elements), it should have been

10  no surprise that SmartMetric would ignore this issue in its summary judgment papers.

11  At most, SmartMetric offered the conclusory assertion that each Defendant

12  "controls/directs/orchestrates the entire EMV system."  (D.I. 135 at 20.)  SmartMetric

13  offered no proof of such authority.  SmartMetric pointed to the declarations of

14  Defendants' experts, allegedly to show that Defendants control the entire payment

15  processing system.  (*See id.*)  These citations, however, indicated only that

16  Defendants establish specifications for payment cards and terminals, not that they

17  direct or control others in their manufacture and use of cards and terminals.

18       Likewise, just as SmartMetric failed to provide any explanation in discovery

19  for how a credit card system could possibly infringe a patent that requires a "local

20  access number," it was unable to offer such an explanation in its summary judgment

21  papers.  In its statement of genuine disputes in opposition to Defendants' summary

22  judgment motion, SmartMetric conceded that the Visa system does not require or use

23  local access numbers to provide payment processing services.  (D.I. 135-1,

24  Undisputed Fact Nos. 45 and 47.)  As for MasterCard, SmartMetric speculated that

25  stand-in processing somehow requires "a list of routing addresses which must be

26  stored in a database within the system."  (D.I. 135 at 16.)  However, given

27  Mr. Gussin's concession that MasterCard performs stand-in processing only at a

28  centralized facility in St. Louis, SmarMetric's speculation made absolutely no sense.

11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR ATTORNEY FEES

At the hearing on summary judgment, it once again became obvious that SmartMetric had no evidence of infringement, or even a viable theory.  During the hearing, the Court asked SmartMetric what its strongest argument to the jury would be, putting aside Mr. Gussin's testimony.  (Franklin Decl. ¶ 28, Ex. V (9/25/2014 Hearing Tr. at 16-17).)  Despite the Court's specific inquiry, SmartMetric was unable to identify anthing beyond Mr. Gussin's conclusory opinion.  (*Id.* at 17.)  Not only was SmartMetric unable to point to specific facts to meet its burden of proof, SmartMetric wholly ignored Mr. Gussin's admission that none of the Visa documents he cited showed a "local access number" and his inability to explain how the location of MasterCard's stand-in processing depends at all upon the location of the user.

### 3.    SmartMetric's bad faith is further shown by its false press releases.

Given the facts above, the only reasonable conclusion is that SmartMetric knew it could not support its claims against Visa and MasterCard.  SmartMetric, however, apparently saw a way to gain a commercial benefit from this litigation by issuing multiple press releases, many of which were, at best, misleading.

Since at least November 2011, SmartMetric has issued numerous press releases that included false and misleading statements regarding the 2010 Case.  These press releases deliberately misstated the determinations made by Judge Nguyen and the Federal Circuit.  (*Compare* Franklin Decl. ¶ 19 & Ex. M (11/17/11 press release claiming that Judge Nguyen's May 18, 2011 order construed the '464 patent as "cover[ing] 'contact' cards") *with* Franklin Decl. ¶ 20 & Ex. N (Judge Nguyen 5/18/11 Claim Construction Order) (no such construction); *compare* Franklin Decl. ¶ 21 & Ex. O (4/19/12 press release claiming that SmartMetric "Wins Appeal … Against Visa and MasterCard") *with* Franklin Decl. ¶ 22 & Ex. P (4/11/12 Federal Circuit Order affirming the judgment of the district court).)

SmartMetric continued to issue false and misleading press releases in this case.  Most notably, on October 17, 2013, SmartMetric issued a press release with the misleading headline, "Visa & MasterCard Fail in Seeking to Invalidate the

12

1  SmartMetric '464' Patent."  (Franklin Decl., ¶ 23 & Ex. Q.)  On October 18, 2013,

2  SmartMetric issued a second press release with the misleading statement,

> As announced yesterday by SmartMetric, the company is pleased that
> the defendants, Visa and MasterCard failed in having the Court rule
> that the SmartMetric issued patent is invalid. What now is at contention
> and the heart of the appeal to the Federal Court, is the question of who
> is the infringing party in the case.

8  (*Id.*, Ex. R.)  On October 21, 2013, SmartMetric issued a third press release with the

9  misleading statement, "The company is very pleased with the dismissal of the

10  Defendant's counterclaims and their attempt to have the Court invalidate the '464'

11  Patent.  This is a win for a small technology company and its shareholders against

12  arguably the largest financial institutions in the world …."  (*Id.*, Ex. S.)  All of this

13  was improper.  *Cf. Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1325 (Fed. Cir.

14  2011) (exceptional case where inventor "displayed a lack of regard for the judicial

15  system and … had a cavalier attitude towards the patent litigation process ….").

16      The truth, of course, is that the Court exercised its discretion not to decide

17  invalidity in view of its non-infringement ruling.  As in all things connected with this

18  case, SmartMetric had no basis for its false and misleading press releases.  These

19  press releases show SmartMetric's lack of regard for the judicial system and cavalier

20  attitude toward the litigation process.

## III.   DISCUSSION

### A.   Legal Standards Governing Fees Motions Under 35 U.S.C. § 285

23      The Patent Act states that "[t]he court in exceptional cases may award

24  reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  The purpose is

25  "to compensate the prevailing party for its monetary outlays in the prosecution or

26  defense of the suit."  *Automated Bus. Cos. v. NEC Am., Inc.*, 202 F.3d 1353, 1355

27  (Fed. Cir. 2000).  "In addition, § 285 serves as a deterrent to 'improper bringing of

28  clearly unwarranted suits' for patent infringement."  *Automated Bus. Cos.*, 202 F.3d

13

1    at 1355 (quoting *Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988)).

2         "When assessing whether to award attorney fees under 35 U.S.C. § 285, a

3    district court engages in a two-step inquiry." *Taurus IP, LLC v. Orion IP, LLC*,

4    726 F.3d 1306, 1326 (Fed. Cir. 2013).  First, the court must determine whether the

5    prevailing party has proven that the case is exceptional.  *Id*.  "If the court finds the

6    case exceptional, it must determine whether an award of attorney fees is appropriate,

7    and, if so, the amount of that award."  *Id*.

8         The Supreme Court recently commented on Section 285 and loosened the

9    standard for what makes a case "exceptional."  *See Octane Fitness, LLC v. ICON*

10   *Health & Fitness, Inc.*, 134 S.Ct. 1749 (2014).  Under the prior standard, a prevailing

11   party could show exceptionality only in "two limited circumstances: 'when there has

12   been some material inappropriate conduct,' or when the litigation is both 'brought in

13   subjective bad faith' and 'objectively baseless.'"  *Id*. at 1752 (quoting *Brooks*

14   *Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (2005)).  The

15   prevailing party also had to prove exceptionality by clear and convincing evidence.

16   *See Brooks Furniture*, 393 F.3d at 1382.  In *Octane Fitness*, however, the Supreme

17   Court overruled the entire *Brooks Furniture* framework and rejected the Federal

18   Circuit's "unduly rigid" approach, stating that it "impermissibly encumbers the

19   statutory grant of discretion to district courts."  *Octane Fitness*, 134 S.Ct. at 1755.

20        In place of the Federal Circuit's strict formulation, the Supreme Court imposed

21   a "holistic, equitable approach" in light of the totality of the circumstances, offering

22   broad discretion to district courts:

23        We hold, then, that an "exceptional" case is simply one that stands out from

24        others with respect to the substantive strength of a party's litigating position

25        (considering both the governing law and the facts of the case) or the

26        unreasonable manner in which the case was litigated. District courts may

27        determine whether a case is "exceptional" in the case-by-case exercise of their

28        discretion, considering the totality of the circumstances.

14

1  *Id*. at 1756.

2      The Supreme Court drew from a copyright case to present a non-exclusive list

3  of factors for district courts to consider on a case-by-case basis, including

4  "frivolousness, motivation, objective unreasonableness (both in the factual and legal

5  components of the case) and the need in particular circumstances to advance

6  considerations of compensation and deterrence." *Id*. at 1756 n.6 (citing *Fogerty v.*

7  *Fantasy, Inc.*, 510 U.S. 517, 534 (1994)). "[A] case presenting either subjective bad

8  faith or exceptionally meritless claims may sufficiently set itself apart from mine-run

9  cases to warrant a fee award." *Id*. at 1757. However, "[t]here is 'no precise rule or

10  formula' for this determination and so the district court should consider the totality of

11  the circumstances." *Linex Techs., Inc. v. Hewlett-Packard Co.*, 2014 WL 4616847, at

12  *3 (N.D. Cal. Sept. 15, 2014) (quoting *Octane Fitness*, 134 S.Ct. at 1756).

13      The Supreme Court also rejected the "clear and convincing evidence" burden.

14  *See Octane Fitness*, 134 S.Ct. at 1758. "[N]othing in § 285 justifies such a high

15  standard of proof.  Section 285 demands a simple discretionary inquiry; it imposes no

16  specific evidentiary burden, much less such a high one." *Id*.

17  **B.**    **This Case Stands Out from Others Because SmartMetric's Infringement**

18         **Position Was Wholly Unsubstantiated**

19         **1.    SmartMetric could not have expected success when it filed suit.**

20      SmartMetric could not have expected success on the merits when it filed this

21  case.  To infringe the '464 patent, Defendants must make or sell both data cards and

22  card readers, or direct or control those who do.  As Defendants have explained time

23  and again, credit cards are issued by banks, not by MasterCard or Visa.  Moreover, in

24  the 2010 Case, Defendants repeatedly told SmartMetric that they did not provide or

25  use data cards or card readers, or direct or control any entity that does.  (Franklin

26  Decl., Ex. B (2010 Case, D.I. 16-1 at 17:27-18:18).)

27      "Direct infringement is a strict-liability offense, but it is limited to those who

28  practice each and every element of the claimed invention." *BMC Resources, Inc. v.*

15

1  *Paymentech, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007).  Although "[o]ne party's

2  direction or control over another in a principal-agent relationship or like contractual

3  relationship operates as an exception to this general rule," the Federal Circuit has held

4  that "absent that agency relationship or joint enterprise," a court should not "find one

5  party vicariously liable for another's actions."  *Aristocrat Techs. Austl. Pty Ltd. v.*

6  *International Game Tech.*, 709 F.3d 1348, 1363 (Fed Cir. 2013).  Here, SmartMetric

7  never had any evidence, and was unable to develop any, that Defendants had a

8  principal-agent or similar contractual relationship with various financial institutions

9  and card reader manufacturers, such that Defendants should be held vicariously liable

10 for the actions of these financial institutions and manufacturers.  To the extent that

11 SmartMetric held this unreasonable belief, it should have been disabused of that

12 belief when MasterCard and Visa set the record straight in the 2010 Case.

13      Additionally, SmartMetric could not have reasonably expected to prove that

14 the '464 patent's "local access number" requirement was met.  Again, it has never

15 provided any evidence that the connection between a merchant and its acquiring bank

16 depends on the cardholder's geographic location.

17      A patentee "must conduct careful investigation before bringing suit."  *Linex*

18 *Techs.,* 2014 WL 4616847, at *3 (finding case exceptional under 35 U.S.C § 285);

19 *see also Lumen View Tech., LLC v. Findthebest.com, Inc.*, 2014 WL 2440867, at *6

20 (S.D.N.Y. May 30, 2014) (finding case exceptional where "the most basic pre-suit

21 investigation would have revealed" that the infringement allegations lacked merit);

22 *Yufa v. TSI Inc.*, 2014 WL 4071902, at *3 (N.D. Cal. Aug. 14, 2014) (finding case

23 exceptional where "Plaintiff did not conduct an adequate investigation prior, at the

24 very least, to filing his first amended complaint").  Here, the most basic pre-suit

25 investigation would have made clear that a credit card would not have a "local access

26 number" for the user, since it is the merchant's terminal that does the connecting to

27 the acquiring bank.  The most basic pre-suit investigation would also have made clear

28 that Defendants do not make or sell cards or card readers (or control those who do).

16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR ATTORNEY FEES

**2.    SmartMetric could not have expected success once the Court rejected SmartMetric's construction of "local access number."**

SmartMetric could not have reasonably expected success once its unreasonable construction of "local access number" was rejected by the Court.  (D.I. 65 at 11.) SmartMetric's case was frivolous from the start, but the rejection of SmartMetric's claim construction (which had no basis in the specification of the '464 patent) should have made that even clearer.

The Federal Circuit has stated that, "[w]hen patentees have sought unreasonable claim constructions divorced from the written description, this court has found infringement claims objectively baseless." *Taurus IP*, 726 F.3d at 1327; *see also, e.g., MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 919 (Fed. Cir. 2012) ("Because the specification and prosecution history clearly refute [the patentee's] proposed claim construction, the district court did not err in finding that [the patentee's] infringement claims were objectively baseless."); *Eon-Net*, 653 F.3d at 1326 ("[B]ecause the written description clearly refutes [the patentee's] claim construction, the district court did not clearly err in finding [the patentee] pursued objectively baseless infringement claims.").  Moreover, a patentee "must continually assess the soundness of pending infringement claims, especially after an adverse claim construction." *Taurus*, 726 F.3d at 1328.  These principles are only strengthed under the more relaxed *Octane Fitness* standard.  *See, e.g., Chalumeau Power Sys. LLC v. Alcatel-Lucent*, 2014 WL 4675002, at *2 (D. Del. Sept. 12, 2014) (awarding fees because, while the court "did agree with some of Chalumeau's proposed constructions, taken as a whole its positions were frivolous").

Here, SmartMetric undeniably sought an unreasonable construction of "local access number" that was divorced from the specification of the '464 patent.  The unreasonableness of SmartMetric's construction was highlighted on appeal, when, for the first time, SmartMetric presented a brand-new infringement theory under which a "local access number" became an optional element of the patent claims.  (Franklin

17

1  Decl., ¶ 27 & Ex. U.)  SmartMetric did not previously assert this theory because it
2  would have completely undermined SmartMetric's position on patent validity (which
3  was not at issue before the Federal Circuit).  But on appeal, SmartMetric had the
4  nerve to pretend that this theory had been its stance all along, and then attack the
5  summary judgment order for failing to adopt it.  These actions suggest that
6  SmartMetric knew all along its construction of "local access number" was
7  groundless, but choose to prosecute this case anyway, even after this Court had
8  rejected SmartMetric's construction.  This conduct makes this case further stand out
9  from others.  *Cf. Linex Techs.*, 2014 WL 4616847, at *4 (finding case exceptional:
10  "That Linex chose to broaden certain claims of the ′219 and ′812 patents suggests that
11  it knew about the substantive weakness of its spread spectrum claims.").

12     **3.     SmartMetric could not have expected success once it failed to serve**
13          **a timely expert report on infringement.**

14          SmartMetric could not have reasonably expected success once the deadline for
15  initial expert disclosures passed without SmartMetric serving an expert report on
16  infringement.  SmartMetric had the burden of proving that Defendants infringe the
17  ′464 patent.  To meet this burden of proof, SmartMetric needed an expert.
18  SmartMetric admitted as much at the March 25, 2013 hearing:

19          [Mr. Gussin] is my expert on the subject of validity and infringement.

20          He is my whole case on validity and infringement …

21  (Franklin Decl. ¶ 26 & Ex. T (Mar. 25, 2013 Hearing Tr. at 13).)  On the possibility
22  of the Court excluding Mr. Gussin's testimony, Mr. Bright exclaimed:

23          Your Honor may impose other penalties; fine me money, throw my

24          motions out, whatever you want to do.  But for goodness sake, let's not

25          gut the case on some technicality …

26  (*Id.* at 16.)  In its summary judgment reply brief, SmartMetric further admitted:

27          Expert testimony is needed to prove infringement.  Therefore,

28          excluding Gussin would be the same as granting summary judgment of

18

1    non-infringement to Defendants ….

2    (D.I. 148 at 18:22-24.)

3          Having admitted that expert testimony is needed to prove infringement,

4    SmartMetric could not have reasonably expected success on the merits once it failed

5    to serve a timely infringement report on December 31, 2012.  At that point, it should

6    have been clear to SmartMetric that it had no grounds for maintaining this suit.  If for

7    some reason it was not clear by December 31, then it should have been crystal clear

8    by February 21, 2013, when the Court denied SmartMetric's request to re-set the

9    expert disclosure deadlines.  (D.I. 87.)

10         **4.      SmartMetric could not have expected success once its late expert**

11                **failed to produce a substantive infringement opinion.**

12         As noted above, SmartMetric served a tardy expert report on infringement in

13   defiance of the Court's order.  Yet, the Gussin Report and later Gussin Declaration

14   made only conclusory allegations.  (Franklin Decl. ¶ 17 & Ex. K; *see also* D.I. 118-

15   4.)  Both documents failed to address the fact that Defendants do not sell cards or

16   card readers, and that a credit card system has no use for a "local access number" that

17   is "specific to the locale of the user at the time the user attempts access."

18         SmartMetric could not have reasonably expected success once its expert was

19   unable to provide a substantive infringement opinion.  The Federal Circuit requires

20   that a patent owner "present particularized evidence that links the accused products

21   to the patent on a limitation by limitation basis."  *Motionless Keyboard Co. v.*

22   *Microsoft Corp.*, 486 F.3d 1376, 1382 (Fed. Cir. 2007).  "It is well settled that an

23   expert's unsupported conclusion on the ultimate issue of infringement is insufficient

24   to raise a genuine issue of material fact."  *Dynacore Holdings Corp. v. U.S. Philips*

25   *Corp.*, 363 F.3d 1263, 1278 (Fed. Cir. 2004).

26         All SmartMetric had was Mr. Gussin's unsupported conclusion on the

27   ultimate issue of infringement.  Courts have not hesitated to award attorney fees in

28   such circumstances.  *See, e.g., Yufa*, 2014 WL 4071902, at *3 (finding case

19

1  exceptional where the patentee prosecuted the action "without any admissible
2  evidence, and relied solely on conclusory allegations of infringement and claims that
3  [the accused infringer] was lying").

4      **5.    SmartMetric could not have expected success once its expert**
5           **testified that he was unaware of any circumstance under which**
6           **Defendants use a local access number.**

7      Finally, SmartMetric could not have reasonably expected success once
8  Defendants elicited Mr. Gussin's testimony regarding the "local access number"
9  limitation.  As discussed above, Mr. Gussin confirmed that none of the Visa
10 documents cited in support of his declaration show a "local access number" as
11 required by the claims of the '464 patent.  (Franklin Decl. ¶ 18 & Ex. L (Gussin Tr. at
12 170:6-10, 173:25-176:4).)  Mr. Gussin also admitted that he was unaware of any
13 circumstance under which a local access number from a database is used for
14 MasterCard's stand-in processing.  (*Id*. (Gussin Tr. at 76:2-11).)

15 **C.    SmartMetric Brought and Prolonged This Case in Subjective Bad Faith**

16     Subjective bad faith is no longer required to show an exceptional case.  *See*
17 *Octane Fitness*, 134 S.Ct. at 1757.  A case alleging "exceptionally meritless claims
18 may sufficiently set itself apart from mine-run cases to warrant a fee award."  *Id*.
19 However, "'[s]ubjective bad faith' and the 'unreasonable manner in which the case
20 was litigated' are both relevant factors under *Octane Fitness*, as they were under
21 *Brooks Furniture*."  *Summit Data Sys., LLC v. EMC Corp.*, 2014 WL 4955689, at *4
22 n.5 (D. Del. Sept. 25, 2014) (citing *Octane Fitness*, 134 S.Ct. at 1756 & n.6).

23     The evidence shows that SmartMetric knew it lacked an objective foundation
24 for its patent infringement claims, providing further evidence of an exceptional case:

25 •    In the 2010 Case, Defendants put SmartMetric on notice that neither
26     MasterCard nor Visa provides data cards or data card readers, or directs or
27     controls any other entity that might provide or use data cards or data card
28     readers.  (Franklin Decl. ¶ 5 & Ex. B (2010 Case, D.I. 16-1 at 17:27-18:5).)

20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' RENEWED MOTION FOR ATTORNEY FEES

- SmartMetric's construction of "local access number" was frivolous, ignoring the word "local" in the claims and the patent specification's discussion of the importance of "overcoming the problems in the prior art regarding the inconvenience of the user having to physically search for the local ISP number in the particular locale in which he or she is located." (*Id*. ¶ 4 & Ex. A ('464 patent, col. 2, lines 39-42).)

- SmartMetric avoided answering Defendants' interrogatories asking it to identify who made or sold the alleged "data card" and "data card reader" in the accused systems. (Franklin Decl., Ex. D (Response at 6, 13).)

- SmartMetric avoided answering Defendants' interrogatories asking it to identify what in the accused systems allegedly satisfies the "local access number" limitation of the asserted patent claims. (*Id*. (Response at 7).)

- SmartMetric failed to cure these problems in its tardy supplemental responses.

- SmartMetric produced no documents in discovery, other than a letter from counsel listing four publicly available websites. (*Id*. ¶ 9 & Ex. F.)

- The Gussin Report made only conclusory allegations, making bare citations to Defendants' production documents without any analysis. (*Id*. ¶ 17 & Ex. K.)

- The Gussin Declaration avoided addressing the fact that Defendants do not sell data cards or data card readers. It contained a bare mention of "stand-in processing" without any discussion of how "stand-in processing" allegedly pertains to the patent claims. (D.I. 118-4 (Gussin Decl. ¶ 10 & Ex. 6 at 3-5).)

- SmartMetric continually issued false and misleading press releases.

**D.    SmartMetric's Litigation Misconduct Alone Makes This Case Exceptional**

Aside from the evidence of SmartMetric's objectively baseless claim and bad faith, SmartMetric's conduct from the time it failed to meet the Court's deadline for submission of the expert report on infringement was calculated and intended to keep Defendants mired in a frivolous lawsuit which clearly had no factual support. This type of litigation misconduct alone would make this case exceptional under § 285.

21

## IV.   DEFENDANTS' ATTORNEYS FEES AND COSTS

**A.     Defendants' Litigation Activities**

This action was stayed from shortly after its filing until the appeal of the 2010 Case was concluded.  The stay was lifted in about May 2012.  From that point on, Defendants were forced to undertake the following litigation efforts, among others:

- Preparing answers and declaratory relief counterclaims [D.I. 25 & 29.];
- Preparing oppositions to motions to dismiss by SmartMetric against the counterclaims for alleged failure to state a claim for relief [D.I. 39-40.];
- Searching and analyzing the prior art in support of Defendants' patent invalidity defenses (Clark Decl., ¶ 14);
- Serving and responding to written discovery (Clark Decl., ¶ 14);
- Preparing and responding to claim construction briefs, and attending the claim construction hearing [D.I. 52, 55-56, 58-59, 62];
- Reviewing and producing voluminous documents related to the credit card systems alleged to infringe (Clark Decl., ¶ 14);
- Retaining and preparing expert witnesses on the issues of infringement and validity, and assisting in the preparation of expert reports(Clark Decl., ¶ 14);
- Opposing SmartMetric's belated attempts to seek relief from the expert report deadlines and addressing its tardy expert reports [D.I. 89-90];
- Preparing for, taking and defending depositions of percipient and expert witnesses (Clark Decl., ¶ 14);
- Preparing comprehensive summary judgment motions on non-infringement, invalidity and damages [D.I. 119-133];
- Opposing SmartMetric's frivolous summary judgment motion on infringement and validity [D.I. 139-142]; and
- Opposing SmartMetric's frivolous appeal [D.I. 178-179].

**B.     Defendants' Attorney Fees**

MasterCard has been represented exclusively by Sheppard, Mullin, Richter &

Hampton, LLP ("SMRH"), and Visa has been represented exclusively by Jones Day. The respective clients are obligated by agreement to pay for services rendered on an hourly basis and for costs advanced on their behalf. (Clark Decl., ¶ 4, 5, 10; Melnik Decl., ¶ 2.) MasterCard agreed to pay SMRH's standard hourly rates subject to a 10% discount applied to all billers. (Clark Decl., ¶ 10.)

The MasterCard team comprised Gary Clark, Darren Franklin, Dennis Smith, and Andrew Kim. The Clark declaration sets forth each attorney's qualifications, his billing rate(s) over the 30-month period covered by this motion, his total hours and billings, and the average billing rate of each team member and the overall team. (Clark Decl., ¶ 7, 17.) Each attorney's daily activities are reflected by the monthly invoices to MasterCard attached as Exhibit "D" to the Clark declaration.

The Visa team comprised partners Joseph Melnik and Jason McDonell, and associates An Doan, Jacqueline Lee, Matthew Silveira, and Kyle Barrett. The Melnik Declaration sets forth each attorney's qualifications and his or her billing rate(s) over the 30-month period covered by this motion. (Melnik Decl., ¶¶ 6-15.)

Visa and MasterCard cooperated extensively in nearly all aspects of this case, dividing up the tasks and avoiding duplication of effort wherever possible. (Clark Decl., ¶ 9; Melnik Decl., ¶ 22.) As a result, SMRH's attorney fees charged to MasterCard were $1,081,534 (Clark Decl., ¶ 13), and Jones Day's attorney fees charged to Visa were $1,637,531 (Melnik Decl., ¶ 23), for a total of $2,719,065. This does not include the full attorney fees for this motion, which are also recoverable.

## C.   **Defendants' Costs**

Defendants have also incurred costs, including expert witness fees and costs, in the amount of $325,725.74 that are recoverable. Those costs consist primarily of the following:

- Expert witness fees and costs of $168,155.24 for Dr. Toni Merschen, Defendants' joint expert on invalidity and MasterCard's expert on non-infringement. (Clark Decl., ¶ 15 & Ex. F.)

23

1   •     Expert witness fees and costs of $37,180 for Jack Grimes, Visa's expert on

2        non-infringement.  (Melnik Decl., ¶ 24 & Ex. N.)

3   •     Costs of $52,065.97 for processing of documents for production to

4        SmartMetric.  (Clark Decl., ¶ 15 & Ex. G.)

5   **D.**    **Defendants' Fees and Costs Were Reasonable**

6        The starting point for determining the amount of a "reasonable fee is the

7   number of hours reasonably expended on the litigation multiplied by a reasonable

8   hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The product of these

9   two figures is the lodestar, and there is a "strong presumption" that the lodestar is

10  the reasonable sum the attorneys deserve.  *See Pennsylvania v. Delaware Valley*

11  *Citizens' Council for Clean Air*, 478 U.S. 546, 565-66 (1986).

12       In determining the reasonableness of an attorney fees award under 35 U.S.C.

13  § 285, the Federal Circuit looks at the following:  hourly time records; full expense

14  statements; documentation of attorney hourly billing rates in the community for the

15  type of work involved; the attorney's particular skill and experience; and detailed

16  billing records or client's actual bills showing tasks performed in connection with the

17  litigation.  *Junker v. Eddings*, 396 F.3d 1359, 1366 (Fed. Cir. 2005).  Fees incurred in

18  preparing the fee motion are ordinarily awarded.  *Mathis*, 857 F. 2d at 756.  The

19  Ninth Circuit's guidelines are similar.  In determining what is a reasonable hourly

20  rate and what number of compensable hours is reasonable, the court is to consider the

21  factors in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).  *See,*

22  *e.g., Carter v. Caleb Brett LLC*, 757 F.3d 866, 869 (9th Cir. 2014) (listing *Kerr*

23  factors).  It is proper also to include the time spent by paralegals and law clerks.  *See*

24  *D'emanuele v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1387 (9th Cir. 1990).

25       Defendants' hourly rates are shown to be reasonable by comparison with the

26  most recent data from the American Intellectual Property Law Association

27  ("AIPLA") Report of the Economic Survey, 2013.  (Clark Decl., ¶¶ 17-21 & Ex. I.)

28  *See Mathis*, 857 F.2d at 755-56 (holding that AIPLA economic survey was properly

24

1   considered in determining reasonable attorney fees).  The average hourly rates

2   charged by both the MasterCard team and the Visa team are within the mean hourly

3   rates shown in the AIPLA Survey.  (Clark Decl., ¶ 18; Melnik Decl., ¶ 7.)

4        The combined Defendants' attorney fees and costs are also reasonable, given

5   that they totaled only $3,044,790.  (Clark Decl., ¶ 14; Melnik Decl., ¶¶ 23-24.)  The

6   word "only" is appropriate considering that SmartMetric sought ***$13.4 billion*** in

7   damages.  This is significant not just due to its staggering size, but also because the

8   AIPLA Economic Survey provides data for total costs of patent litigation by the

9   amount in controversy, and the upper end of the data is for cases with more than $25

10  million at stake.  Although SmartMetric's damages claim was grossly exaggerated, it

11  mandates comparison of Defendants' fees and costs to the ">$25M" data.

12       The AIPLA Survey shows that the mean cost of patent cases in Los Angeles,

13  with more than $25 million at stake, was about $5 million through the end of

14  discovery and about $7 million overall.  Defendants' total attorney fees of about

15  $3 million, thus, were incredibly reasonable by comparison.  Defendants' fees were

16  about 60% of the mean AIPLA Survey cost through the close of discovery, and yet

17  they covered significantly more activities—e.g., bringing and opposing MSJs.

18       In *Mathis*, the Federal Circuit ruled that expenses are also "properly within the

19  scope of Section 285."  857 F.2d at 757.  With this understanding, the Federal Circuit

20  has upheld grants of expenses under Section 285 beyond the expenses enumerated in

21  Sections 1821 and 1920.  *Id*. at 758.  Thus, the award to Defendants should include

22  non-taxable costs.  The expenses that Defendants are entitled to recover from

23  Plaintiffs were reasonable and were necessary to incur in defense of this litigation.

24       Defendants submit that they are also entitled to an award of pre-judgment

25  interest on the award of attorney fees.

26                      **V.   CONCLUSION**

27       For the foregoing reasons, Defendants request that the Court declare this action

28  to be an exceptional case and award Defendants reasonable attorney fees and costs.

25

Dated: November 3, 2014     SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By: /s/ Gary A. Clark
Gary A. Clark
Attorneys for Defendant and Counterclaimant
MASTERCARD INTERNATIONAL
INCORPORATED

Dated: November 3, 2014     JONES DAY


By: /s/ Joseph Melnik
Joseph Melnik
Attorneys for Defendant and Counterclaimant
VISA INC.

In accordance with Local Rule 5-4.3.4(a)(2), I hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: November 3, 2014     SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By: /s/ Gary A. Clark
Gary A. Clark
Attorneys for Defendant and Counterclaimant
MASTERCARD INTERNATIONAL
INCORPORATED

[List of Additional Counsel]

DENNIS J. SMITH, Cal. Bar No. 233842
dsmith2@sheppardmullin.com
ANDREW T. KIM, Cal. Bar No. 280223
akim@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
333 South Hope Street
Los Angeles, California 90071-1422
Telephone:   (213) 620-1780
Facsimile:    (213) 620-1398

Attorneys for Defendant and Counterclaimant
MASTERCARD INTERNATIONAL INCORPORATED

JASON MCDONELL (State Bar No. 115084)
jmcdonell@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:  (415) 626-3939
Facsimile:   (415) 875-5700

26

1  STEVEN J. CORR (State Bar No. 216243)
   sjcorr@jonesday.com
2  ALEXIS A. HOULE (State Bar No. 274429)
   ahoule@jonesday.com
3  JONES DAY
   555 South Flower Street, 50th Floor
4  Los Angeles, CA 90071
   Telephone:   (213) 489-3939
5  Facsimile:    (213) 243-2539

6  Attorneys for Defendant and Counterclaimant
   VISA INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

27