GARY A. CLARK, Cal. Bar No. 65455
gclark@sheppardmullin.com
DARREN M. FRANKLIN, Cal. Bar No. 210939
dfranklin@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
333 South Hope Street, 43rd Floor
Los Angeles, California  90071-1422
Telephone:  (213) 620-1780
Facsimile:  (213) 620-1398

Attorneys for Defendant and Counterclaimant
MASTERCARD INTERNATIONAL INCORPORATED

JOSEPH MELNIK (State Bar No. 255601)
jmelnik@jonesday.com
AN P. DOAN (State Bar No. 250111)
apdoan@jonesday.com
JONES DAY
1755 Embarcadero Road
Palo Alto, CA  94303
Telephone:  (650) 739-3939
Facsimile:  (650) 739-3900

Attorneys for Defendant and Counterclaimant
VISA INC.

 [Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| SMARTMETRIC INC.,<br><br>              Plaintiff,<br><br>         v.<br><br>MASTERCARD INTERNATIONAL INCORPORATED AND VISA INC.,<br><br>              Defendants,<br>_____<br>AND RELATED COUNTERCLAIMS. | Case No. CV 11-7126 MWF (AJWx)<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR ATTORNEY FEES**<br><br>Date:   January 12, 2015<br>Time:   10:00 a.m.<br>Crtm:  1600, Spring Street<br>          Hon. Michael W. Fitzgerald |

# **<u>TABLE OF CONTENTS</u>**

I. INTRODUCTION .................................................................................................. 1

II. DISCUSSION .................................................................................................... 2

    A.    Ninth Circuit and Supreme Court Precedent Make Clear that This Court Has Jurisdiction to Hear Defendants' Motion ..................... 2

    B.    SmartMetric Fails to Rebut the Evidence that This is an Exceptional Case .................................................................................... 4

        1.    SmartMetric failed to conduct a reasonable pre-suit investigation .............................................................................. 5

        c.    SmartMetric failed to conduct a reasonable pre-suit investigation into whether Defendants' systems had a local access number. ........................................................... 9

        2.    SmartMetric shifted the burden of proof onto Defendants and throughout the case refused to be tethered to any facts or theories. ................................................................. 11

        3.    SmartMetric fails to rebut Defendants' evidence of litigation misconduct surrounding SmartMetric's expert and his late report ....................................................................... 15

    C.    Defendants Should Be Awarded the Fees Requested in The Motion ............................................................................................. 16

        1.    The requested fees are reasonable considering the amount at stake. ................................................................................. 16

        2.    SmartMetric's alleged financial hardship should not affect the size of the fee award. ........................................................... 17

        3.    SmartMetric's valuation of the fees at $60,000 is unreasonable. ................................................................................. 18

        4.    Defendants' Fees on Appeal .................................................. 20

III. CONCLUSION ............................................................................................... 21

i

1

## <u>TABLE OF AUTHORITIES</u>

2

3 <u>Cases</u>

4 *Armament Sys. & Procedures, Inc. v. IQ Hong Kong Ltd.*,
    546 F. Supp. 2d 646 (E.D. Wis. 2008)....................................................17

5

6 *Automated Bus. Cos. v. NEC Am., Inc.*,
    202 F.3d 1353 (Fed. Cir. 2000)...............................................................19, 21

7 *Emery v. Visa Int'l Service Ass'n*,
    95 Cal. App. 4th 952 (2002).........................................................................8

8

9 *Estate of Miller v. Thrifty Rent-A-Car Sys., Inc.*,
    637 F. Supp. 2d 1029 (M.D. Fla. 2009) .......................................................9

10 *Griggs v. Provident Consumer Discount Co.*,
    459 U.S. 56 (1982) ........................................................................................2

11

12 *Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ....................................................................................17

13 *Hospital of Barstow, Inc. v. California Nurses Ass'n*,
    No. CV 13-01063 CAS (DTBx), 2014 WL 4679042 (C.D. Cal. Sept. 18,

14     2014)................................................................................................................4

15 *Judin v. United States*,
    110 F.3d 780 (Fed. Cir. 1997) ....................................................................10

16

17 *League of Women Voters of Cal. v. F.C.C.*,
    751 F.2d 986 (9th Cir. 1985) ........................................................................3

18 *Linex Techs., Inc. v. Hewlett-Packard Co.*,
    2014 WL 4616847 (N.D. Cal. Sept. 15, 2014) ............................................5

19

20 *Lumen View Tech., LLC v. Findthebest.com, Inc.*,
    2014 WL 2440867 (S.D.N.Y. May 30, 2014)............................................11

21 *Masalosalo v. Stonewall Ins. Co.*,
    718 F.2d 955 (9th Cir. 1983) ........................................................................3

22

23 *Reed v. Young Men's Christian Ass'n USA*,
    No. 3:07-0765, 2008 WL 3852175 (M.D. Tenn. Aug. 15, 2008)...................9

24 *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,
    2007 WL 840368 (S.D.N.Y. Mar. 21, 2007) .............................................18

25

26 *U.S. v. Real Property Located at 475 Martin Lane, Beverly Hills, CA*,
    727 F. Supp. 2d 876 (C.D. Cal. 2010)..........................................................3

27 *View Eng'g, Inc. v. Robotic Vision Sys.*,
    208 F.3d 981 (Fed. Cir. 2000)....................................................................10

28

ii

*Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*,
    51 F. Supp. 2d 302 (S.D.N.Y. 1999)..............................................................17

*Yufa v. TSI Inc.*,
    2014 WL 4071902 (N.D. Cal. Aug. 14, 2014)................................................11

**<u>Statutes</u>**

35 U.S.C. § 285...............................................................................1, 16, 20

SMRH:435591612.1

# I.

## INTRODUCTION

Defendants MasterCard International Incorporated ("MasterCard") and Visa Inc. ("Visa") submit this reply memorandum in support of their renewed motion for an award of attorney fees pursuant to 35 U.S.C. § 285 (D.I. 220) ("Motion") and in response to Plaintiff SmartMetric Inc.'s Opposition to Defendants' Renewed Motion for Attorneys' Fees and Costs (D.I. 234) ("Opp.").

SmartMetric's opposition is inapposite.  The issue is not whether there existed singular misconduct at each of the pre-filing, discovery, claim construction, expert report, summary judgment, or appeal stage.  This case is exceptional because, taken as a whole, the evidence overwhelmingly shows that SmartMetric purposefully initiated a baseless suit against MasterCard and Visa and, without any factual or legal support for its infringement claims, continually altered its theories in response to MasterCard and Visa's submissions in the case.  SmartMetric's elusive tactics effectively turned the burden of proof on its head, requiring MasterCard and Visa not only to prove non-infringement, but also at the same time disprove SmartMetric's evolving theories.

SmartMetric's unreasonable conduct throughout the entirety of this litigation and on appeal was evident:

- Pre-filing:  SmartMetric failed to conduct a reasonable pre-filing investigation and should have known, from the very beginning of this case, that it lacked a claim against MasterCard and Visa.

- Discovery:  SmartMetric failed to support its patent infringement claims in its interrogatory responses and document production.

- Claim Construction:  SmartMetric offered a frivolous construction of "local access number" that contradicted the claim language and ignored the teachings of the '464 patent.

- Expert Reports:  SmartMetric ignored the Court's order regarding submission of expert reports and withheld its expert reports on infringement until after it received non-infringement expert reports from MasterCard and Visa.

- Summary Judgment:  In briefing the motions for summary judgment, SmartMetric submitted an additional expert declaration in opposition to Defendants' non-infringement motion, and yet another declaration by Mr. Gussin with its reply to Defendants' opposition to its infringement motion.  These additional expert declarations contain supplemental opinions on infringement in response to Defendants' papers—opinions SmartMetric failed to disclose in its untimely expert reports.

- Appeal:  SmartMetric attempted to adopt a new theory of the case on appeal by arguing, for the first time, that the Defendants' systems could infringe even in the absence of a "local access number" provided that the systems included a "default access number."

SmartMetric's failure to investigate prior to filing the suit, deliberate concealment of its theories and information in an effort to shift the burden of proof, and general litigation misconduct together make this case exceptional.  Nothing in SmartMetric's opposition brief changes these facts.  Section 285 empowers this Court to make Defendants whole and award reasonable attorney fees to the Defendants.

## II.

## DISCUSSION

**A.**    **Ninth Circuit and Supreme Court Precedent Make Clear that This Court Has Jurisdiction to Hear Defendants' Motion**

SmartMetric argues that this Court lacks jurisdiction to hear Defendants' Motion because SmartMetric already filed an appeal in this case.  (Opp. at 1:2-2:4.) This argument contradicts binding Ninth Circuit and Supreme Court precedent.  In *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982), the Supreme Court held that "[t]he filing of a notice of appeal … confers jurisdiction on the court of

2

appeals and divests the district court of its control *over those aspects of the case involved in the appeal*." *Id.* at 58 (emphasis added). Here, attorney fees are not an aspect of SmartMetric's case "involved in the appeal." The Ninth Circuit has explicitly held that even where "a notice of appeal has been filed, a district court in this circuit retains jurisdiction to rule upon a request for attorney fees." *League of Women Voters of Cal. v. F.C.C.*, 751 F.2d 986, 990 (9th Cir. 1985) (citing *Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 956-57 (9th Cir. 1983)); *see also U.S. v. Real Property Located at 475 Martin Lane, Beverly Hills, CA*, 727 F. Supp. 2d 876, 882 (C.D. Cal. 2010) ("[T]he Ninth Circuit has made it clear that district courts retain jurisdiction to decide issues regarding attorney's fees after an appeal is taken.") (citing *Masalosalo, supra*). SmartMetric's jurisdiction argument is simply not in accordance with the law.

  SmartMetric also argues that this Court lacks jurisdiction because Defendants filed the present Motion twelve months after the fourteen-day filing deadline in Local Rule 54-10 had lapsed. (Opp. at 2:5-14.) This argument is spurious. Defendants merely renewed their original motion for attorney fees, filed on October 30, 2013, within the fourteen-day filing deadline. (D.I. 185.) On December 18, 2013, the Court granted Defendants' *ex parte* application to continue the hearing on the original motion until after the Supreme Court issued its decision in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.* (D.I. 210.) On January 28, 2014, this Court entered the parties' stipulated order further postponing the hearing until after the Federal Circuit resolved SmartMetric's appeal. (D.I. 212.) After the Supreme Court issued its decision and after the Federal Circuit ruled on the appeal, this Court denied the original motion without prejudice "because entirely new briefing will be necessary" in light of the relaxed standard for awarding attorney fees announced in *Octane*. (D.I. 214.) This Court specifically stated that "Defendants should file their renewed motion within one week following the receipt of the mandate in this District." (*Id.*) That is exactly what Defendants did.

SmartMetric thus mischaracterizes the present Motion as a wholly new motion. (Opp. at 2:5-6.)  Even if the present Motion were a wholly new motion, SmartMetric is wrong in claiming that the filing deadline stated in Local Rule 54-10 is jurisdictional. (Opp. at 2:7-8.)  Both the Federal Rules of Civil Procedure and the Local Rules give discretion to the district courts to alter the timeline.  *See* FED. R. CIV. P. 54(d)(2)(B) ("Unless a statute or a court order provides otherwise, the motion must be filed no later than 14 days after entry of judgment …."); L.R. 54-10 (stating that the motion shall be filed within fourteen days "unless otherwise ordered by the Court"); *Hospital of Barstow, Inc. v. California Nurses Ass'n*, No. CV 13-01063 CAS (DTBx), 2014 WL 4679042, at * (C.D. Cal. Sept. 18, 2014) (considering attorney fee motion filed more than eight months after L.R. 54-10 deadline, in part because "both the Federal and Local Rules give district courts discretion to alter the timeline").

**B.**      **SmartMetric Fails to Rebut the Evidence that This is an Exceptional Case**

This case is exceptional not as a result of one discrete occurrence of misconduct.  Rather, this is about the totality of SmartMetric's deliberate effort to ignore the law, to shift the burden of proof to Defendants, to remain unburdened by any cogent theory of liability, and to revise any prior position taken at the first sign that Defendants had identified appropriate defenses.  In particular, this case is exceptional because:

(a)      SmartMetric never investigated, or chose not to investigate, how Defendants would infringe the '464 patent and chose to litigate the suit without regard to whether the patent could ever cover MasterCard's or Visa's products.

(b)      SmartMetric refused to articulate a theory of infringement, at least until this case was on appeal, effectively shifting the burden of proof onto Defendants and throughout the case refused to be tethered to any facts or theories.  Instead, SmartMetric reacted to every position taken by Defendants by changing their theory of the case.

4

(c)     SmartMetric's several instances of litigation misconduct apparently committed to maintain its groundless litigation caused Defendants to incur substantial attorneys' fees to defend.

**1.     SmartMetric failed to conduct a reasonable pre-suit investigation**

The law is clear that a patentee bears the burden to "conduct [a] careful investigation before bringing suit." *Linex Techs., Inc. v. Hewlett-Packard Co.,* 2014 WL 4616847, at *3 (N.D. Cal. Sept. 15, 2014) (finding case exceptional under 35 U.S.C § 285). SmartMetric failed to do so.

**a.     SmartMetric never investigated or chose not to investigate how Defendants would infringe its patent.**

As discussed in Defendants' opening brief, the 2010 case (Case No. CV 10-01864 JHN (FMOx)) highlights the unreasonableness of SmartMetric's decision to file the present action. The 2010 Case put SmartMetric on notice of Defendants' systems and the fact that they are different from the claims of the '464 patent. Even if this information was insufficient for SmartMetric to conclude that subsequent lawsuits against Visa and/or MasterCard would be similarly unsuccessful, this information should have given SmartMetric very clear indication that a meaningful pre-filing investigation into at least the areas of whether the accused systems are controlled by the Defendants and whether such systems include key elements of the claims such as a "local access number" was necessary. Had such an investigation been conducted, Smartmetric could only have concluded that there was no proper basis upon which to bring these claims against Visa or MasterCard.

The scope of the '464 patent is clear. In the claimed systems and methods, users desiring to access a network service provider could record access and login information on a "data card" (*i.e.*, smart card). Then, while traveling, users could insert their data card in a card reader to log on at a remote location and access the network service provider by using either a default number or a number local to that

5

location. The use of local access numbers would allow users to access the network service provider without incurring long-distance charges.

In the accused systems, however, data cards are used by cardholders simply as credit or debit cards in purchase transactions.  The transactions are communicated from merchants to acquiring banks, and then over Visa's or MasterCard's networks between acquiring banks and issuing banks for authorization.  These connections among the merchants, banks, and Visa or MasterCard are independent of cardholder location.  The connections do not involve choosing between a default or a local access number, much less an access number from a database of such numbers.

The 2010 Case informed SmartMetric of details related to Defendants' systems, which made clear that the '464 patent does not cover the accused systems. The asserted patent and the accused systems are entirely different in nature, such that SmartMetric would not have had to obtain all the technical details to perform a proper pre-filing analysis.  Instead, SmartMetric distorted a patent for using smart cards to simplify the outmoded practice of dialing-up an Internet Service Provider ("ISP") in an attempt to cover the entirely different use of smart cards as credit or debit cards.

>    **b.**    **SmartMetric failed to conduct a reasonable pre-suit investigation into whether Defendants make or sell cards and card readers.**

The 2010 Case also put SmartMetric on notice that Defendants do not make or sell cards or card readers (or direct or control any other entity that might provide or use cards or card readers).  (Franklin Decl. ¶ 5 & Ex. B (2010 Case, D.I. 16-1 at 17:27-18:5).)  SmartMetric disregards this point, claiming that its willingness to dismiss the frivolous 2010 Case somehow shows its good faith in pursuing the present case.  (Opp. at 13:3-6; Bright Decl. ¶ 3.)  It is wholly unclear how SmartMetric's recognition that it could not win the 2010 Case makes the filing of the present case legitimate, particularly when the present case suffers from many of the same problems as the prior one—such as, Defendants simply do not make or sell

cards or card readers.  It is also unclear how Defendants' decision not to seek fees in the 2010 Case has any bearing on this motion.

SmartMetric objects that, in the 2010 Case, MasterCard and Visa produced no "evidence" on the issue of who controls MasterCard-branded and Visa-branded data cards and did not file a motion for summary judgment on this issue.  (Opp. at 13:6-8; Bright Decl. ¶¶ 4-5.)  This objection is misleading.  Early in the 2010 Case, MasterCard and Visa filed a motion to ***dismiss*** SmartMetric's complaint under Rule 12(b)(6), which bars the presentation of formal evidence outside the pleadings.  (Franklin Decl. ¶ 5 & Ex. B.)  In the memorandum supporting that  motion, MasterCard and Visa represented that:

> As anyone who has ever been offered or received a credit card knows, credit cards are issued by financial institutions, not by Visa or MasterCard.  The same is true of Visa's payWave cards and MasterCard's PayPass cards – they are not issued to users by Visa or MasterCard.  Nor are Visa or MasterCard in the data card reader business.  Accordingly, SmartMetric does not—and indeed cannot—allege that Visa or MasterCard use or sell data cards or data card readers as required by the independent claims of the '464 patent.

(*Id.* (2010 Case, D.I. 16-1 at 17:27-18:5).)

SmartMetric plainly was on notice from the 2010 Case that MasterCard and Visa do not issue data cards or supply data card readers, and further do not control or direct others to act on Defendants' behalf to provide data cards or data card readers.  (*Id.*, Ex. B (2010 Case, D.I. 16-1 at 20:6-10).)  This notice should have been sufficient to have stopped SmartMetric from suing MasterCard and Visa again.

Had SmartMetric considered the information learned in the 2010 Case and conducted a reasonable pre-filing investigation, it could only have concluded that no colorable claim could be asserted against Defendants.  Instead, despite having been informed in the 2010 Case that neither MasterCard nor Visa make or sell cards or

7

1  card readers (or control those who do), SmartMetric claims that it conducted a

2  reasonable pre-suit investigation because, according to Mr. Gussin, "the cards and

3  readers bear [Defendants'] names and logos, and I reasoned that such control was

4  essential to assuring the systems would perform as expected."  (Gussin Att'y Fee

5  Decl. ¶ 22; see also Opp. at 13:16-19)  It should have been obvious to SmartMetric

6  that one cannot infer "control" simply because a name or logo appears on a card or

7  device.  In fact, the California Court of Appeal explicitly found that "[t]he mere

8  display of the VISA logo, trade name, or trademark is simply not enough to establish

9  an agency by ratification."  *Emery v. Visa Int'l Service Ass'n*, 95 Cal. App. 4th 952,

10  961-62 (2002); *see also id.* at 956 ("Indeed, VISA does not issue bank cards to

11  consumers.  Nor does VISA charge consumers fees for its services or contract with

12  merchants to display the VISA mark or to accept VISA bank cards.  Simply put,

13  VISA has no contractual relationship with consumers or merchants.  Its relationship

14  is with its members, autonomous financial institutions.").

15       SmartMetric knew or should have known that the mere display of a logo does

16  not imply "direction or control."  For example, many non-Microsoft software

17  packages bear a "Windows" logo.  That does not mean Microsoft directs or controls

18  the software maker.  All it means is that the software is compatible with Microsoft

19  Windows.  The same applies to the MasterCard and Visa logos.  Cards and card

20  readers display Defendants' logos, not because Defendants direct or control the banks

21  that issue the cards or the device manufacturers that make the card readers, but

22  merely to indicate that the cards and readers are compatible with Defendants'

23  payment systems.  C*f. Estate of Miller v. Thrifty Rent-A-Car Sys., Inc.*, 637 F.

24  Supp. 2d 1029, 1043 (M.D. Fla. 2009) ("[R]eliance on trademarks, signs, and logos

25  as representations of agency is unreasonable as a matter of law.") (applying

26  Oklahoma law); *Reed v. Young Men's Christian Ass'n USA*, No. 3:07-0765, 2008 WL

27  3852175, at *3 (M.D. Tenn. Aug. 15, 2008) ("[T]he mere use of a company logo or

28

8

1 | trademark in no way imputes liability to the holder of the mark for the tortious

2 | actions of the licensee.").

### c. SmartMetric failed to conduct a reasonable pre-suit investigation into whether Defendants' systems had a local access number.

6 | SmartMetric never directly examined Defendants' systems to see whether they

7 | had local access numbers and a database of such numbers as the claims of the

8 | '464 patent require, except to the extent that SmartMetric's chief executive officer,

9 | Chaya Hendrick, "had seen EMV terminals outside the US, and learned, generally,

10 | how they work."  (Hendrick Decl. ¶ 2.)  Ms. Hendrick "reasoned" from her "own

11 | experience with computer programming" that Defendants' systems "likely" had local

12 | access numbers, (*id*.), but she never bothered to investigate whether this was actually

13 | the case.  Nor did SmartMetric try to obtain access to or information about the

14 | accused EMV systems from Defendants before filing suit.  This is the hallmark of an

15 | unreasonable pre-filing inquiry.  *See, e.g., Judin v. United States*, 110 F.3d 780, 784

16 | (Fed. Cir. 1997) (holding inquiry unreasonable where the patent owner never tried to

17 | obtain a sample of the accused device from the accused infringer "so that its actual

18 | design and functioning could be compared with the claims of the patent").

19 | On similar facts, the Federal Circuit found a pre-filing investigation inadequate

20 | where the patent owner failed to directly examine the accused products before suit.

21 | *See View Eng'g, Inc. v. Robotic Vision Sys.*, 208 F.3d 981, 981 (Fed. Cir. 2000).  The

22 | patent owner relied solely on "what [it] could learn about [the accused infringer's]

23 | machines from publicly available information, and [the accused infringer's]

24 | literature."  *Id*. at 985.  The publicly available information, however, did not provide

25 | sufficient evidence of infringement to support the patent owner's allegations.  *See id*.

26 | The patent owner, nevertheless, filed infringement counterclaims based upon its

27 | belief that "it was likely that [the accused infringer] would infringe the eight patents,

28 |

9

1  and he had no information which would lead him to a different conclusion." *Id*. The

2  Federal Circuit held this was improper.  *See id*. at 986.

3      SmartMetric's pre-filing investigation mirrors that of the patent owner in *View*

4  *Engineering*.  Here, as in *View Engineering*, SmartMetric failed to directly examine

5  the accused systems before suit.  Instead, as in *View Engineering*, "SmartMetric

6  evaluated these EMV systems as described in published documents."  (Bright Decl. ¶

7  6.)  Based upon this alleged evaluation, SmartMetric "concluded it was probable" that

8  Defendants' EMV systems infringed (*id*.), and thus filed suit even though the

9  documents said nothing about a local access number.  SmartMetric's pre-filing

10  inquiry cannot be found reasonable.

11      In short, before filing suit, SmartMetric simply assumed that Defendants'

12  systems used local access numbers.  An adequate pre-filing investigation, however,

13  requires more than unsupported assumptions.  The Federal Circuit has set a clear

14  standard for conducting a reasonable pre-filing investigation.  By disregarding these

15  standards, SmartMetric has made this action an exceptional case under 35 U.S.C.

16  § 285.  *See, e.g., Lumen View Tech., LLC v. Findthebest.com, Inc.*, 2014 WL

17  2440867, at *6 (S.D.N.Y. May 30, 2014) (finding case exceptional where "the most

18  basic pre-suit investigation would have revealed" that the infringement allegations

19  lacked merit); *Yufa v. TSI Inc.*, 2014 WL 4071902, at *3 (N.D. Cal. Aug. 14, 2014)

20  (finding case exceptional where "Plaintiff did not conduct an adequate investigation

21  prior, at the very least, to filing his first amended complaint").

22      **d.    SmartMetric's additional arguments that it conducted a**

23      **reasonable pre-suit investigation are inconsistent and**

24      **unreliable.**

25      In its opposition brief, SmartMetric argued that it performed a reasonable pre-

26  filing investigation.  These arguments are inconsistent with SmartMetric's

27  representations in the litigation.  During discovery, Visa had asked that SmartMetric

28  describe its investigation of alleged infringement by Visa prior to filing suit and to

10

1   identify all information regarding any such investigation.  In response, SmartMetric

2   stated only that "C. Hendrick has followed relevant developments on the Internet and

3   otherwise."  (D.I. 222 (Franklin Decl.), ¶ 8 & Ex. E (Response to Visa at 17).)

4   Following the receipt of this Motion, when it became apparent to SmartMetric that its

5   pre-filing investigation was insufficient, SmartMetric once again modified the facts to

6   support its new position—SmartMetric's pre-filing investigation now include various

7   analyses by Mr. Gussin and Ms. Hendrick, and bolstered by no less than three

8   declarations.  (*See* Opp. 13:10-24; Bright Decl. ¶¶ 6-8; Hendrick ¶ 2; Gussin Decl. ¶

9   22)  Analyzing the details of SmartMetric's new evidence, Mr. Gussin's involvement

10  in the pre-suit analysis is suspect as he was not identified as an expert until

11  February 15, 2013.  Additionally, SmartMetric stated that it had "reviewed its pre-suit

12  investigation with [its] expert, Mr. Gussin, who confirmed the reasonableness of

13  SmartMetric's analysis" and, through its investigation, concluded that "Defendants

14  controlled all six elements of claim 1 of the '464 patent and two elements of claim 14

15  of this patent."  (Opp. at 13:10-13; Bright Decl. ¶ 7)  SmartMetric, however, relied on

16  the testimony of Dr. Merschen, which did not take place until many months after the

17  complaint was filed, to support this "reasonable" pre-suit analysis.  (*See* Bright Decl.

18  ¶ 8).  These inconsistencies indicate that the pre-filing investigation was conjured by

19  SmartMetric in its opposition in an attempt to defeat this Motion.

20      **2.      SmartMetric shifted the burden of proof onto Defendants and**

21              **throughout the case refused to be tethered to any facts or theories.**

22      At no point during this case did SmartMetric articulate the factual and legal

23  grounds for its claim that Defendants infringed the '464 patent.  SmartMetric's

24  refusal to articulate a theory of infringement effectively shifted the burden of proof

25  onto Defendants.  Rather than proving infringement, SmartMetric reacted to every

26  position taken by Defendants by changing its theory of the case and revising the

27  facts to support its claim.

28

SMRH:435591612.1

During discovery, MasterCard and Visa requested that SmartMetric identify its theory of infringement and whether key elements of the asserted claims were present in the accused systems.  In response, SmartMetric simply restated the claim language when asked for its infringement theory or provided evasive non-substantive responses.  SmartMetric claims that it "did produce evidence that Defendants' EMV systems infringe, namely, Gussin's expert opinion …."  (Opp. at 19:21-22.)  This claim, like the rest of SmartMetric's case, is vacuous.  As the Court's summary judgment order recognized, Mr. Gussin provided only conclusory statements devoid of any evidentiary basis.  (D.I. 174 at 7 ("Gussin's presumptions lack foundation in facts … Instead his 'inferences' that these limitations are present seem, to this Court, to be guesses about how EMV systems could plausibly work.").)   In addition to belatedly serving an expert report lacking any factual basis, the Gussin Declaration filed with SmartMetric's summary judgment motion improperly added opinions that were absent from Mr. Gussin's expert report, in response to Defendants' non-infringement positions and in violation of the Court's orders.  (D.I. 174 at 7 ("Most of the relevant analysis emerges from the Gussin Declaration, which improperly added analysis not present in the Gussin Expert Report or inferable from it, functionally supplementing the Gussin Report in violation of the Court's orders.").)

As another example of SmartMetric's shifting theory, Mr. Gussin confirmed during his deposition that Visa's documents do not show a "local access number" as required by the claims of the '464 patent.  (Franklin Decl. ¶ 18 & Ex. L (Gussin Tr. at 170:6-10, 173:25-176:4).)  As for MasterCard, Mr. Gussin admitted that he was unaware of any circumstance under which a local access number is used for stand-in processing.  (*Id*. (Gussin Tr. at 76:2-11).)  In its opposition brief, SmartMetric admits that Mr. Gussin failed to find an express disclosure of local access numbers in Defendants' documents, but tries to excuse this failure by claiming that "Mr. Gussin reasonably INFERRED their presence in the accused EMV systems."

(Opp. at 18:5-6; *see also* Bright Decl. ¶ 17.)  Mr. Gussin did not attempt to pinpoint where the claimed "local access number" and "database" elements are allegedly found in the accused systems.  In fact, as SmartMetric's representative, he admitted that "the Visa and MasterCard's documents do not specifically show a database containing a local access number" and that one skilled in the art must infer from the information provided in the documents that such a database exists.  (D.I. 135-3 ¶ 19.)

Yet another telling example of SmartMetric's refusal to be tethered to any factual grounds or legal theories occurred when, on appeal and in opposition to this motion, SmartMetric presents, for the first time, a brand-new infringement theory.  SmartMetric then relies upon this new theory to allege that it had a colorable infringement claim back when it filed suit.  SmartMetric's new infringement theory is that claims 1 and 14 of the '464 patent cover a system that has only one of a "default access number" or a "local access number," but not necessarily both.  (Opp. at 14:1-4 ("Pre-filing, Smartmetric also reasoned that the Defendants' EMV systems satisfied **at least one** of the two alternatives called out in claims 1 and 14 of the '464 patent, namely, (i) a default access number **OR** (ii) a local access number and a database of local access numbers.") (emphasis in original); Bright Decl. ¶ 8 at 5:9-10; Hendrick Decl. ¶ 2.)

SmartMetric acts as if this had been its infringement theory all along.  The truth is that SmartMetric did not once assert this theory at any time, from the start of litigation through the final judgment of non-infringement, and for good reason.  Such a theory is not supported by the claim language, which requires that an infringing system be configured to select between both default and local access numbers.  Further, even if this theory was viable, it would have completely undermined SmartMetric's position on patent validity.  The entire purpose of the '464 patent is to offer a cost and efficiency advantage by allowing a user to reroute a call from the user's default access number to a local access number when away from home.

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
                                                RENEWED MOTION FOR ATTORNEY FEES

(Franklin Decl., ¶ 4 & Ex. A ('464 patent, col. 2, lines 39-44 ("The present invention is directed to overcoming the problems in the prior art regarding the inconvenience of the user having to physically search for the local ISP number in the particular locale in which he or she is located, or the increased cost in paying for a long distance call if this search is not performed …."))).)  Defendants submit that the '464 patent claims are invalid regardless.  But if only a default access number is required to infringe, even SmartMetric cannot dispute that the prior art discloses a smart card system using a default access number.  In its opposition brief, SmartMetric even admits that "all programmed applications have a default access number."  (Opp. at 14:13.)

SmartMetric cannot, in good faith, put forth a brand-new theory of infringement, pretend that this theory has been its stance all along, and then state the "[t]he Court's 10/2/2013 ruling erred by ignoring Gussin's declaration which explained Defendants' EMV system had a default access number."  (Opp. at 19:7-9; *see also id.* at 20:16-19 ("Claims 1 and 14 call for ONE OF these two, <u>not both</u>. The Court's non-infringement order, in error, ignores the fact that an EMV system with a default access number infringes, even if the system has no local access number ….") (emphasis in original).)  During the litigation, SmartMetric spent great time and effort arguing the baseless proposition that Defendants' "standalone processing" systems constitute a "local access number," never once arguing that a local access number was somehow an optional feature of the patent claims.  To switch infringement theories now, and pretend that no switch as occurred, further evidences that SmartMetric's infringement position during the case was wholly unsubstantiated.

As demonstrated, SmartMetric's desire to be untethered to any legal theories or factual grounds permeates every aspect and every stage of this ligation.  This behavior unfairly and inappropriately put MasterCard and Visa in the position of having to develop, at significant additional cost, multiple alternative non-infringement theories, many of which would prove to be unnecessary.

1  SmartMetric's actions prolonged this litigation at significant additional expense to

2  both defendants.

3      **3.**    **SmartMetric fails to rebut Defendants' evidence of litigation**

4      **misconduct surrounding SmartMetric's expert and his late report.**

5      As discussed in Defendants' opening brief, once SmartMetric failed to serve an

6  expert report on infringement, failed to persuade the Court to extend the deadline for

7  serving a report, and failed to present an expert who could identify all elements of the

8  asserted claims in Defendants' systems, SmartMetric's continued effort to litigate the

9  case constituted misconduct that alone makes this case exceptional.

10      Not only was Mr. Gussin's report conclusory and without factual support, but

11  SmartMetric failed to timely serve it.  SmartMetric tries to excuse this failure by

12  blaming Defendants, claiming that Defendants delayed in producing confidential

13  documents.  (Opp. at 16:4-6.)  SmartMetric, however, omits that this case lacked a

14  protective order for confidential documents until February 7, 2013.  SmartMetric

15  caused this delay by unreasonably demanding that its President and CEO have access

16  to Defendants' highly confidential information regardless of their designation as

17  "Attorneys' Eyes Only," and refusing to enter a reasonable protective order.  (*See*

18  D.I. 67, 72.)  Moreover, based on publicly available documents, Mr. Gussin had

19  ample information to prepare an infringement report by the December 31, 2012

20  deadline.  In any event, it was incumbent upon SmartMetric to have sought relief

21  from the Court before the expert report deadline passed.  SmartMetric failed to do so.

22      Additionally, SmartMetric fails to provide any explanation as to why it did not

23  identify Mr. Gussin as its infringement expert until February 15, 2013 (a month and a

24  half after initial expert reports were due).  This is particularly glaring in light of

25  SmartMetric's representation that it "reviewed its pre-filing investigation with their

26  expert, Mr. Gussin."  (Bright Decl. ¶ 7.)

27      There thus was a clear pattern of misconduct by SmartMetric.  First,

28  SmartMetric filed an infringement claim without any reasonable basis to support its

15

1  allegations.  Second, SmartMetric missed the deadline to serve expert reports without

2  any justification.  Third, SmartMetric served a conclusory expert report that was not

3  "just slightly late" (Opp. at 16:4-5), but served after **both** the deadline for initial

4  expert reports and the deadline for rebuttal expert reports had passed and after the

5  Court declined to reset those deadlines.  Fourth, SmartMetric openly violated the

6  Court's orders by filing the Gussin Declaration that improperly attempted to

7  supplement the deficient Gussin Report.  Fifth, even the belated Gussin Declaration

8  made only conclusory allegations.  (Franklin Decl. ¶ 17 & Ex. K; *see also* D.I. 118-

9  4.)  This misconduct alone makes this case exceptional under 35 U.S.C. § 285.

10 **C.**     **Defendants Should Be Awarded the Fees Requested in The Motion**

11        **1.     The requested fees are reasonable considering the amount at stake.**

12        The combined attorney fees of $2,719,065 for Defendants are reasonable

13 under any recognized criteria, but particularly considering that SmartMetric sought

14 $13.4 billion in damages.[1]  SmartMetric objects to measuring the requested fees

15 against the size of the damages that SmartMetric sought, claiming that "No reported

16 case uses this test for an award under Section 285."  (Opp. at 8:6-9.)  SmartMetric is

17 simply wrong.  In determining a reasonable rate, "some consideration may be given

18 to the experience, reputation and ability of the attorneys, as well as to the difficulty

19 of the issues presented and ***the amount at stake in the litigation***."  *Yamanouchi*

20 *Pharm. Co. v. Danbury Pharmacal, Inc.*, 51 F. Supp. 2d 302, 305 (S.D.N.Y. 1999)

21 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429-30 n.3 (1983)); *see also, e.g.,*

22 *Armament Sys. & Procedures, Inc. v. IQ Hong Kong Ltd.*, 546 F. Supp. 2d 646, 652

23 (E.D. Wis. 2008) ("Given the number of defendants in this lawsuit with significant

24 amounts at stake, the fee request could well have been greater."); *Takeda Chem.*

25 *Indus., Ltd. v. Mylan Labs., Inc.*, 2007 WL 840368, at *2 (S.D.N.Y. Mar. 21, 2007)

26 ("Consideration may also be given to the experience, reputation and ability of the

27  _____

28 [1] Defendants are dropping their request for $325,725.74 in non-taxable costs.

16

1   attorneys as well as to the difficulty of the issues presented and the amount at stake

2   in the litigation.").

3         The amount at stake in this case ($13.4 billion) plainly supports an attorney

4   fee request of $2,719,065 for two defendants.  Although SmartMetric's damages

5   claim was grossly exaggerated, MasterCard and Visa had to take the demand

6   seriously and fund an appropriate defense.[2]

7         **2.**      **SmartMetric's alleged financial hardship should not affect the size**

8                     **of the fee award.**

9         SmartMetric claims that it will suffer a precarious financial situation should

10   MasterCard and Visa be awarded their attorney fees.  (Opp. at 24:13.)  SmartMetric,

11   however, fails to provide any evidence that it truly faces a financial hardship, other

12   than a conclusory and self-serving assertion from SmartMetric's chief executive

13   officer, Chaya Hendrick.  (Hendrick Decl. ¶ 4.)

14         SmartMetric also overlooks that its precarious financial situation, if any, is a

15   circumstance of its own doing.  SmartMetric voluntarily chose to sue MasterCard and

16   Visa on deficient claims in the hope that SmartMetric could dupe a jury into awarding

17   $13.4 billion in damages.  Defending against these frivolous claims cost MasterCard

18   and Visa real money.  In awarding $4 million dollars in fees and costs to an accused

19   infringer, the court in *Armament Systems and Procedures, Inc. v. IQ Hong Kong Ltd.*,

20   546 F. Supp. 2d 646 (E.D. Wis. 2008), gave no weight to a patent owner's alleged

21   precarious finances, *id*. at 648, finding instead that "an award under § 285 ... is

22   intended to compensate the defendants for their own expenses caused by the

23   plaintiff's conduct. … [I]t should be obvious that a corporation bringing a lawsuit

24   based on a fraudulently obtained patent is not entitled to the same kind of lenience as

25   

26   [2] The amount in controversy is also a relevant way to compare the reasonableness of the fees incurred in the case to similarly sized cases, as shown by the discussion in

27   Defendants' opening brief regarding cases in excess of $25M as reported in the

28   AIPLA Economic Survey.  (*See* D.I. 221 (Clark Decl.), Ex. I)

an individual citizen who loses a civil rights case." *Id*. at 651 (citing *Automated Business Cos. v. NEC Am., Inc.*, 202 F.3d 1353, 1355 (Fed. Cir. 2000)).  As in *Armament Systems*, SmartMetric chose to bring a lawsuit based upon faulty patent claims and should not receive lenience just because it is a smaller company than MasterCard or Visa.

**3.     SmartMetric's valuation of the fees at $60,000 is unreasonable.**

SmartMetric claims that Defendants should receive only $60,000 because the Defendants' three summary judgment briefs on infringement "could not reasonably require more than two days each or six days total." (Opp. at 25:6.)  This argument is utterly absurd.  SmartMetric does not cite to a single source to support its argument for what constitutes "reasonable" rates or a "reasonable" number of hours to be expended.  Even more, SmartMetric's position assumes that writing the briefs was the only action that Defendants had to undertake as a result of SmartMetric's objectively baseless, bad faith litigation.  This is so obviously untrue that it almost doesn't merit a response.  SmartMetric forced Defendants to litigate the entire case, including at least the following tasks:

- Preparing MasterCard's and Visa's answer and counterclaim [D.I. 25, 29];
- Preparing MasterCard's and Visa's opposition to the motion to dismiss filed by SmartMetric against MasterCard's and Visa's counterclaim for alleged failure to state a claim for relief [D.I. 39, 40];
- Searching and analyzing the prior art in support of Defendants' patent invalidity defenses;
- Serving and responding to written discovery;
- Preparing and responding to claim construction briefs, and attending the claim construction hearing [D.I. 56, 59, 62];
- Preparing motion for protective order and attending hearing on motion for protective order [D.I. 79, 80];

18

- Reviewing and producing voluminous documents related to the credit card systems alleged to infringe;

- Retaining and preparing an expert witness on the issues of patent infringement and validity, and assisting in the preparation of expert reports;

- Opposing SmartMetric's belated attempts to seek relief from the expert report deadlines and addressing its tardy expert reports;

- Preparing for, taking and defending depositions of percipient and expert witnesses;

- Preparing comprehensive summary judgment motions on non-infringement, invalidity and damages;

- Opposing SmartMetric's summary judgment motion on infringement and validity; and

- Opposing SmartMetric's frivolous appeal.

Defendants have done everything in their power to present a clear and reasonable stance on what attorney fees should be due, going so far as to provide calculations of fees incurred after multiple potentially "exceptional" events.  It is equally clear that SmartMetric has performed no such reasonable analysis, simply choosing to grasp at random numbers and propose them to the Court.

SmartMetric claims that an award of attorney fees in this case would "chill small companies from daring to sue large companies for infringement."  (Opp. at 24:14.)  This is not true.  An award of attorney fees would chill only those companies, large or small, that bring frivolous litigation without any evidence to support their claims, wasting the time and resources of all parties, the Court, and the judicial system at large, in the hopes of a big payday.  Had SmartMetric acted reasonably, it would have realized after the first litigation that it would be fruitless to bring a second suit; or that after it failed to serve expert reports, its case should be dismissed; or that after late service of its expert reports and realizing that it had no

1    evidence of infringement, the case should be dismissed, etc.  SmartMetric had every

2    opportunity to act reasonably and dismiss the case, but instead chose to engage the

3    Defendants and this Court in objectively baseless litigation.

4         The purpose of 35 U.S.C. § 285 is "to compensate the prevailing party for its

5    monetary outlays in the prosecution or defense of the suit" and to "serve[] as a

6    deterrent to 'improper bringing of clearly unwarranted suits' for patent infringement."

7    *Automated Bus. Cos. v. NEC Am., Inc.*, 202 F.3d 1353, 1355 (Fed. Cir. 2000).  These

8    are precisely the purposes that would be served by granting attorney fees in the

9    present case.

10        **4.    Defendants' Fees on Appeal**

11        SmartMetric complains that MasterCard and Visa offered "no separate

12   showing that Smartmetric's [sic] appeal was frivolous, or otherwise exceptional."

13   (Opp. at 3:9-10.)  The Federal Circuit, however, has held that "a case should be

14   viewed more as an 'inclusive whole' rather than as a piecemeal process when

15   analyzing fee-shifting under § 285."  *Therasense, Inc. v. Becton, Dickinson & Co.*,

16   745 F.3d 513, 516 (Fed. Cir. 2014).  Thus, SmartMetric is wrong in suggesting that

17   the case law requires MasterCard and Visa to make a separate showing of the

18   exceptionality of the appeal.  The substantive deficiency of SmartMetric's claims

19   permeates the whole case.

20        SmartMetric is also wrong in suggesting that the Federal Circuit itself must

21   find that an appeal is exceptional before attorney fees may be awarded, (Opp. at 10-

22   11), or that Defendants should have sought such a finding from the Federal Circuit,

23   (Opp. at 7:7:11-13).  The Federal Circuit has made clear that "§ 285 does not bar the

24   trial court from awarding fees for the entire case, including any subsequent appeals."

25   *Therasense*, 745 F.3d at 517; *see also PPG Indus., Inc. v. Celanese Polymer

26   Specialties, Co.*, 840 F.2d 1565, 1569 (Fed. Cir. 1988) (rejecting the district court's

27   holding that attorney fees incurred on appeal should not be allowed because a fee

28   motion could have been brought before the Federal Circuit, and holding that "the

1  power to award attorney fees for appellate work is not the exclusive domain of an

2  appellate court").

3       In *Therasense*, the Federal Circuit upheld the district court's denial of

4  appellate fees, where the patent owner had convinced the Federal Circuit *en banc* to

5  vacate a finding of inequitable conduct on a prior appeal.  745 F.3d at 517.  Here, in

6  contrast, the Federal Circuit entered a complete per curiam affirmance of the district

7  court's judgment.  In this circumstance, there is no need for MasterCard and Visa to

8  make a separate showing that SmartMetric's claims, which were frivolous in the

9  district court, remained frivolous in the appellate court.

10                                        **III.**

11                                  **CONCLUSION**

12       For the foregoing reasons, along with those presented in Defendants' Motion,

13  Defendants request that the Court declare this action to be an exceptional case and to

14  award Defendants' their reasonable attorney fees and non-taxable costs as set forth in

15  Defendants' Motion.

16

17  Dated: Dec. 15, 2014          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

18                                By: */s/ Gary A. Clark* _____

19                                         Gary A. Clark
                                  Attorneys for Defendant and Counterclaimant
20                                   MASTERCARD INTERNATIONAL
                                            INCORPORATED
21  Dated: Dec. 15, 2014          JONES DAY

22

23                                By: */s/ Joseph Melnik* _____

24                                        Joseph Melnik
                                  Attorneys for Defendant and Counterclaimant
25                                          VISA INC.

26

27

28

                                            21

1       In accordance with Local Rule 5-4.3.4(a)(2), I hereby attest that all other

2   signatories listed, and on whose behalf the filing is submitted, concur in the filing's

3   content and have authorized the filing.

4   Dated: Dec. 15, 2014          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

5

6                  By: _/s/ Gary A. Clark_____
                             Gary A. Clark

7            Attorneys for Defendant and Counterclaimant
               MASTERCARD INTERNATIONAL
                   INCORPORATED

8

9   [List of Additional Counsel]

10  DENNIS J. SMITH, Cal. Bar No. 233842
    dsmith2@sheppardmullin.com

11  ANDREW T. KIM, Cal. Bar No. 280223
    akim@sheppardmullin.com

12  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    333 South Hope Street

13  Los Angeles, California 90071-1422
    Telephone:  (213) 620-1780

14  Facsimile:   (213) 620-1398

15  Attorneys for Defendant and Counterclaimant
    MASTERCARD INTERNATIONAL INCORPORATED

16

17  JASON MCDONELL (State Bar No. 115084)
    jmcdonell@jonesday.com
    JONES DAY

18  555 California Street, 26th Floor
    San Francisco, CA 94104

19  Telephone:  (415) 626-3939
    Facsimile:   (415) 875-5700

20

21  STEVEN J. CORR (State Bar No. 216243)
    sjcorr@jonesday.com

22  ALEXIS A. HOULE (State Bar No. 274429)
    ahoule@jonesday.com
    JONES DAY

23  555 South Flower Street, 50th Floor
    Los Angeles, CA 90071

24  Telephone:  (213) 489-3939
    Facsimile:   (213) 243-2539

25

26  Attorneys for Defendant and Counterclaimant
    VISA INC.

27

28

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR ATTORNEY FEES